No. 25-02398

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT**

---

Joseph Jones et al.,

*Plaintiffs-Appellants,*

v.

Blackstone Medical Services, LLC

*Defendant-Appellee.*

On Appeal from the United States District Court
for the Central District of Illinois
No. 1:24-CV-01074-JEH-RLH
Hon. Jonathan E. Hawley

---

**EXCERPTS OF RECORD
VOLUME 1 OF 1**

---

Abbas Kazerounian (CA Bar No. 249203)
ak@kazlg.com
Ryan L. McBride (CA Bar No. 297557)
ryan@kazlg.com
*Kazerouni Law Group, APC*
*245 Fischer Avenue, Suite D1*
*Costa Mesa, CA 92626*
*(800) 400-6808*

*Interim Lead Attorneys for Plaintiffs-
Appellants and the Putative Class*

# INDEX

**Page**

Class Action Complaint,
Docket No. 1 (filed February 14, 2024) ....................................................................... 3

First Amended Class Action Complaint,
Docket No. 6 (filed April 5, 2024) ........................................................................... 19

Consolidated Class Action Complaint,
Docket No. 29 (filed April 15, 2025) ........................................................................ 54

Blackstone's Motion to Dismiss Counts I-IV of
the Consolidated Class Action Complaint,
Docket No. 32 (filed May 13, 2025) .......................................................................... 95

Memorandum of Law in Support of Blackstone's
Motion to Dismiss Counts I-IV of the
Consolidated Class Action Complaint,
Docket No. 33 (filed May 13, 2025) .......................................................................... 99

Plaintiffs' Memorandum of Law in Opposition to
Defendant's Motion to Dismiss Counts I-IV of
the Consolidated Class Action Complaint,
Docket No. 36 (filed May 27, 2025) ......................................................................... 112

Order Granting Blackstone's Motion to Dismiss,
Docket No. 37 (filed July 21, 2025) ......................................................................... 128

Plaintiff's Notice of Appeal,
Docket No. 38 (filed August 11, 2025) ..................................................................... 140

Joint Request for Entry of Judgment Pursuant
to Fed. R. Civ. P. 58(d),
Docket No. 41 (filed August 20, 2025) ..................................................................... 142

Judgment,
Docket No. 42 (filed August 21, 2025) ..................................................................... 145

District Court Docket Sheet ..................................................................................... 146

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**

|  |  |
|---|---|
| Seth Steidinger, *on behalf of himself and all others similarly situated*, | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | |
| Blackstone Medical Services, LLC | Jury Trial Demanded |
| Defendant. | |

Plaintiff Seth Steidinger (hereinafter "Plaintiff"), on behalf of himself and all others

similarly situated, brings this Class Action Complaint against Defendant Blackstone Medical

Services, LLC as follows:

**INTRODUCTION**

1.      Plaintiff brings this class action for damages resulting from the illegal actions of

Defendant Blackstone Medical Services, LLC ("Defendant" or "Blackstone").  Defendant placed

repeated telemarketing text messages and calls to Plaintiff's telephone – over Plaintiff's request

for Defendant to stop – in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227,

*et seq.* (the "TCPA"), thereby invading Plaintiff's privacy.

2.      Defendant is a Florida-based company that aggressively sells home sleep tests.  It

is a sales company, not a healthcare provider.  Its website identifies no physicians or other

medical professional on its staff.[1]  Instead, Blackstone employs hundreds of people for positions

---

[1] *See* https://www.blackstonemedicalservices.com/vick-tipnes/ (last visited Feb. 13, 2024);
https://www.blackstonemedicalservices.com/about/ (last visited Feb. 13, 2024);
https://www.blackstonemedicalservices.com/executives/ (last visited Feb. 13, 2024) (identifying
executives as a business consultant, director of sales, general counsel, and HR manager)

such as "Inside Sales Professional" to contact people to sell home sleep tests.[2]

3.      Blackstone operates an aggressive telemarketing campaign where it repeatedly sends text messages and telephone calls to telephone numbers that have been placed on the National Do-Not-Call Registry for at least 30 days and over the messaged party's objections in order to sell home sleep tests.

4.      Indeed, after Plaintiff's telephone number was added to the National Do-Not-Call Registry and after Plaintiff advised Blackstone he was not interested in its home sleep tests and repeatedly messaged Blackstone to "STOP," Blackstone continued to place repeated telemarketing text messages and phone calls encouraging Plaintiff to contact Blackstone and purchase an at home sleep test (e.g., "Hi, this is Juliana from Blackstone Medical Services! Are you ready for the Home Sleep test?"; "Hi, we still got your prescription for the sleep apnea test. We have made several attempts to get a hold of you to set it up. Please call back at 813-708-7651to schedule. Best regards!").

5.      Plaintiff is not alone.  Other consumers complain about Blackstone's aggressive telemarketing and failure to abide by 'stop' requests. *See, e.g.,* the following representative Yelp reviews:[3]

- "This company has been sending me text messages and phone calls at least three times a day about getting a sleep study done. I have expressed that I do NOT want the test done, as I have already gotten it done with another provider. They still continue to send me messages and calls and it is frustrating. It is as if they will not take no as an answer."
- "My doctor referred me for a home sleep study, so they reached out to me. I'll give the doctor the benefit of the doubt that he just enters a referral into a system and doesn't know what company will be fulfilling the order/service. They have been calling and texting

---

[2] *See, e.g.,* https://www.ziprecruiter.com/c/Blackstone-Medical-Services/Job/Inside-Sales-Representative/-in-Tampa,FL?jid=8653af6305b08a6d&utm_campaign=google_jobs_apply&utm_source=google_jobs_apply&utm_medium=organic (Blackton's job posting seeks a "high energy Inside Sales Professional") (last visited Feb. 13, 2024).

[3] https://www.yelp.com/biz/blackstone-medical-services-tampa (last visited Feb. 13, 2024).

2

multiple times a day for weeks on end. No matter how many times you say 'No', they will pass your info to someone else in their call center to blow up your phone. Unless you can block the entire 813 area code, they have an endless supply of numbers to circumvent your attempt to avoid them."

- "This company will NOT STOP calling and texting us, even though we have repeatedly told them to stop. Every time we block their number they text or call from another number!"

- "This is a very sketchy company. I was curious about doing a sleep study, so heard more information. After reading some bad reviews and discussing it with my doctor, I decided to hold off doing the study. Now I am bombarded with calls/texts asking me if I want to move forward even after telling them I am no longer interested. It's been over a month and I still receive texts from them. They also text from different numbers, so blocking them won't help. Very sketchy and so glad I didn't go with them."

- "This company is the worst. They have consistently harassed me even though I have turned down their services. I blocked their number and they use another number to text. DO NOT give them your number. Do your research, this company is not trustworthy."

6.      Plaintiff seeks to represent a class of similarly situated persons who have also received unwanted telemarketing text messages and calls from Blackstone, and to certify the following class:

> **Do Not Call Registry Class**: All persons in the United States who from four years prior to the filing of this action (1) were sent text messages and/or telephone calls by or on behalf of Defendant; (2) more than one time within any 12-month period; (3) where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days; (4) for the purpose of encouraging the purchase or rental of Defendant's products and/or services; and (5) where either (a) Defendant did not obtain prior express written consent to message the person or (b) the called person previously advised Defendant to "STOP" messaging them.

## JURISDICTION

7.      Subject matter jurisdiction exists pursuant to 28 U.S.C. § 1331 as this action arises out of Defendant's repeated violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et. seq.* (the "TCPA") and 47 C.F.R. § 64.1200.

8.      The Court has personal jurisdiction over Defendant and the venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Plaintiff resides in this District and received the communications from Defendant that form the basis of his claims within this District.

ER 000005

## PARTIES

9.      Plaintiff, Seth Steidinger ("Plaintiff"), is an adult individual residing in Gridley, Illinois, and is a "person" as defined by 47 U.S.C. § 153(39).

10.      Defendant, Blackstone Medical Services, LLC ("Defendant"), is a Florida business entity with a principal place of business at 550 North Reo Street, Suite #250, Tampa, Florida 33609, and is a "person" as defined by 47 U.S.C. § 153(39).

## THE NATIONAL DO-NOT-CALL REGISTRY

11.      The National Do-Not-Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. See 47 C.F.R. § 64.1200(c)(2).

12.      A listing on the Do-Not-Call Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

13.      The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Do-Not-Call Registry and provides a private right of action against any entity that initiated more than one such telephone solicitation within any 12-month period. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

14.      In addition, the TCPA and implementing regulations prohibit the initiation of any call for telemarketing purposes to a residential telephone subscriber where the caller does not, *inter alia,* "honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made." 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(d)(3).

15.      Telephone solicitations under 47 C.F.R. § 64.1200(c)(2) include text messages and "a cell phone is presumptively residential." *Chennette v. Porch.com, Inc.*, 50 F.4th 1217, 1225 (9th Cir. 2022). *See* 47 C.F.R. § 64.1200(e) ("The rules set forth in paragraph (c) and (d) of

4

this section are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers").

## FACTUAL ALLEGATIONS

16.    Plaintiff registered his residential cellular telephone number, 217-XXX-6904 (the "6904 Number") with the National Do-Not-Call Registry on April 18, 2018.

17.    At all relevant times, Plaintiff used the 6904 Number for personal and residential purposes.

18.    After discussing potentially taking a home sleep test with Plaintiffs' healthcare provider (who is not Blackstone or a Blackstone employee), Plaintiff began receiving telephone calls and text messages to his 6904 Number from Blackstone. During his first and only live conversation with Blackstone, Blackstone told Plaintiff that he could receive a home sleep test for $100. Plaintiff replied that he was not interested. Despite Plaintiff advising Blackstone that he was not interested in the home sleep test, Blackstone proceeded to send repeated telephone solicitation text messages and telephone calls to Plaintiff's 6904 Number.

19.    As depicted in the below screenshots, Blackstone's text messages encourage Plaintiff to contact Blackstone in order to pay for a home sleep test. *See, e.g.*:

5





ER 000008





7



20.    On repeated occasions – including on October 2, 2023, October 3, 2023, and November 27, 2023 – Plaintiff messaged Defendant "STOP" and "Stop" in order to get Defendant to stop contacting him.

21.    However, despite Plaintiff's unequivocal instructions that Defendant stop all text messages, Defendant continued to place telemarketing text messages and telephone calls to the 6904 Number as recently as January 2024.

22.    Blackstone would also text Plaintiff from different phone numbers after he texted "stop."

23.    Additionally, by repeatedly messaging Blackstone to "STOP" contacting him, Plaintiff terminated any established business relationship that could have existed between the Parties. Indeed, a "subscriber's seller-specific do-not-call request . . . terminates an established

8

ER 000010

business relationship for purposes of telemarketing and telephone solicitation even if the subscriber continues to do business with the seller." 47 C.F.R. § 64.1200(f)(5)(i).

24.     Further, even though Defendant had the ability to program its telephone dialing systems to honor "STOP" requests immediately, Defendant instead deliberately programmed its telephone dialing systems to ignore such requests and continue sending telemarketing messages to consumers for months after receiving a "Stop" request.

25.     None of Defendant's messages to Plaintiff's were for an emergency purpose.

26.     Defendant is not Plaintiff's healthcare provider and never rendered any healthcare services to Plaintiff.

27.     Plaintiff was damaged by Defendant's unconsented text messages and calls.  In addition to using Plaintiff's telephone data, phone storage, and battery life, Plaintiff's privacy was wrongfully invaded, and Plaintiff has become understandably aggravated with having to deal with the frustration of repeated, unwanted text messages and calls, forcing Plaintiff to divert attention away from other activities.

**CLASS ACTION ALLEGATIONS**

A. **The Class**

28.     Plaintiff brings this case as a class action on behalf of himself and all others similarly situated.

29.     Plaintiff represents, and is a member of the following class (the "Class"):

**Do Not Call Registry Class**: All persons in the United States who from four years prior to the filing of this action (1) were sent text messages and/or telephone calls by or on behalf of Defendant; (2) more than one time within any 12-month period; (3) where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days; (4) for the purpose of encouraging the purchase or rental of Defendant's products and/or services; and (5) where either (a) Defendant did not obtain prior express written consent to message the person or (b) the called person previously advised Defendant to "STOP" messaging them.

9

30.     Defendant and its employees or agents are excluded from the Class. Plaintiff does not know the number of members in the Class but believes the class members number in the thousands, if not more.  Thus, this matter should be certified as a class action to assist in the expeditious litigation of this matter.

## B. <u>Numerosity</u>

31.     Upon information and belief, Defendant placed telemarketing messages and calls to telephone numbers registered on the National Do-Not-Call List belonging to thousands of persons throughout the United States where it lacked prior express written consent to place such messages and calls and/or such persons had previously asked Defendant to cease messaging and calling them.  The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

32.     The exact number and identities of the Class members are unknown at this time and can only be ascertained through discovery.  Identification of the Class members is a matter capable of ministerial determination from Defendant's records.

## C. <u>Common Questions of Law and Fact</u>

33.     There are questions of law and fact common to the Class that predominate over any questions affecting only individual Class members.  These questions include:

    a.  Whether Defendant's messages and calls to members of the Class were placed for telemarketing purposes;

    b.  Whether Defendant can meet its burden of showing it obtained prior express written consent to place each telemarketing message and call;

    c.  Whether the messages and calls made to Plaintiff and Class Members violate the Do-Not-Call Registry rules and regulations;

10

d. Whether Defendant deliberately programmed its telephone dialing systems to ignore "Stop" requests and continue sending telemarketing messages and calls to telephone numbers that had previously messaged "Stop";

e. Whether Defendant's conduct was knowing and/or willful;

f. Whether Defendant is liable for damages, and the amount of such damages; and

g. Whether Defendant should be enjoined from such conduct in the future.

34. The common questions in this case are capable of having common answers. If Plaintiff's claim that Defendant routinely placed telemarketing text messages and calls to telephone numbers registered on the National Do-Not-Call Registry, and over requests to stop the messages, is accurate, Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

**D. Typicality**

35. Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

**E. Protecting the Interests of the Class Members**

36. Plaintiff will fairly and adequately protect the interests of the Class and has retained counsel experienced in handling class actions and claims involving unlawful business practices, and specifically claims under the TCPA. Neither Plaintiff nor his counsel has any interests which might cause them not to vigorously pursue this action.

**F. Proceeding Via Class Action is Superior and Advisable**

37. A class action is the superior method for the fair and efficient adjudication of this controversy. The interest of Class members in individually controlling the prosecutions of

11

separate claims against Defendant is small because it is not economically feasible for Class members to bring individual actions.

## COUNT I
## VIOLATIONS OF THE TCPA
## (47 U.S.C. § 227, et seq. and 47 C.F.R. § 64.1200(c)(2) & (d)(3))

38. The Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

39. Plaintiff brings this claim on behalf of himself and the Class.

40. 47 C.F.R. § 64.1200(c)(2) provides that "No person or entity shall initiate any telephone solicitation to . . . (2) A residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government. Such do-not-call registrations must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator."

41. 47 C.F.R. § 64.1200(d)(3) provides that "No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards: . . . Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made."

42. The TCPA provides a private right of action to "A person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations . . . ." 47 U.S.C. § 227(c)(5).

12

43.    Defendant initiated more than one telephone solicitation text message and/or call to telephone numbers belonging to Plaintiff and members of the Class within a 12-month period despite the fact that Plaintiff and other class members' telephone numbers were registered on the National Do-Not-Call Registry at all relevant times.

44.    Each of the aforementioned messages and calls by Defendant constitutes a violation of the TCPA and 47 C.F.R. § 64.1200(c)(2) by Defendant.

45.    In addition, Defendant initiated more than one telephone telemarketing text message and/or call to telephone numbers belonging to Plaintiff and members of the Class within a 12-month period where the telephone subscriber had previously made a do-not-call request to Defendant, and Defendant failed to honor the do-not-call request within a reasonable period of time from the date the request was made.

46.    Each of the aforementioned messages by Defendant constitutes a violation of the TCPA and 47 C.F.R. § 64.1200(d)(3) by Defendant.

47.    Plaintiff and the Class are entitled to an award of $500.00 in statutory damages for each text message sent in violation of the TCPA pursuant to 47 U.S.C. § 227(c)(5)(B).

48.    Additionally, Plaintiff and the Class are entitled to and seek injunctive relief prohibiting such conduct by Defendant in the future pursuant to 47 U.S.C. § 227(c)(5)(A).

49.    Further, Plaintiff and the Class are also entitled to and do seek a declaration that:

- Defendant violated the TCPA;

- Defendant initiated more than one telephone solicitation text and/or call to telephone numbers belonging to Plaintiff and members of the Class within a 12-month period despite the fact that Plaintiff and other class members' telephone numbers were registered on the National Do-Not-Call Registry at all relevant

13

times; and

- Defendant initiated more than one telephone telemarketing text message and/or call to telephone numbers belonging to Plaintiff and members of the Class within a 12-month period where the telephone subscriber had previously made a do-not-call request to Defendant, and Defendant failed to honor the do-not-call request within a reasonable period of time from the date the request was made.

**COUNT II**
**Willful Violations of the Telephone Consumer Protection Act,**
**(47 U.S.C. § 227, *et seq.* and 47 C.F.R. § 64.1200(c)(2) & (d)(3))**

50.     Plaintiff repeats and realleges the above paragraphs of this Complaint and incorporates them herein by reference.

51.     Plaintiff brings this claim on behalf of himself and the Class.

52.     Defendant is fully aware at all relevant times that the telephone numbers it sends telephone solicitations to are registered on the National Do-Not-Call Registry. Nonetheless, Defendant knowingly and/or willfully initiated more than one telephone solicitation text message and/or call to telephone numbers belonging to Plaintiff and members of the Class within a 12-month period even though Plaintiff and other class members' telephone numbers were registered on the National Do-Not-Call Registry at all relevant times.

53.     In addition, Defendant deliberately programmed its telemarketing telephone systems to continue sending telemarketing messages and calls to consumers after receiving a "Stop" request.  Accordingly, Defendant knowingly and/or willfully initiated more than one telephone telemarketing text message to telephone numbers belonging to Plaintiff and members of the Class within a 12-month period where the telephone subscriber had previously made a do-not-call request to Defendant, and Defendant failed to honor the do-not-call request within a reasonable period of time from the date the request was made.

14

54.     Each of the aforementioned messages and/or calls by Defendant constitutes a knowing and willful violation of the TCPA.

55.     Plaintiff and the Class are entitled to an award of up to $1,500.00 in statutory damages for each message and call sent in knowing and willful violation of the TCPA pursuant to 47 U.S.C. § 227(c)(5)(C).

56.     Additionally, Plaintiff and the Class are entitled to and seek injunctive relief prohibiting such conduct by Defendant in the future.

57.     Further, Plaintiff and the Class are also entitled to and do seek a declaration that:

- Defendant knowingly and/or willfully violated the TCPA;

- Defendant knowingly and/or willfully initiated more than one telephone solicitation text message and/or call to telephone numbers belonging to Plaintiff and members of the Class within a 12-month period despite the fact that Plaintiff and other class members' telephone numbers were registered on the National Do-Not-Call Registry at all relevant times;

- Defendant knowingly and/or willfully initiated more than one telephone telemarketing text message and/or call to telephone numbers belonging to Plaintiff and members of the Class within a 12-month period where the telephone subscriber had previously made a do-not-call request to Defendant, and Defendant failed to honor the do-not-call request within a reasonable period of time from the date the request was made; and

- It is Defendant's practice and history to place telephone solicitations and telemarketing messages to persons whose telephone numbers are registered on the National Do-Not-Call Registry and to persons who had previously made a do-not-

15

call request to Defendant.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff prays that judgment be entered against the Defendant as follows:

A. Injunctive relief prohibiting such violation of the TCPA by Defendant in the future;

B. Statutory damages of $500.00 for each and every text message in violation of the TCPA pursuant to 47 U.S.C. § 227(c)(5)(B);

C. Treble damages of up to $1,5000.00 for each and every text message in willful and/or knowing violation of the TCPA pursuant to 47 U.S.C. § 227(c)(5)(C)

D. An award of attorneys' fees and costs to counsel for Plaintiff and the Class; and

E. Such other and further relief as may be just and proper.

## TRIAL BY JURY DEMANDED ON ALL COUNTS

Dated: February 14, 2024

Respectfully submitted,

By ___/s/ Sergei Lemberg_____
       Sergei Lemberg
       LEMBERG LAW, L.L.C.
       43 Danbury Road, 3rd Floor
       Wilton, CT 06897
       Telephone: (203) 653-2250
       Facsimile:  (203) 653-3424

       *Attorneys for Plaintiff*

ER 000018

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**

|  |  |
|---|---|
| Seth Steidinger and Natasha Koller, *on behalf of themselves and all others similarly situated*, | Case No. 24-cv-01074 |
| Plaintiff, | **FIRST AMENDED CLASS ACTION COMPLAINT** |
| v. |  |
| Blackstone Medical Services, LLC | Jury Trial Demanded |
| Defendant. |  |

Plaintiffs Seth Steidinger (hereinafter "Plaintiff Steidinger") and Natasha Koller (hereinafter "Plaintiff Koller" and collectively with Plaintiff Steidinger "Plaintiffs"), on behalf of themselves and all others similarly situated, bring this Class Action Complaint against Defendant Blackstone Medical Services, LLC as follows:

**INTRODUCTION**

1.      Plaintiffs bring this class action for damages resulting from the illegal actions of Defendant Blackstone Medical Services, LLC ("Defendant" or "Blackstone").  Defendant placed repeated telemarketing text messages and calls to Plaintiffs' telephones – over Plaintiffs' requests for Defendant to stop – in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* (the "TCPA") and the Florida Telephone Solicitation Act ("FTSA"), Fla. Stat. § 501.059(5), thereby invading Plaintiffs' privacy.

2.      Defendant is a Florida-based company that aggressively sells home sleep tests.  It is a sales company, not a healthcare provider.  Its website identifies no physicians or other medical

ER 000019

professional on its staff.[1]  Instead, Blackstone employs hundreds of people for positions such as "Inside Sales Professional" to contact people to sell home sleep tests.[2]

3.      Blackstone operates an aggressive telemarketing campaign where it repeatedly sends text messages and telephone calls to telephone numbers that have been placed on the National Do-Not-Call Registry for at least 30 days and over the messaged party's objections in order to sell home sleep tests.

4.      Indeed, after Plaintiff Steidinger's telephone number was added to the National Do-Not-Call Registry and after Plaintiff Steidinger advised Blackstone he was not interested in its home sleep tests and repeatedly messaged Blackstone to "STOP," Blackstone continued to place repeated telemarketing text messages encouraging Plaintiff to contact Blackstone and purchase an at home sleep test (e.g., "Hi, this is Juliana from Blackstone Medical Services! Are you ready for the Home Sleep test?"; "Hi, we still got your prescription for the sleep apnea test. We have made several attempts to get a hold of you to set it up. Please call back at 813-708-7651 to schedule. Best regards!").

5.      Plaintiff Koller also repeatedly requested Blackstone to "STOP" sending her its solicitation text messages but Defendant continued to place repeated telemarketing text messages encouraging Plaintiff to contact Blackstone.

---

[1] *See* https://www.blackstonemedicalservices.com/vick-tipnes/ (last visited Feb. 13, 2024); https://www.blackstonemedicalservices.com/about/ (last visited Feb. 13, 2024); https://www.blackstonemedicalservices.com/executives/ (last visited Feb. 13, 2024) (identifying executives as a business consultant, director of sales, general counsel, and HR manager)

[2] *See, e.g.,* https://www.ziprecruiter.com/c/Blackstone-Medical-Services/Job/Inside-Sales-Representative/-in-Tampa,FL?jid=8653af6305b08a6d&utm_campaign=google_jobs_apply&utm_source=google_jobs_apply&utm_medium=organic (Blackton's job posting seeks a "high energy Inside Sales Professional") (last visited Feb. 13, 2024).

ER 000020

6.      Plaintiffs are not alone.  Other consumers complain about Blackstone's aggressive telemarketing and failure to abide by 'stop' requests. *See, e.g.,* the following representative Yelp reviews:[3]

- "This company has been sending me text messages and phone calls at least three times a day about getting a sleep study done. I have expressed that I do NOT want the test done, as I have already gotten it done with another provider. They still continue to send me messages and calls and it is frustrating. It is as if they will not take no as an answer."

- "My doctor referred me for a home sleep study, so they reached out to me. I'll give the doctor the benefit of the doubt that he just enters a referral into a system and doesn't know what company will be fulfilling the order/service. They have been calling and texting multiple times a day for weeks on end. No matter how many times you say 'No', they will pass your info to someone else in their call center to blow up your phone. Unless you can block the entire 813 area code, they have an endless supply of numbers to circumvent your attempt to avoid them."

- "This company will NOT STOP calling and texting us, even though we have repeatedly told them to stop. Every time we block their number they text or call from another number!"

- "This is a very sketchy company. I was curious about doing a sleep study, so heard more information. After reading some bad reviews and discussing it with my doctor, I decided to hold off doing the study. Now I am bombarded with calls/texts asking me if I want to move forward even after telling them I am no longer interested. It's been over a month and I still receive texts from them. They also text from different numbers, so blocking them won't help. Very sketchy and so glad I didn't go with them."

- "This company is the worst. They have consistently harassed me even though I have turned down their services. I blocked their number and they use another number to text. DO NOT give them your number. Do your research, this company is not trustworthy."

7.      This action seeks to certify three classes.  Plaintiffs Koller and Steidinger seek to represent the following class:

> **Internal Do Not Call List Class**: All persons within the United States who, within the time frame(s) relevant to this action, (1) received two or more text messages from Blackstone or anyone acting on Blackstone's behalf, (2) within any 12-month period, (3) for the purpose of selling Blackstone's products and/or services, (4) including at least one of those text messages being placed more than 30 days after such person requested that Blackstone stop calling and/or texting, and (5) which messages lacked an opt-out option

---

[3] https://www.yelp.com/biz/blackstone-medical-services-tampa (last visited Feb. 13, 2024).

ER 000021

Plaintiff Steidinger seeks to represent the following class:

**Do Not Call Registry Class**: All persons in the United States who from four years prior to the filing of this action (1) were sent text messages and/or telephone calls by or on behalf of Defendant; (2) more than one time within any 12-month period; (3) where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days; (4) for the purpose of encouraging the purchase or rental of Defendant's products and/or services; and (5) where either (a) Defendant did not obtain prior express written consent to message the person or (b) the called person previously advised Defendant to "STOP" messaging them.

And Plaintiff Koller seeks to represent the following class:

**FTSA Class**: All persons within the State of Florida who, (1) were sent a text message from Blackstone or anyone acting on Blackstone's behalf; (2) for the purpose of soliciting Defendant's goods and/or services, and (2) had previously communicated to Blackstone that they did not wish to receive Defendant's text messages.

## **JURISDICTION**

8.      Subject matter jurisdiction exists pursuant to 28 U.S.C. § 1331 as this action arises out of Defendant's repeated violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et. seq.* (the "TCPA") and 47 C.F.R. § 64.1200.

9.      This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367, as the state law claims under the FTSA form part of the same case or controversy as Plaintiffs' claims under the TCPA.

10.     The Court has personal jurisdiction over Defendant and the venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Plaintiff Steidinger resides in this District and received the communications from Defendant that form the basis of his claims within this District. Numrous putative class members from all three classes reside in this District and Defendant continuously called persons within this District for the purpose of marketing selling, and did in fact sell, medical equipment.

4

## PARTIES

11.    Plaintiff, Seth Steidinger ("Plaintiff Steidinger"), is an adult individual residing in Gridley, Illinois, and is a "person" as defined by 47 U.S.C. § 153(39).

12.    Plaintiff, Natasha Koller ("Plaintiff Koller") is a natural person who, at all times relevant to this action, was a resident of the State of Florida, and is a "person" as defined by 47 U.S.C. § 153(39).

13.    Defendant, Blackstone Medical Services, LLC ("Defendant"), is a Florida business entity with a principal place of business at 550 North Reo Street, Suite #250, Tampa, Florida 33609, and is a "person" as defined by 47 U.S.C. § 153(39).

## OVERVIEW OF THE TCPA AND THE FTSA

14.    Enacted in 1991, at 47 U.S.C. § 227, *et seq*., "Senator Ernest Hollings, the TCPA's sponsor, described these calls as 'the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall.' 137 Cong. Rec. 30, 821 (1991)." *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242, 1256 (11th Cir. 2014).

15.    Likewise, the Florida Telephone Solicitation Act ("FTSA"), Fla. Stat. § 501.059, was amended in 2021 to further protect consumers from these intrusive nuisance calls by creating a private right of action for do-not-call violations, allowing the recovery of $500 to $1,500 per call in statutory damages.

16.    "Unrestricted telemarketing," Congress later determined, "can be an intrusive invasion of privacy." *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012).

17.    "Congress determined [this] federal legislation was needed because telemarketers, by operating interstate, were escaping state-law prohibitions on intrusive nuisance calls." *Id.*

5

18.    In part, the TCPA prohibits "initiat[ing] any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity[.]" 47 C.F.R. § 64.1200(d).

19.    The FCC has recognized that the TCPA and implementing regulations apply to "both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls[.]" *In re Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd 14014, 14115 (2003).

20.    The procedures instituted must meet certain minimum standards, including, but not limited to: (1) having a written policy, available on demand, for maintaining a do-no-call list; (2) informing and training personnel engaged in any aspect of telemarketing on the existence and use of the do-not-call list; (3) recording and honoring do-not-call requests; (4) identifying the caller and person or entity on whose behalf the telemarketing call is being made; (5) applying the do-not-call request to the particular business entity making the call or on whose behalf the call is made; (6) maintaining a record of requests not to receive further telemarketing calls and honoring such for at least five years from the time the request is made. Id.

21.    This provision is applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers. 47 C.F.R. § 64.1200(e).

22.    "To constitute telemarketing, the text message must be 'for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services.'" *Id*. (quoting 47 C.F.R.§ 64.1200(f)(12)).

23.    The term "telephone solicitation" means "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property,

6

goods, or services, which is transmitted to any person, but such term does not include a call or message (A) to any person with that person's prior express invitation or permission, (B) to any person with whom the caller has an established business relationship, or (C) by a tax exempt nonprofit organization." 47 U.S.C. § 227(a)(4).

24.     In general, courts have also found that text messages fall under § 64.1200(d). *Hand v. Beach Entm't KC, LLC*, 456 F. Supp. 3d 1099, 1124 (W.D. Mo. 2020) (denying motion for summary judgment which argued that "§ 64.1200(d) does not apply to receipt of text messages on a cell phone but rather solely applies to calls made to a 'residential telephone subscriber'); *Doohan v. CTB Inv'rs, LLC*, 427 F. Supp. 3d 1034, 1069 (W.D. Mo. 2019).

25.     The FCC—which develops the rules and regulations implementing the TCPA—has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violation." *In re Rules and Regulations Implementing the TCPA*, 10 FCC Rcd. 12391, at ℙ13 (1995).

26.     The Rules and Regulations implementing the TCPA also requires callers to provide an automated opt-out mechanism through which the recipient can easily request to stop the calls. 47 C.F.R. § 64.1200(b)(3); *see also Liotta v. Wolford Boutiques, LLC*, No. 1:16-CV-4634-WSD, 2017 WL 1178083, at *4 (N.D. Ga. Mar. 30, 2017) ("Defendant's failure to include an opt-out mechanism with its text messages, resulted in the precise harm the TCPA provisions aimed to prevent, namely the nuisance and invasion of privacy that result from unwanted text messages").

27.     The FCC has "repeatedly acknowledged the existence of vicarious liability under the TCPA." *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 878 (9th Cir. 2014) (citing *In re Joint Petition Filed by DISH Network, LLC et al, for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd. 6574 (2013) ("FCC 2013 Ruling")). In addition to formal agency, principles of

7

apparent authority and ratification may also provide a basis for vicarious seller liability for TCPA violations. *FCC 2013 Ruling*, 28 FCC Rcd. at 6548 ¶28.

28.    Text messages are "calls" within the context of the TCPA. *Satterfield v. Simon & Schuster, Inc*., 569 F.3d 946 (9th Cir. 2009).

29.    The FCC has specifically ruled that a consumer's prior express consent to receive future text messages may be revoked. *In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 15391, 15391 (2012) ("*In re SoundBite Communications, Inc*.").

30.    The Telemarketing Sales Rule, 16 C.F.R. 310 *et seq*. prohibits telemarketers from engaging in, or sellers from causing telemarketers to engage in, conduct that is abusive. 16 C.F.R. § 310.4(b). Abusive conduct includes initiating any outbound telephone call to a person when "[t]hat person previously has stated that he or she does not wish to receive an outbound telephone call made by or on behalf of the seller whose goods or services are being offered." Id. at § 310.4(b)(1)(iii)(A).

## THE NATIONAL DO-NOT-CALL REGISTRY

31.    The National Do-Not-Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

32.    A listing on the Do-Not-Call Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

33.    The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Do-Not-Call Registry and provides a private

8

right of action against any entity that initiated more than one such telephone solicitation within any 12-month period. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

34. In addition, the TCPA and implementing regulations prohibit the initiation of any call for telemarketing purposes to a residential telephone subscriber where the caller does not, *inter alia,* "honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made." 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(d)(3).

35. Telephone solicitations under 47 C.F.R. § 64.1200(c)(2) include text messages and "a cell phone is presumptively residential." *Chennette v. Porch.com, Inc.*, 50 F.4th 1217, 1225 (9th Cir. 2022). *See* 47 C.F.R. § 64.1200(e) ("The rules set forth in paragraph (c) and (d) of this section are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers").

## <u>PLAINTIFF STEIDINGER'S FACTUAL ALLEGATIONS</u>

36. Plaintiff Steidinger registered his residential cellular telephone number, 217-XXX-6904 (the "6904 Number") with the National Do-Not-Call Registry on April 18, 2018.

37. At all relevant times, Plaintiff Steidinger used the 6904 Number for personal and residential purposes.

38. After discussing potentially taking a home sleep test with Plaintiff Steidinger's healthcare provider (who is not Blackstone or a Blackstone employee), Plaintiff Steidinger began receiving telephone calls and text messages to his 6904 Number from Blackstone. During his first and only live conversation with Blackstone, Blackstone told Plaintiff Steidinger that he could receive a home sleep test for $100. Plaintiff Steidinger replied that he was not interested. Despite Plaintiff advising Blackstone that he was not interested in the home sleep test, Blackstone proceeded to send repeated telephone solicitation text messages and telephone calls to Plaintiff Steidinger's 6904 Number.

9

39.    As depicted in the below screenshots, Blackstone's text messages encourage Plaintiff Steidinger to contact Blackstone in order to pay for a home sleep test. *See, e.g.:*





10







ER 000029



40.     On repeated occasions – including on October 2, 2023, October 3, 2023, and November 27, 2023 – Plaintiff Steidinger messaged Defendant "STOP" and "Stop" in order to get Defendant to stop contacting him.

41.     However, despite Plaintiff Steidinger's unequivocal instructions that Defendant stop all text messages, Defendant continued to place telemarketing text messages and telephone calls to the 6904 Number as recently as January 2024.

42.     Blackstone would also text Plaintiff Steidinger from different phone numbers after he texted "stop."

43.     Additionally, by repeatedly messaging Blackstone to "STOP" contacting him, Plaintiff Steidinger terminated any established business relationship that could have existed between the Parties. Indeed, a "subscriber's seller-specific do-not-call request . . . terminates an

12

established business relationship for purposes of telemarketing and telephone solicitation even if the subscriber continues to do business with the seller." 47 C.F.R. § 64.1200(f)(5)(i).

44. Further, even though Defendant had the ability to program its telephone dialing systems to honor "STOP" requests immediately, Defendant instead deliberately programmed its telephone dialing systems to ignore such requests and continue sending telemarketing messages to consumers for months after receiving a "Stop" request.

45. None of Defendant's messages to Plaintiff Steidinger's were for an emergency purpose.

46. Defendant is not Plaintiff Steidinger's healthcare provider and never rendered any healthcare services to Plaintiff Steidinger.

47. Plaintiff Steidinger was damaged by Defendant's unconsented text messages and calls. In addition to using Plaintiff Steidinger's telephone data, phone storage, and battery life, Plaintiff Steidinger's privacy was wrongfully invaded, and Plaintiff Steidinger has become understandably aggravated with having to deal with the frustration of repeated, unwanted text messages and calls, forcing Plaintiff to divert attention away from other activities.

## PLAINTIFF KOLLER'S FACTUAL ALLEGATIONS

48. Plaintiff Koller is the account holder of a cellular telephone number ending in 8855 (the "8855 Number").

49. Plaintiff Koller is the regular user of the 8855 Number and uses the 8855 Number as her residential telephone line.

50. During the time frame relevant to this Complaint, Blackstone caused multiple unwanted and unsolicited text messages to be transmitted to the 8855 Number.

13

51.    Upon information and belief, Blackstone obtained Plaintiff Koller's phone number from Plaintiff Koller's doctor who recommended Blackstone as a provider able to perform a sleep study.

52.    Plaintiff Koller did not give her physician permission to convey to Blackstone that Plaintiff Koller consented to Blackstone's calls.[4]

53.    All of the text messages Blackstone sent to Plaintiff Koller have been for the purpose of soliciting the sale of Blackstone's sleep study. Blackstone's sleep studies are medical procedures and are therefore "consumer goods or services."

54.    Because Blackstone's text messages were for the purpose of soliciting the sale of its sleep study, which is a consumer good or service, these texts were "telephone solicitations" and/or "telemarketing" under the TCPA and "telephonic sales calls" under the FTSA.

55.    Finally, Blackstone sent or caused to be sent the telephonic sales text messages, thereby making Blackstone a "telephone solicitor" under the FTSA and subjecting it to the TCPA, which applies to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers.

56.    Blackstone did not have Plaintiff Koller's prior express consent to contact her on her cellular phone.

57.    Blackstone did not have Plaintiff Koller's prior written consent to contact her on her cellular phone.

---

[4] *See Keim v. ADF MidAtlantic, LLC*, 328 F.R.D. 668, 683 (2018) (The FCC cautioned, however, that the intermediary may only *convey* consent that has actually been provided by the consumer; the intermediary cannot provide consent on behalf the consumer.) (Citations and quotations omitted).

14

58.　　On more than one occasion, the first of which was on or around July 27, 2023, Plaintiff Koller asked Blackstone to stop texting her, but Blackstone continued to send text messages to Plaintiff, the latest of which (as of this writing) was on January 26, 2024. A sampling of the text messages received by Plaintiff Koller can be seen in the following screenshots:

 

15



59.    Despite requirements specifically outlined by the FCC for text messages,[5] Blackstone's text messages fail to provide an opt-out option.

---

[5] *See e.g.*, 12 C.F.R. § 64.1200 *et seq.*

ER 000034

60.    Blackstone sent multiple telemarketing text messages to Plaintiff Koller subsequent to Plaintiff Koller instructing Blackstone to stop.

61.    More specifically, after Plaintiff Koller texted "stop" to Defendant on July 27, 2023, Blackstone sent no less than an additional 35 telemarketing text messages to Plaintiff.

62.    Plaintiff Koller has replied "stop" to Blackstone's text messages no less than 8 times, yet Blackstone continued and continues to send telemarketing text messages to Plaintiff Koller.

63.    When texting "stop" did not work, on November 15, 2023, Plaintiff Koller called Blackstone and informed Blackstone's representative that she had no interest in Blackstone's services and to stop contacting her.

64.    During the November 15, 2023 call, Blackstone's representative confirmed that Blackstone had previously received Plaintiff Koller's do-not-call requests, and agreed to add Plaintiff Koller to Blackstone's internal do-not-call list.

65.    Despite acknowledging Plaintiff Koller's do-not-call requests, Blackstone continued and continues to send telemarketing text message to Plaintiff.

66.    Blackstone sent telemarketing text messages to Plaintiff Koller more than thirty days after Plaintiff Koller's initial stop request on July 27, 2023. For example, Blackstone texted Plaintiff Koller on September 19, 2023 and October 25, 2023. The telemarketing text messages Blackstone sent to Plaintiff Koller on September 19, 2023 and October 25, 2023 were each sent more than thirty days after Plaintiff Koller's initial stop request on July 27, 2023.

67.    Blackstone's text messages constitute telemarketing and or solicitation because the purpose of the text messages was to encourage the purchase of Blackstone's services.

68.    As evidenced by Blackstone's failure to honor Plaintiff Koller's requests to stop

17

texting Plaintiff, Blackstone's internal do-not-call policy (to the extent that it even exists) violates

47 C.F.R. § 64.1200(d) by, among other things, not recording and honoring do-not-call requests.

      69.    A quick internet search reveals that other consumers have been subjected to the

same treatment:[6]



**Christina W**
★☆☆☆☆                        09/15/2023

I've been harassed by this company for almost a year now. After deciding not to proceed with a sleep study, the company continued to call me and text me hundreds of time each day, literally every few minutes for months, even after stating that I did not want to proceed. After blocking 10+ phone numbers, the calls finally stopped for a couple months before picking back up from new numbers.



**Sarah R**
★☆☆☆☆                        09/22/2023

Juan harasses you and sends texts alert daily multiple times a day about scheduling a service when I've already told them over 20 times I'm not interested.



**Brittany W**
★☆☆☆☆                        10/27/2023

They dont take my insurance and they still keep calling and texting from different numbers ( I respond stop to the text and then block the number) trying to get me to pay for the sleep study out of pocket. I have told them verbally over the phone that I am not interested and to remove my number from their list, then they started calling me about another patient. This company seems like a scam

---

[6] *See* https://www.bbb.org/us/fl/tampa/profile/sleep-apnea/blackstone-medical-services-llc-0653-90130035/customer-reviews (Last Visited: Feb. 9, 2024).

ER 000036



**Jayne H**

★☆☆☆☆                                                    12/07/2023

This company will text and call you nonstop and wont stop for anything to get you to schedule a sleep test. Ive blocked 10 different numbers and they keep finding me. I was actually planning to do the test until they called me 19 times in one day. I would never ever give my business to a company that behaves this way.




**Jesus D**

★☆☆☆☆                                                    12/27/2023

This company is a nightmare. My doctor made the mistake of sending a sleep study prescription to them right before I went on vacation. I talked to them and explained I will do it when I come back. They have sent me literally hundreds of text messages, and dozens of phone calls, sometimes impersonating the doctor ****** and asking me to do the study before I come back. I was thousands of miles away, and on vacation. I blocked their phone number many times, but they are a very sneaky company changing the caller ID every time they text or call. All this prompted me to check the reviews online. Holy macro! Needless to say, I will never work with these clowns.




**Alvin H**

★☆☆☆☆                                                    01/17/2024

This company wont stop harassing me. After I told them I didnt feel comfortable giving them my credit card number and paying for services I had not yet gotten they got rude. I told them I would needed to do more investigation and found out they have been doing this to serveral people. I told them I was no longer intrested in moving forward with them and to stop calling and text. Since than I get atleast 2 message a day and I have told them everytime I am not intrested but they will not stop

ER 000037

**Natoshia T**

★☆☆☆☆                                                      01/19/2024

My dr put in a sleep study for me and I was told I would be hearing from Blackstone. The next day I received a text asking me to call. Then a few hours later received another text saying they had been trying to call me and had been leaving messages but I never had any. I call them and they tell me its covered by my insurance but I have to pay $250. I tell them I dont have the money and will wait for the test. They noted the account. Next day, text messages start again to have me call them to set up my study. I call again and tell them no. Next day comes and they text again, I ignore it. They call me and I tell them again Im waiting. She notes the account. 1 hour later I receive two more text messages from them. So I called and asked to speak to a supervisor and was transferred with no answer. Went back to the same guy and he transferred me again. This time the guy who answered told me that it doesnt work like that when I asked to speak to a supervisor. So I decided to yell at him. He pulls my account up and he says yeah it says youre not interested in the test so I ask why I am being called and texted and he said it was a problem in their end and he promised it wont happen again. Would never do business with a company like this.

70.     Upon information and belief, Blackstone maintains and/or has access to outbound transmission reports for all text messages sent promoting its services and goods. These reports show the dates, times, target telephone numbers, and content of each message sent to Plaintiff Koller and the putative class members.

71.     Upon information and belief, Blackstone maintains and/or has access to inbound transmission reports for all text messages or telephone calls received in response to its text message sent promoting its services and goods. These reports show the dates, times, the targeted telephone numbers, and content of each message to Defendant.

72.     Blackstone's failure to honor stop requests constitutes abusive telemarketing.

73.     As a result of Blackstone's conduct, Plaintiff Koller suffered a nuisance, invasion of privacy, frustration, storage space, and lost time tending to unwanted text messages.

74.     Specifically, with respect to waste of time and nuisance, Plaintiff Koller took the time to ask Blackstone to stop sending text messages, only to continue to receive even more text messages. When her request to stop sent via text message was unsuccessful, Plaintiff also took the time to call Blackstone to request it stop sending messages. Yet, Blackstone continues to send its unwanted telemarketing texts to Plaintiff Koller.

20

75.     Blackstone's unwanted telephonic sales calls caused Plaintiffs and the putative class members harm, including statutory damages, inconvenience, invasion of privacy, aggravation, annoyance, and violation of their statutory privacy rights.

76.     Blackstone's text message spam caused Plaintiffs and the putative class members harm, including violations of their statutory rights, trespass, annoyance, nuisance, invasion of their privacy, and intrusion upon seclusion.

## CLASS ACTION ALLEGATIONS

### A.  The Class

77.     Plaintiffs bring this case as a class action on behalf of themselves and all others similarly situated.

78.     Plaintiffs Steidinger and Koller represent, and are members of the following class (the "Internal Do Not Call List Class"):

**Internal Do Not Call List Class**: All persons within the United States who, within the time frame(s) relevant to this action, (1) received two or more text messages from Blackstone or anyone acting on Blackstone's behalf, (2) within any 12-month period, (3) for the purpose of selling Blackstone's products and/or services, (4) including at least one of those text messages being placed more than 30 days after such person requested that Blackstone stop calling and/or texting, and (5) which messages lacked an opt-out option

79.     Plaintiff Steidinger represents, and is a member of, the following class (the "Do Not Call Registry Class"):

**Do Not Call Registry Class**: All persons in the United States who from four years prior to the filing of this action (1) were sent text messages and/or telephone calls by or on behalf of Defendant; (2) more than one time within any 12-month period; (3) where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days; (4) for the purpose of encouraging the purchase or rental of Defendant's products and/or services; and (5) where either (a) Defendant did not obtain prior express written consent to message the person or (b) the called person previously advised Defendant to "STOP" messaging them.

ER 000039

80. Plaintiff Koller represents, and is a member of the following class (the "FTSA Class"):

> **FTSA Class**: All persons within the State of Florida who, (1) were sent a text message from Blackstone or anyone acting on Blackstone's behalf; (2) for the purpose of soliciting Defendant's goods and/or services, and (2) had previously communicated to Blackstone that they did not wish to receive Defendant's text messages.

81. Defendant and its employees or agents are excluded from the Class. Plaintiffs do not know the number of members in the classes but believe the class members number in the thousands, if not more.  Thus, this matter should be certified as a class action to assist in the expeditious litigation of this matter.

**B. Numerosity**

82. Blackstone purports to be one of the leading service providers in the home sleep testing industry. As of February 9, 2024, the Company has 210 employees and millions of dollars in annual revenue.

83. In light of Blackstone's business size, it is reasonable to conclude that Blackstone has placed calls to cellular telephone numbers belonging to thousands of consumers throughout the United States against their express wishes.

84. Upon information and belief, Defendant placed telemarketing messages to telephone numbers registered on the National Do-Not-Call List belonging to thousands of persons throughout the United States where it lacked prior express written consent to place such messages and/or such persons had previously asked Defendant to cease messaging them.  The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

85. Upon information and belief, Defendant placed telemarketing and solicitation messages to telephone numbers belonging to thousands of persons throughout the United States

22

where it lacked prior express written consent to place such messages and/or such persons had previously asked Defendant to cease messaging them. The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

86. The exact number and identities of the Class members are unknown at this time and can only be ascertained through discovery. Identification of the Class members is a matter capable of ministerial determination from Defendant's records.

### C. Common Questions of Law and Fact

87. There are questions of law and fact common to the Class that predominate over any questions affecting only individual Class members. These questions include:

   a. Whether Blackstone's messages constitute "telephone solicitations" or "telemarketing" (under the TCPA) or "telephonic sales calls" (under the FTSA);

   b. Whether Defendant can meet its burden of showing it obtained prior written consent to place each telemarketing message and call;

   c. Whether the messages and calls made to Plaintiffs and Class Members violate the Do-Not-Call Registry rules and regulations;

   d. Whether Defendant deliberately programmed its telephone dialing systems to ignore "Stop" requests and continue sending telemarketing messages and calls to telephone numbers that had previously messaged "Stop";

   e. Whether Blackstone continued to send telemarketing text messages after being asked to stop;

   f. Whether Blackstone maintains an internal do-not-call list and instructs its employees on how to use the list;

   g. Whether Blackstone had any processes or protocols in place to stop texts to persons who asked that the messages stop;

23

h.  Whether Blackstone had the required policies and procedures in place to honor do-not-call requests;

i.  Whether Blackstone routinely honors such requests;

j.  Whether Blackstone engaged in abusive telemarketing practices;

k.  Whether Defendant's conduct was knowing and/or willful;

l.  Whether Defendant is liable for damages, and the amount of such damages; and

m.  Whether Defendant should be enjoined from such conduct in the future.

88.    The common questions in this case are capable of having common answers.  If Plaintiffs' claim that Defendant routinely placed telemarketing text messages and calls to telephone numbers registered on the National Do-Not-Call Registry, and/or over requests to stop the messages, is accurate, Plaintiffs and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

## D.  Typicality

89.    Plaintiffs' claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

## E.  Protecting the Interests of the Class Members

90.    Plaintiffs will fairly and adequately protect the interests of the Class and have retained counsel experienced in handling class actions and claims involving unlawful business practices, and specifically claims under the TCPA.  Neither Plaintiffs nor their counsel have any interests which might cause them not to vigorously pursue this action.

## F.  Proceeding Via Class Action is Superior and Advisable

91.    A class action is the superior method for the fair and efficient adjudication of this controversy.  The interest of Class members in individually controlling the prosecutions of separate

24

claims against Defendant is small because it is not economically feasible for Class members to bring individual actions.

## COUNT I
## VIOLATIONS OF THE TCPA
### (47 U.S.C. § 227, et seq. and 47 C.F.R. § 64.1200(c)(2) & (d)(3))

92.     The Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

93.     Plaintiffs bring this claim on behalf of themselves and the Classes.

94.     47 C.F.R. § 64.1200(c)(2) provides that "No person or entity shall initiate any telephone solicitation to . . . (2) A residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government. Such do-not-call registrations must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator."

95.     47 C.F.R. § 64.1200(d)(3) provides that "No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards: . . . Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made."

96.     The TCPA provides a private right of action to "A person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations . . . ." 47 U.S.C. § 227(c)(5).

25

97. Defendant initiated more than one telephone solicitation text message and/or call to telephone numbers belonging to Plaintiff Steidinger and members of the Class within a 12-month period despite the fact that Plaintiff and other class members' telephone numbers were registered on the National Do-Not-Call Registry at all relevant times.

98. Each of the aforementioned messages and calls by Defendant constitutes a violation of the TCPA and 47 C.F.R. § 64.1200(c)(2) by Defendant.

99. In addition, Defendant initiated more than one telephone telemarketing text message and/or call to telephone numbers belonging to Plaintiffs and members of the Class within a 12-month period where the telephone subscriber had previously made a do-not-call request to Defendant, and Defendant failed to honor the do-not-call request within a reasonable period of time from the date the request was made.

100. Each of the aforementioned messages by Defendant constitutes a violation of the TCPA and 47 C.F.R. § 64.1200(d)(3) by Defendant.

101. Plaintiffs and the Class are entitled to an award of $500.00 in statutory damages for each text message sent in violation of the TCPA pursuant to 47 U.S.C. § 227(c)(5)(B).

102. Additionally, Plaintiffs and the Class are entitled to and seek injunctive relief prohibiting such conduct by Defendant in the future pursuant to 47 U.S.C. § 227(c)(5)(A).

103. Further, Plaintiffs and the Class are also entitled to and do seek a declaration that:

- Defendant violated the TCPA;

- Defendant initiated more than one telephone solicitation text and/or call to telephone numbers belonging to Plaintiff Steidinger and members of the Class within a 12-month period despite the fact that Plaintiff and other class members' telephone numbers were registered on the National Do-Not-Call Registry at all

26

relevant times; and

- Defendant initiated more than one telephone telemarketing text message and/or call to telephone numbers belonging to Plaintiffs and members of the Class within a 12-month period where the telephone subscriber had previously made a do-not-call request to Defendant, and Defendant failed to honor the do-not-call request within a reasonable period of time from the date the request was made.

**COUNT II**
**Willful Violations of the Telephone Consumer Protection Act,**
**(47 U.S.C. § 227, *et seq.* and 47 C.F.R. § 64.1200(c)(2) & (d)(3))**

104.    Plaintiffs repeat and reallege the above paragraphs of this Complaint and incorporates them herein by reference.

105.    Plaintiffs bring this claim on behalf of themselves and the Class.

106.    Defendant is fully aware at all relevant times that the telephone numbers it sends telephone solicitations to are registered on the National Do-Not-Call Registry. Nonetheless, Defendant knowingly and/or willfully initiated more than one telephone solicitation text message and/or call to telephone numbers belonging to Plaintiff and members of the Class within a 12-month period even though Plaintiff and other class members' telephone numbers were registered on the National Do-Not-Call Registry at all relevant times.

107.    In addition, Defendant deliberately programmed its telemarketing telephone systems to continue sending telemarketing messages and calls to consumers after receiving a "Stop" request.  Accordingly, Defendant knowingly and/or willfully initiated more than one telephone telemarketing text message to telephone numbers belonging to Plaintiffs and members of the Class within a 12-month period where the telephone subscriber had previously made a do-not-call request to Defendant, and Defendant failed to honor the do-not-call request within a reasonable period of time from the date the request was made.

27

108.    Each of the aforementioned messages and/or calls by Defendant constitutes a knowing and willful violation of the TCPA.

109.    Plaintiffs and the Class are entitled to an award of up to $1,500.00 in statutory damages for each message sent in knowing and willful violation of the TCPA pursuant to 47 U.S.C. § 227(c)(5)(C).

110.    Additionally, Plaintiffs and the Class are entitled to and seek injunctive relief prohibiting such conduct by Defendant in the future.

111.    Further, Plaintiffs and the Class are also entitled to and do seek a declaration that:

- Defendant knowingly and/or willfully violated the TCPA;

- Defendant knowingly and/or willfully initiated more than one telephone solicitation text message and/or call to telephone numbers belonging to Plaintiff and members of the Class within a 12-month period despite the fact that Plaintiff and other class members' telephone numbers were registered on the National Do-Not-Call Registry at all relevant times;

- Defendant knowingly and/or willfully initiated more than one telephone telemarketing text message to telephone numbers belonging to Plaintiffs and members of the Class within a 12-month period where the telephone subscriber had previously made a do-not-call request to Defendant, and Defendant failed to honor the do-not-call request within a reasonable period of time from the date the request was made; and

- It is Defendant's practice and history to place telephone solicitations and telemarketing messages to persons whose telephone numbers are registered on the National Do-Not-Call Registry and to persons who had previously made a do-not-

28

call request to Defendant.

## COUNT III
### Violation of 47 U.S.C. § 227(c) and 16 C.F.R. § 310.4(b)(iii)(A)

112.    Plaintiffs repeat and reallege the above paragraphs of this Complaint and incorporates them herein by reference.

113.    The Defendant violated the TCPA by calling, within a 12-month period, persons who asked Defendant to stop placing calls and/or text messages to their telephone number.

114.    In pertinent part, 16 C.F.R. § 310.4(b)(1)(iii)(A) provides:

(1) It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to engage in, or for a seller to cause a telemarketer to engage in, the following conduct:

(iii) Initiating any outbound telephone call to a person when:

(A) That person previously has stated that he or she does not wish to receive an outbound telephone call made by or on behalf of the seller whose goods or services are being offered or made on behalf of the charitable organization for which a charitable contribution is being solicited; […]

115.    The purpose of Defendant's text messages was to offer or promote goods or services for purchase or rental.

116.    Defendant practiced abusive telemarketing when it continued to place sales calls to Plaintiffs' and the putative class members' telephone numbers after they told Defendant they did not wish to receive further calls from or on behalf of Defendant.

117.    Plaintiffs and the putative class members made requests to Defendant not to receive text messages from Defendant.

118.    Defendant failed to honor Plaintiffs' and the putative class members' opt-out requests.

29

119. Pursuant to section 227(c)(5) of the TCPA, Plaintiffs and the putative class members are entitled to an award of $500.00 in statutory damages, for each and every negligent violation.

120. In the event Defendant's conduct is found to be knowing or willful, Plaintiffs and putative class members are entitled to an award of $1,500.00 in statutory damages per violation.

121. Plaintiffs and the putative class members are also entitled to and seek injunctive relief prohibiting Defendant's illegal conduct in the future, pursuant to section 227(c)(5).

**COUNT IV**
**Violation of 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(b)(3)**

122. Plaintiffs repeat and reallege the above paragraphs of this Complaint and incorporates them herein by reference.

123. Under the TCPA, 47 U.S.C. § 227(c)(5), a person may bring a claim for receiving more than one call in a 12-month period in violation of rules and regulations prescribed under 47 U.S.C. § 227(c).

124. One set of such regulations are codified at 47 C.F.R 64.1200(b)(3) and require companies to "provide an automated, interactive voice–and/or key press-activated opt-out mechanism for the called person to make a do-not-call request."

125. "The TCPA's prohibition against auto dialed calls applies to text message calls as well as voice calls." *Liotta*, 2017 WL 1178083, at *2 n. 1.

126. Blackstone sent telemarketing texts and failed to provide any opt-out mechanism.

127. Plaintiffs nevertheless responded to Blackstone's messages "stop" but Blackstone ignored their repeated requests.

128. Because Blackstone fails to include in its text messages an automated or key press-activated opt-out mechanism to make a do-not-call request, it violates the TCPA.

ER 000048

129.    Pursuant to section 227(c)(5) of the TCPA, Plaintiffs and the putative class members are entitled to an award of $500.00 in statutory damages, for each and every negligent violation.

130.    In the event Blackstone's conduct is found to be knowing or willful, Plaintiffs and putative class members are entitled to an award of $1,500.00 in statutory damages per violation.

131.    Plaintiffs and the putative class members are also entitled to and seek injunctive relief prohibiting Blackstone's unlawful conduct in the future, pursuant to section 227(c)(5).

### COUNT V
### Violation of the FTSA, Fla. Stat. § 501.059(5)

132.    Plaintiffs repeat and reallege the above paragraphs of this Complaint and incorporates them herein by reference.

133.    The FTSA provides that "[a] telephone solicitor or other person may not initiate [a] … text message … to a consumer, business, or potential donor … who has previously communicated to the telephone solicitor or other person that he or she does not wish to receive an outbound … text message … made by or on behalf of the seller whose goods or services are being offered[.]" Fla. Stat. § 501.059(5).

134.    "Telephone solicitor" is defined as "a natural person, firm, organization, partnership, association, or corporation, or a subsidiary or affiliate thereof, doing business in this state, who makes or causes to be made a telephonic sales call[.]" Fla. Stat. § 501.059(1)(i).

135.    "Telephonic sales call" is defined as a "…text message … to a consumer for the purpose of soliciting a sale of any consumer goods or services[.]" Fla. Stat. § 501.059(1)(j).

31

136.    Black's Law Dictionary defines "service" as "the act of doing something useful for a person or company, usu[ally] for a fee." Black's Law Dictionary 1491 (9th ed.2009). *Wooten v. Quicken Loans, Inc.*, 626 F.3d 1187, 1193 (11th Cir. 2010).

137.    Blackstone sent text messages to Plaintiff Koller and putative class members intended to solicit the sale of sleep studies and other services for a fee.

138.    Sleep studies are "consumer goods or services" within the meaning of Fla. Stat. § 501.059(1)(c).

139.    Blackstone's text messages intended to solicit the sale of sleep studies and other services were therefore "telephonic sales calls."

140.    Blackstone, as the entity placing the telephonic sales calls or causing them to be made, is therefore a "telephone solicitor."

141.    Plaintiff Koller and putative class members requested Blackstone to stop sending them telephonic sales text messages, but Blackstone continued.

142.    Blackstone's continued text messages to Plaintiff and putative class members after they asked Defendant to stop sending the text messages, therefore violate Fla. Stat. § 501.059(5).

143.    Each member of the putative Class has constitutional standing as, by definition, each member expended the time and effort to ask Blackstone to stop, yet continued to be sent text messages, invading their privacy, further wasting their time, and constituting a personal nuisance.

144.    For violations of Fla. Stat. § 501.059(5), Plaintiff Koller and putative class members are entitled to $500 per text message in statutory damages. Fla. Stat. § 501.059(10)(a).

145.    Plaintiff Koller and putative class members are entitled to $1,500 per text message should the Court find the violations willful. Fla. Stat. § 501.059(10)(b).

ER 000050

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs pray that judgment be entered against the Defendant as follows:

A.  An order certifying this case as a class action on behalf of the Classes as defined above, and appointing Plaintiffs as the representative of the Classes and Plaintiffs' counsel as Class Counsel;

B.  Injunctive relief prohibiting such violation of the TCPA and FTSA by Defendant in the future;

C.  Statutory damages of $500.00 for each and every text message in violation of the TCPA and FTSA;

D.  Treble damages of up to $1,5000.00 for each and every text message in willful and/or knowing violation of the TCPA and FTSA;

E.  An injunction requiring Blackstone to comply with 47 C.F.R. § 64.1200(d) by

   1)  maintaining the required written policies;

   2)  providing training to their personnel engaged in telemarketing;

   3)  maintaining a do-not-call list;

   4)  and such further and other relief as the Court deems necessary.

F.  An award of attorneys' fees and costs to counsel for Plaintiffs and the Classes; and

G.  Such other and further relief as may be just and proper.

### TRIAL BY JURY DEMANDED ON ALL COUNTS

Dated: April 5, 2024                    Respectfully submitted,

                                        By   /s/ Sergei Lemberg
                                           Sergei Lemberg
                                           LEMBERG LAW, L.L.C.
                                           43 Danbury Road, 3rd Floor
                                           Wilton, CT 06897
                                           Telephone: (203) 653-2250

33

Facsimile:  (203) 653-3424
*Attorneys for Plaintiffs*

By: /s/ Scott D. Owens
    Scott D. Owens, Esq.
    Florida Bar No. 0597651 (to file *PHV*)
    SCOTT D. OWENS, P.A.
    2750 N. 29th Ave., Ste. 209A
    Hollywood, FL 33020
    Telephone: (954) 589-0588
    Facsimile: (954) 337-0666
    scott@scottdowens.com

By: /s/Kimberly H. Wochholz
    Kimberly H. Wochholz
    Fla. Bar No. 0092159 (to file *PHV*)
    The Consumer Rights Law Group, PLLC
    P.O. Box 5326
    Sun City Center, FL 33571
    Phone: 813-413-5710
    Fax: 866-535-7199
    Kim@ConsumerRightsLawGroup.com
    *Attorneys for Plaintiffs*

34

ER 000052

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on April 5, 2024, a true and correct copy of the foregoing was filed with the Clerk of the Court through the ECF system which gave notice of such filing to all parties of record.

*/s/ Sergei Lemberg*

Sergei Lemberg

ER 000053

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS**

|  |  |
|---|---|
| Joseph Jones, Seth Steidinger and Natasha Koller, *on behalf of themselves and all others similarly situated*,<br><br>Plaintiffs,<br><br>v.<br><br>Blackstone Medical Services, LLC<br><br>Defendant. | Case No. 1:24-cv-01074-JEH<br><br>**CONSOLIDATED CLASS ACTION COMPLAINT**<br><br>Jury Trial Demanded |

Plaintiffs Joseph Jones (hereinafter "Plaintiff Jones"), Seth Steidinger (hereinafter "Plaintiff Steidinger") and Natasha Koller (hereinafter "Plaintiff Koller") (collectively referred to as "Plaintiffs"), on behalf of themselves and all others similarly situated, bring this Consolidated Class Action Complaint against Defendant Blackstone Medical Services, LLC as follows:

## I.    INTRODUCTION

1.  Plaintiffs bring this class action for damages resulting from the illegal actions of Defendant Blackstone Medical Services, LLC ("Defendant" or "Blackstone").  Defendant placed repeated telemarketing text messages and calls to Plaintiffs' telephones – over Plaintiffs' requests for Defendant to stop – in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* (the "TCPA") and the Florida Telephone Solicitation Act ("FTSA"), Fla. Stat. § 501.059(5), thereby invading Plaintiffs' privacy.

2.  Defendant is a Florida-based company that aggressively sells home sleep tests.  It is a sales company, not a healthcare provider.  Its website identifies no physicians or other medical

professional on its staff.[1]  Instead, Blackstone employs hundreds of people for positions such as "Inside Sales Professional" to contact people to sell home sleep tests.[2] Blackstone operates an aggressive telemarketing campaign where it repeatedly sends text messages and telephone calls to telephone numbers that have been placed on the National Do-Not-Call Registry for at least 30 days and over the messaged party's objections in order to sell home sleep tests.

3.   Indeed, after Plaintiff Steidinger's telephone number was added to the National Do-Not-Call Registry and after Plaintiff Steidinger advised Blackstone he was not interested in its home sleep tests and repeatedly messaged Blackstone to "STOP," Blackstone continued to place repeated telemarketing text messages encouraging Plaintiff to contact Blackstone and purchase an at home sleep test (e.g., "Hi, this is Juliana from Blackstone Medical Services! Are you ready for the Home Sleep test?"; "Hi, we still got your prescription for the sleep apnea test. We have made several attempts to get a hold of you to set it up. Please call back at 813-708-7651 to schedule. Best regards!").

4.   Plaintiff Koller also repeatedly requested Blackstone to "STOP" sending her its solicitation text messages but Defendant continued to place repeated telemarketing text messages encouraging Plaintiff to contact Blackstone.

---

[1] *See* https://www.blackstonemedicalservices.com/vick-tipnes/ (last visited Feb. 13, 2024); https://www.blackstonemedicalservices.com/about/ (last visited Feb. 13, 2024); https://www.blackstonemedicalservices.com/executives/ (last visited Feb. 13, 2024) (identifying executives as a business consultant, director of sales, general counsel, and HR manager)

[2] *See, e.g.,* https://www.ziprecruiter.com/c/Blackstone-Medical-Services/Job/Inside-Sales-Representative/-in-Tampa,FL?jid=8653af6305b08a6d&utm_campaign=google_jobs_apply&utm_source=google_jobs_apply&utm_medium=organic (Blackton's job posting seeks a "high energy Inside Sales Professional") (last visited Feb. 13, 2024).

2

5. Plaintiff Jones received a barrage of text messages despite never having given consent to be contacted and requesting Defendant stop multiple times.

6. Plaintiffs are not alone. Other consumers complain about Blackstone's aggressive telemarketing and failure to abide by 'stop' requests. *See, e.g.,* the following representative Yelp reviews:[3]

- "This company has been sending me text messages and phone calls at least three times a day about getting a sleep study done. I have expressed that I do NOT want the test done, as I have already gotten it done with another provider. They still continue to send me messages and calls and it is frustrating. It is as if they will not take no as an answer."

- "My doctor referred me for a home sleep study, so they reached out to me. I'll give the doctor the benefit of the doubt that he just enters a referral into a system and doesn't know what company will be fulfilling the order/service. They have been calling and texting multiple times a day for weeks on end. No matter how many times you say 'No', they will pass your info to someone else in their call center to blow up your phone. Unless you can block the entire 813 area code, they have an endless supply of numbers to circumvent your attempt to avoid them."

- "This company will NOT STOP calling and texting us, even though we have repeatedly told them to stop. Every time we block their number they text or call from another number!"

- "This is a very sketchy company. I was curious about doing a sleep study, so heard more information. After reading some bad reviews and discussing it with my doctor, I decided to hold off doing the study. Now I am bombarded with calls/texts asking me if I want to move forward even after telling them I am no longer interested. It's been over a month and I still receive texts from them. They also text from different numbers, so blocking them won't help. Very sketchy and so glad I didn't go with them."

- "This company is the worst. They have consistently harassed me even though I have turned down their services. I blocked their number and they use another number to text. DO NOT give them your number. Do your research, this company is not trustworthy."

This action seeks to certify three classes. Plaintiffs Jones, Koller, and Steidinger seek to represent the following class:

> **Internal Do Not Call List Class**: All persons within the United States who, within the time frame(s) relevant to this action, (1) received two or more text messages from Blackstone or anyone acting on Blackstone's behalf, (2) within any 12-month period, (3) for the purpose of selling Blackstone's products and/or services, and (4)

---

[3] https://www.yelp.com/biz/blackstone-medical-services-tampa (last visited Feb. 13, 2024).

ER 000056

including at least one of those text messages being placed more than 30 days after such person requested that Blackstone stop calling and/or texting.

Plaintiff Steidinger seeks to represent the following class:

**Do Not Call Registry Class**: All persons in the United States who from four years prior to the filing of this action (1) were sent text messages and/or telephone calls by or on behalf of Defendant; (2) more than one time within any 12-month period; (3) where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days; (4) for the purpose of encouraging the purchase or rental of Defendant's products and/or services; and (5) where either (a) Defendant did not obtain prior express written consent to message the person or (b) the called person previously advised Defendant to "STOP" messaging them.

And Plaintiffs Jones and Koller seeks to represent the following class:

**FTSA Class**: All persons within the State of Florida who, (1) were sent a text message from Blackstone or anyone acting on Blackstone's behalf; (2) for the purpose of soliciting Defendant's goods and/or services, and (2) had previously communicated to Blackstone that they did not wish to receive Defendant's text messages.

## II.  JURISDICTION

7. Subject matter jurisdiction exists pursuant to 28 U.S.C. § 1331 as this action arises out of Defendant's repeated violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et. seq.* (the "TCPA") and 47 C.F.R. § 64.1200.

8. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367, as the state law claims under the FTSA form part of the same case or controversy as Plaintiffs' claims under the TCPA.

9. The Court has personal jurisdiction over Defendant and the venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Plaintiff Steidinger resides in this District and received the communications from Defendant that form the basis of his claims within this District. Numerous putative class members from all three classes reside in this District and

4

Defendant continuously called persons within this District for the purpose of marketing selling, and did in fact sell, medical equipment.

## III.   PARTIES

10. Plaintiff Steidinger is an adult individual and a consumer residing in Gridley, Illinois, and is a "person" as defined by 47 U.S.C. § 153(39).

11. Plaintiff Koller is a natural person and a consumer who, at all times relevant to this action, was a resident of the State of Florida, and is a "person" as defined by 47 U.S.C. § 153(39).

12. Plaintiff Jones is an individual and a consumer who, at all times relevant to this action, was a resident of Orange County, Florida and is a "person" as defined by 47 U.S.C. § 153(39).

13. Defendant, Blackstone Medical Services, LLC, is a Florida business entity with a principal place of business at 550 North Reo Street, Suite #250, Tampa, Florida 33609, and is a "person" as defined by 47 U.S.C. § 153(39).

### OVERVIEW OF THE TCPA AND THE FTSA

14. Enacted in 1991, at 47 U.S.C. § 227, *et seq*., "Senator Ernest Hollings, the TCPA's sponsor, described these calls as 'the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall.' 137 Cong. Rec. 30, 821 (1991)." *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242, 1256 (11th Cir. 2014).

15. Likewise, the Florida Telephone Solicitation Act ("FTSA"), Fla. Stat. § 501.059, was amended in 2021 to further protect consumers from these intrusive nuisance calls by creating a private right of action for do-not-call violations, allowing the recovery of $500 to $1,500 per call in statutory damages.

5

16. "Unrestricted telemarketing," Congress later determined, "can be an intrusive invasion of privacy." *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012).

17. "Congress determined [this] federal legislation was needed because telemarketers, by operating interstate, were escaping state-law prohibitions on intrusive nuisance calls." *Id.*

18. In part, the TCPA prohibits "initiat[ing] any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity[.]" 47 C.F.R. § 64.1200(d).

19. The FCC has recognized that the TCPA and implementing regulations apply to "both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls[.]" *In re Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd 14014, 14115 (2003).

20. The procedures instituted must meet certain minimum standards, including, but not limited to: (1) having a written policy, available on demand, for maintaining a do-no-call list; (2) informing and training personnel engaged in any aspect of telemarketing on the existence and use of the do-not-call list; (3) recording and honoring do-not-call requests; (4) identifying the caller and person or entity on whose behalf the telemarketing call is being made; (5) applying the do-not-call request to the particular business entity making the call or on whose behalf the call is made; (6) maintaining a record of requests not to receive further telemarketing calls and honoring such for at least five years from the time the request is made. *Id*.

21. This provision is applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers. 47 C.F.R. § 64.1200(e).

6

22. "To constitute telemarketing, the text message must be 'for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services.'" *Id*. (quoting 47 C.F.R.§ 64.1200(f)(12)).

23. The term "telephone solicitation" means "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person, but such term does not include a call or message (A) to any person with that person's prior express invitation or permission, (B) to any person with whom the caller has an established business relationship, or (C) by a tax exempt nonprofit organization." 47 U.S.C. § 227(a)(4).

24. In general, courts have also found that text messages fall under § 64.1200(d). *Hand v. Beach Entm't KC, LLC*, 456 F. Supp. 3d 1099, 1124 (W.D. Mo. 2020) (denying motion for summary judgment which argued that "§ 64.1200(d) does not apply to receipt of text messages on a cell phone but rather solely applies to calls made to a 'residential telephone subscriber'); *Doohan v. CTB Inv'rs, LLC*, 427 F. Supp. 3d 1034, 1069 (W.D. Mo. 2019).

25. The FCC—which develops the rules and regulations implementing the TCPA—has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violation." *In re Rules and Regulations Implementing the TCPA*, 10 FCC Rcd. 12391, at ¶13 (1995).

26. The FCC has "repeatedly acknowledged the existence of vicarious liability under the TCPA." *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 878 (9th Cir. 2014) (citing *In re Joint Petition Filed by DISH Network, LLC et al, for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd. 6574 (2013) ("FCC 2013 Ruling")). In addition to formal

7

agency, principles of apparent authority and ratification may also provide a basis for vicarious seller liability for TCPA violations. *FCC 2013 Ruling*, 28 FCC Rcd. at 6548 ¶28. Text messages are "calls" within the context of the TCPA. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009).

27. The FCC has specifically ruled that a consumer's prior express consent to receive future text messages may be revoked. *In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 15391, 15391 (2012) ("*In re SoundBite Communications, Inc.*").

## IV.  THE NATIONAL DO-NOT-CALL REGISTRY

28. The National Do-Not-Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

29. A listing on the Do-Not-Call Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

30. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Do-Not-Call Registry and provides a private right of action against any entity that initiated more than one such telephone solicitation within any 12-month period. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

31. In addition, the TCPA and implementing regulations prohibit the initiation of any call for telemarketing purposes to a residential telephone subscriber where the caller does not, *inter alia,* "honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made." 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(d)(3).

8

32. Telephone solicitations under 47 C.F.R. § 64.1200(c)(2) include text messages and "a cell phone is presumptively residential." *Chennette v. Porch.com, Inc.*, 50 F.4th 1217, 1225 (9th Cir. 2022). *See* 47 C.F.R. § 64.1200(e) ("The rules set forth in paragraph (c) and (d) of this section are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers").

## V.  PLAINTIFF JONES'S FACTUAL ALLEGATIONS

33. At all relevant times, Plaintiff Jones used his cellular telephone number ending in 8138 (the "8138 Number") for personal and residential purposes.

34. In or around September 2022, Defendant began to bombard Plaintiff Jones with telemarketing text messages to the 8138 Number:



9

35. On May 10, 2023, after receiving numerous texts, Plaintiff Jones responded "No" to Defendant's inquiries. Instead of ceasing all transmissions, Defendant asked Plaintiff Jones to provide a reason. When Plaintiff Jones refused to respond, Defendant restarted their unending barrage of texts:



36. Defendant's texts continued. On September 14, 2023, Plaintiff Jones asked Defendant to cease all communications. Despite a system response indicating that the texts would cease, Plaintiff Jones immediately was sent another solicitation. Plaintiff Jones again requested Defendant to "Stop" all communications:

10



37. Nevertheless, Defendant continued to send text messages to Plaintiff Jones. On September 16, 2023, Plaintiff, yet again, requested Defendant to "stop" texting him:



11

38. Notwithstanding Defendant's *four* requests for these text message solicitations to stop, Defendant continued its texting campaign on Plaintiff Jones's cellular device unimpeded:



39. Since requesting for the text messages to stop, Plaintiff Jones received at least 20 post-revocation text messages.

40. Defendant's text messages were transmitted to Plaintiff Jones's cellular telephone, and within the time frame relevant to this action.

12

41. Defendant's text messages constitute telemarketing because they encouraged the future purchase or investment in property, goods, or services, i.e., selling Plaintiff Jones sleep tests.

42. Defendant's text messages to Plaintiff Jones were not for an emergency purpose.

43. The information contained in the text message advertises Defendant's products to promote its business.

44. At no point in time did Plaintiff Jones provide Defendant with his express written consent to be contacted by Defendant.

45. Plaintiff Jones is the subscriber and sole user of the 8138 Number and is financially responsible for phone service to the 8138 Number.

46. The text messages originated from the telephone numbers (813) 708-1554, (813) 502-4411 and (813) 738-6700, numbers which upon information and belief are owned and operated by Defendant.

47. Defendant's unsolicited text messages caused Plaintiff Jones actual harm, including invasion of his privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion. Defendant's text messages also inconvenienced Plaintiff Jones and caused disruption to his daily life.

48. Defendant's unsolicited text messages caused Plaintiff Jones actual harm. Specifically, Plaintiff estimates that he regularly spent time checking his phone because of the numerous texts Defendant received. Additionally, Plaintiff Jones took time to investigate Defendant and figure out how to stop the texts.

49. Furthermore, Defendant's text messages took up memory on Plaintiff Jones's cellular phone. The cumulative effect of unsolicited text messages like Defendant's poses a real

13

risk of ultimately rendering the phone unusable for text messaging purposes as a result of the phone's memory being taken up. *See* https://www.consumer.ftc.gov/articles/0350-text-message-spam#text (finding that text message solicitations like the ones sent by Defendant present a "triple threat" of identity theft, unwanted cell phone charges, and slower cell phone performance).

50. Defendant's text messages also can slow cell phone performance by taking up space on the recipient phone's memory. *See* https://www.consumer.ftc.gov/articles/0350-text-message-spam#text (finding that spam text messages can slow cell phone performance by taking up phone memory space).

## VI.    PLAINTIFF STEIDINGER'S FACTUAL ALLEGATIONS

51. Plaintiff Steidinger registered his residential cellular telephone number, 217-XXX-6904 (the "6904 Number") with the National Do-Not-Call Registry on April 18, 2018.

52. At all relevant times, Plaintiff Steidinger used the 6904 Number for personal and residential purposes.

53. After discussing potentially taking a home sleep test with Plaintiff Steidinger's healthcare provider (who is not Blackstone or a Blackstone employee), Plaintiff Steidinger began receiving telephone calls and text messages to his 6904 Number from Blackstone. During his first and only live conversation with Blackstone, Blackstone told Plaintiff Steidinger that he could receive a home sleep test for $100. Plaintiff Steidinger replied that he was not interested.  Despite Plaintiff advising Blackstone that he was not interested in the home sleep test, Blackstone proceeded to send repeated telephone solicitation text messages and telephone calls to Plaintiff Steidinger's 6904 Number.

ER 000067

54. As depicted in the below screenshots, Blackstone's text messages encourage Plaintiff

Steidinger to contact Blackstone in order to pay for a home sleep test. *See, e.g.*:





ER 000068







16



55. On repeated occasions – including on October 2, 2023, October 3, 2023, and November 27, 2023 – Plaintiff Steidinger messaged Defendant "STOP" and "Stop" in order to get Defendant to stop contacting him.

56. However, despite Plaintiff Steidinger's unequivocal instructions that Defendant stop all text messages, Defendant continued to place telemarketing text messages and telephone calls to the 6904 Number as recently as January 2024.

57. Blackstone would also text Plaintiff Steidinger from different phone numbers after he texted "stop."

58. Additionally, by repeatedly messaging Blackstone to "STOP" contacting him, Plaintiff Steidinger terminated any established business relationship that could have existed between the Parties. Indeed, a "subscriber's seller-specific do-not-call request . . . terminates an established business relationship for purposes of telemarketing and telephone

17

solicitation even if the subscriber continues to do business with the seller." 47 C.F.R. § 64.1200(f)(5)(i).

59. Further, even though Defendant had the ability to program its telephone dialing systems to honor "STOP" requests immediately, Defendant instead deliberately programmed its telephone dialing systems to ignore such requests and continue sending telemarketing messages to consumers for months after receiving a "Stop" request.

60. None of Defendant's messages to Plaintiff Steidinger's were for an emergency purpose.

61. Defendant is not Plaintiff Steidinger's healthcare provider and never rendered any healthcare services to Plaintiff Steidinger.

62. Plaintiff Steidinger was damaged by Defendant's unconsented text messages and calls. In addition to using Plaintiff Steidinger's telephone data, phone storage, and battery life, Plaintiff Steidinger's privacy was wrongfully invaded, and Plaintiff Steidinger has become understandably aggravated with having to deal with the frustration of repeated, unwanted text messages and calls, forcing Plaintiff to divert attention away from other activities.

## PLAINTIFF KOLLER'S FACTUAL ALLEGATIONS

63. Plaintiff Koller is the account holder of a cellular telephone number ending in 8855 (the "8855 Number").

64. Plaintiff Koller is the regular user of the 8855 Number and uses the 8855 Number as her residential telephone line.

65. During the time frame relevant to this Complaint, Blackstone caused multiple unwanted and unsolicited text messages to be transmitted to the 8855 Number.

18

66. Upon information and belief, Blackstone obtained Plaintiff Koller's phone number from Plaintiff Koller's doctor who recommended Blackstone as a provider able to perform a sleep study.

67. Plaintiff Koller did not give her physician permission to convey to Blackstone that Plaintiff Koller consented to Blackstone's calls.[4]

68. All of the text messages Blackstone sent to Plaintiff Koller have been for the purpose of soliciting the sale of Blackstone's sleep study. Blackstone's sleep studies are medical procedures and are therefore "consumer goods or services."

69. Because Blackstone's text messages were for the purpose of soliciting the sale of its sleep study, which is a consumer good or service, these texts were "telephone solicitations" and/or "telemarketing" under the TCPA and "telephonic sales calls" under the FTSA.

70. Finally, Blackstone sent or caused to be sent the telephonic sales text messages, thereby making Blackstone a "telephone solicitor" under the FTSA and subjecting it to the TCPA, which applies to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers.

71. Blackstone did not have Plaintiff Koller's prior express consent to contact her on her cellular phone.

72. Blackstone did not have Plaintiff Koller's prior written consent to contact her on her cellular phone.

---

[4] *See Keim v. ADF MidAtlantic, LLC*, 328 F.R.D. 668, 683 (2018) (The FCC cautioned, however, that the intermediary may only *convey* consent that has actually been provided by the consumer; the intermediary cannot provide consent on behalf the consumer.) (Citations and quotations omitted).

19

73. On more than one occasion, the first of which was on or around July 27, 2023, Plaintiff Koller asked Blackstone to stop texting her, but Blackstone continued to send text messages to Plaintiff, the latest of which (as of this writing) was on January 26, 2024. A sampling of the text messages received by Plaintiff Koller can be seen in the following screenshots:

 

20



74. Despite requirements specifically outlined by the FCC for text messages,[5] Blackstone's text messages fail to provide an opt-out option.

---

[5] *See e.g.*, 12 C.F.R. § 64.1200 *et seq.*

75. Blackstone sent multiple telemarketing text messages to Plaintiff Koller subsequent to Plaintiff Koller instructing Blackstone to stop.

76. More specifically, after Plaintiff Koller texted "stop" to Defendant on July 27, 2023, Blackstone sent no less than an additional 35 telemarketing text messages to Plaintiff.

77. Plaintiff Koller has replied "stop" to Blackstone's text messages no less than 8 times, yet Blackstone continued and continues to send telemarketing text messages to Plaintiff Koller.

78. When texting "stop" did not work, on November 15, 2023, Plaintiff Koller called Blackstone and informed Blackstone's representative that she had no interest in Blackstone's services and to stop contacting her.

79. During the November 15, 2023 call, Blackstone's representative confirmed that Blackstone had previously received Plaintiff Koller's do-not-call requests, and agreed to add Plaintiff Koller to Blackstone's internal do-not-call list.

80. Despite acknowledging Plaintiff Koller's do-not-call requests, Blackstone continued and continues to send telemarketing text message to Plaintiff.

81. Blackstone sent telemarketing text messages to Plaintiff Koller more than thirty days after Plaintiff Koller's initial stop request on July 27, 2023. For example, Blackstone texted Plaintiff Koller on September 19, 2023 and October 25, 2023. The telemarketing text messages Blackstone sent to Plaintiff Koller on September 19, 2023 and October 25, 2023 were each sent more than thirty days after Plaintiff Koller's initial stop request on July 27, 2023.

82. Blackstone's text messages constitute telemarketing and or solicitation because the purpose of the text messages was to encourage the purchase of Blackstone's services.

83. As evidenced by Blackstone's failure to honor Plaintiff Koller's requests to stop texting

22

Plaintiff, Blackstone's internal do-not-call policy (to the extent that it even exists) violates 47 C.F.R. § 64.1200(d) by, among other things, not recording and honoring do-not-call requests.

84. A quick internet search reveals that other consumers have been subjected to the same treatment:[6]




**Christina W**

★☆☆☆☆                                          09/15/2023

I've been harassed by this company for almost a year now. After deciding not to proceed with a sleep study, the company continued to call me and text me hundreds of time each day, literally every few minutes for months, even after stating that I did not want to proceed. After blocking 10+ phone numbers, the calls finally stopped for a couple months before picking back up from new numbers.




**Sarah R**

★☆☆☆☆                                          09/22/2023

Juan harasses you and sends texts alert daily multiple times a day about scheduling a service when I've already told them over 20 times I'm not interested.




**Brittany W**

★☆☆☆☆                                          10/27/2023

They dont take my insurance and they still keep calling and texting from different numbers ( I respond stop to the text and then block the number) trying to get me to pay for the sleep study out of pocket. I have told them verbally over the phone that I am not interested and to remove my number from their list, then they started calling me about another patient. This company seems like a scam

---

[6] *See* https://www.bbb.org/us/fl/tampa/profile/sleep-apnea/blackstone-medical-services-llc-0653-90130035/customer-reviews (Last Visited: Feb. 9, 2024).

23



**Jayne H**



12/07/2023

This company will text and call you nonstop and wont stop for anything to get you to schedule a sleep test. Ive blocked 10 different numbers and they keep finding me. I was actually planning to do the test until they called me 19 times in one day. I would never ever give my business to a company that behaves this way.



**Jesus D**



12/27/2023

This company is a nightmare. My doctor made the mistake of sending a sleep study prescription to them right before I went on vacation. I talked to them and explained I will do it when I come back. They have sent me literally hundreds of text messages, and dozens of phone calls, sometimes impersonating the doctor ****** and asking me to do the study before I come back. I was thousands of miles away, and on vacation. I blocked their phone number many times, but they are a very sneaky company changing the caller ID every time they text or call. All this prompted me to check the reviews online. Holy macro! Needless to say, I will never work with these clowns.



**Alvin H**



01/17/2024

This company wont stop harassing me. After I told them I didnt feel comfortable giving them my credit card number and paying for services I had not yet gotten they got rude. I told them I would needed to do more investigation and found out they have been doing this to serveral people. I told them I was no longer intrested in moving forward with them and to stop calling and text. Since than I get atleast 2 message a day and I have told them everytime I am not intrested but they will not stop

24



**Natoshia T**
★☆☆☆☆                                                                01/19/2024

My dr put in a sleep study for me and I was told I would be hearing from Blackstone. The next day I received a text asking me to call. Then a few hours later received another text saying they had been trying to call me and had been leaving messages but I never had any. I call them and they tell me its covered by my insurance but I have to pay $250. I tell them I dont have the money and will wait for the test. They noted the account. Next day, text messages start again to have me call them to set up my study. I call again and tell them no. Next day comes and they text again, I ignore it. They call me and I tell them again Im waiting. She notes the account. 1 hour later I receive two more text messages from them. So I called and asked to speak to a supervisor and was transferred with no answer. Went back to the same guy and he transferred me again. This time the guy who answered told me that it doesnt work like that when I asked to speak to a supervisor. So I decided to yell at him. He pulls my account up and he says yeah it says youre not interested in the test so I ask why I am being called and texted and he said it was a problem in their end and he promised it wont happen again. Would never do business with a company like this.

85. Upon information and belief, Blackstone maintains and/or has access to outbound transmission reports for all text messages sent promoting its services and goods. These reports show the dates, times, target telephone numbers, and content of each message sent to Plaintiff Koller and the putative class members.

86. Upon information and belief, Blackstone maintains and/or has access to inbound transmission reports for all text messages or telephone calls received in response to its text message sent promoting its services and goods. These reports show the dates, times, the targeted telephone numbers, and content of each message to Defendant.

87. Blackstone's failure to honor stop requests constitutes abusive telemarketing.

88. As a result of Blackstone's conduct, Plaintiff Koller suffered a nuisance, invasion of privacy, frustration, storage space, and lost time tending to unwanted text messages.

89. Specifically, with respect to waste of time and nuisance, Plaintiff Koller took the time to ask Blackstone to stop sending text messages, only to continue to receive even more text messages. When her request to stop sent via text message was unsuccessful, Plaintiff also took the time to call Blackstone to request it stop sending messages. Yet, Blackstone continues to send its unwanted telemarketing texts to Plaintiff Koller.

25

90. Blackstone's unwanted telephonic sales calls caused Plaintiffs and the putative class members harm, including statutory damages, inconvenience, invasion of privacy, aggravation, annoyance, and violation of their statutory privacy rights.

91. Blackstone's text message spam caused Plaintiffs and the putative class members harm, including violations of their statutory rights, trespass, annoyance, nuisance, invasion of their privacy, and intrusion upon seclusion.

## VII.    CLASS ACTION ALLEGATIONS

### A.  The Class

92. Plaintiffs bring this case as a class action on behalf of themselves and all others similarly situated.

93. Plaintiffs Jones, Steidinger and Koller represent, and are members of the following class (the "Internal Do Not Call List Class"):

**Internal Do Not Call List Class**: All persons within the United States who, within the time frame(s) relevant to this action, (1) received two or more text messages from Blackstone or anyone acting on Blackstone's behalf, (2) within any 12-month period, (3) for the purpose of selling Blackstone's products and/or services, and (4) including at least one of those text messages being placed more than 30 days after such person requested that Blackstone stop calling and/or texting.

94. Plaintiff Steidinger represents, and is a member of, the following class (the "Do Not Call Registry Class"):

**Do Not Call Registry Class**: All persons in the United States who from four years prior to the filing of this action (1) were sent text messages and/or telephone calls by or on behalf of Defendant; (2) more than one time within any 12-month period; (3) where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days; (4) for the purpose of encouraging the purchase or rental of Defendant's products and/or services; and (5) where either (a) Defendant did not obtain prior express written consent to message the person or (b) the called person previously advised Defendant to "STOP" messaging them.

26

95. Plaintiffs Jones and Koller represent, and are members of the following class (the "FTSA Class"):

**FTSA Class**: All persons within the State of Florida who, (1) were sent a text message from Blackstone or anyone acting on Blackstone's behalf; (2) for the purpose of soliciting Defendant's goods and/or services, and (2) had previously communicated to Blackstone that they did not wish to receive Defendant's text messages.

96. Defendant and its employees or agents are excluded from the Class. Plaintiffs do not know the number of members in the classes but believe the class members number in the thousands, if not more. Thus, this matter should be certified as a class action to assist in the expeditious litigation of this matter.

## B. Numerosity

97. Blackstone purports to be one of the leading service providers in the home sleep testing industry. As of February 9, 2024, the Company has 210 employees and millions of dollars in annual revenue.

98. In light of Blackstone's business size, it is reasonable to conclude that Blackstone has placed calls to cellular telephone numbers belonging to thousands of consumers throughout the United States against their express wishes.

99. Upon information and belief, Defendant placed telemarketing messages to telephone numbers registered on the National Do-Not-Call List belonging to thousands of persons throughout the United States where it lacked prior express written consent to place such messages and/or such persons had previously asked Defendant to cease messaging them. The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

100.     Upon information and belief, Defendant placed telemarketing and solicitation messages to telephone numbers belonging to thousands of persons throughout the United

27

States where it lacked prior express written consent to place such messages and/or such persons had previously asked Defendant to cease messaging them. The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

101. The exact number and identities of the Class members are unknown at this time and can only be ascertained through discovery. Identification of the Class members is a matter capable of ministerial determination from Defendant's records.

## C. Common Questions of Law and Fact

102. There are questions of law and fact common to the Class that predominate over any questions affecting only individual Class members. These questions include:

a. Whether Blackstone's messages constitute "telephone solicitations" or "telemarketing" (under the TCPA) or "telephonic sales calls" (under the FTSA);

b. Whether Defendant can meet its burden of showing it obtained prior written consent to place each telemarketing message and call;

c. Whether the messages and calls made to Plaintiffs and Class Members violate the Do-Not-Call Registry rules and regulations;

d. Whether Defendant deliberately programmed its telephone dialing systems to ignore "Stop" requests and continue sending telemarketing messages and calls to telephone numbers that had previously messaged "Stop";

e. Whether Blackstone continued to send telemarketing text messages after being asked to stop;

f. Whether Blackstone maintains an internal do-not-call list and instructs its employees on how to use the list;

g. Whether Blackstone had any processes or protocols in place to stop texts to persons

28

who asked that the messages stop;

h.  Whether Blackstone had the required policies and procedures in place to honor do-not-call requests;

i.  Whether Blackstone routinely honors such requests;

j.  Whether Defendant's conduct was knowing and/or willful;

k.  Whether Defendant is liable for damages, and the amount of such damages; and

l.  Whether Defendant should be enjoined from such conduct in the future.

103.    The common questions in this case are capable of having common answers.  If Plaintiffs' claim that Defendant routinely placed telemarketing text messages and calls to telephone numbers registered on the National Do-Not-Call Registry, and/or over requests to stop the messages, is accurate, Plaintiffs and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

## D.  Typicality

104.    Plaintiffs' claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

## E.  Protecting the Interests of the Class Members

105.    Plaintiffs will fairly and adequately protect the interests of the Class and have retained counsel experienced in handling class actions and claims involving unlawful business practices, and specifically claims under the TCPA.  Neither Plaintiffs nor their counsel have any interests which might cause them not to vigorously pursue this action.

## F.  Proceeding Via Class Action is Superior and Advisable

106.    A class action is the superior method for the fair and efficient adjudication of this controversy.  The interest of Class members in individually controlling the prosecutions of

29

separate claims against Defendant is small because it is not economically feasible for Class members to bring individual actions.

## COUNT I

### NEGLIGENT VIOLATIONS OF THE TCPA
### (47 U.S.C. § 227(c)(5), and 47 C.F.R. § 64.1200(c)(2))
### <u>On Behalf of Plaintiff Steidinger and the Do Not Call Registry Class</u>

107.    Plaintiff Steidinger incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

108.    Plaintiff Steidinger brings this claim on behalf of himself and the Do Not Call Registry Class.

109.    47 C.F.R. § 64.1200(c)(2) provides that "No person or entity shall initiate any telephone solicitation to . . . (2) A residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government. Such do-not-call registrations must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator."

110.    The TCPA provides a private right of action to "A person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations . . . ." 47 U.S.C. § 227(c)(5).

111.    Defendant initiated more than one telephone solicitation text message and/or call to telephone numbers belonging to Plaintiff Steidinger and members of the Do Not Call Registry Class within a 12-month period despite the fact that Plaintiff Steidinger and other class members' telephone numbers were registered on the National Do-Not-Call Registry at all relevant times.

30

112.    Each of the aforementioned messages and calls by Defendant constitutes a violation of the TCPA and 47 C.F.R. § 64.1200(c)(2) by Defendant.

113.    Plaintiff Steidinger and the Do Not Call Registry Class are entitled to an award of $500.00 in statutory damages for each text message sent in violation of the TCPA pursuant to 47 U.S.C. § 227(c)(5)(B).

114.    Additionally, Plaintiff Steidinger and the Do Not Call Registry Class are entitled to and seek injunctive relief prohibiting such conduct by Defendant in the future pursuant to 47 U.S.C. § 227(c)(5)(A).

115.    Further, Plaintiff Steidinger and the Class are also entitled to and do seek a declaration that:

- Defendant violated the TCPA;

- Defendant initiated more than one telephone solicitation text and/or call to telephone numbers belonging to Plaintiff Steidinger and members of the Class within a 12-month period despite the fact that Plaintiff Steidinger and other class members' telephone numbers were registered on the National Do-Not-Call Registry at all relevant times.

///

///

///

///

31

## COUNT II

### WILLFUL VIOLATIONS OF THE TCPA
### (47 U.S.C. § 227(c)(5), and 47 C.F.R. § 64.1200(c)(2))
### On Behalf of Plaintiff Steidinger and the Do Not Call Registry Class

116.   Plaintiff Steidinger repeats and realleges the above paragraphs of this Complaint and incorporates them herein by reference.

117.   Plaintiff Steidinger brings this claim on behalf of himself and the Do Not Call Registry Class.

118.   Defendant is fully aware at all relevant times that the telephone numbers it sends telephone solicitations to are registered on the National Do-Not-Call Registry. Nonetheless, Defendant knowingly and/or willfully initiated more than one telephone solicitation text message and/or call to telephone numbers belonging to Plaintiff Steidinger and members of the Class within a 12-month period even though Plaintiff Steidinger and other class members' telephone numbers were registered on the National Do-Not-Call Registry at all relevant times.

119.   Each of the aforementioned messages and/or calls by Defendant constitutes a knowing and willful violation of the TCPA.

120.   Plaintiff Steidinger and the Class are entitled to an award of up to $1,500.00 in statutory damages for each message sent in knowing and willful violation of the TCPA pursuant to 47 U.S.C. § 227(c)(5)(C).

Additionally, Plaintiff Steidinger and the Do Not Call Registry Class are entitled to and seek injunctive relief prohibiting such conduct by Defendant in the future.

121.   Further, Plaintiff Steidinger and the Do Not Call Registry Class are also entitled to and do seek a declaration that:

ER 000085

- Defendant knowingly and/or willfully violated the TCPA;

- Defendant knowingly and/or willfully initiated more than one telephone solicitation text message and/or call to telephone numbers belonging to Plaintiff Steidinger and members of the Class within a 12-month period despite the fact that Plaintiff Steidinger and other Do Not Call Registry class members' telephone numbers were registered on the National Do-Not-Call Registry at all relevant times;

- It is Defendant's practice and history to place telephone solicitations and telemarketing messages to persons whose telephone numbers are registered on the National Do-Not-Call Registry and to persons who had previously made a do-not-call request to Defendant.

## COUNT III

### NEGLIGENT VIOLATIONS OF THE TCPA
### (47 U.S.C. § 227, et seq. and 47 C.F.R. § 64.1200(d) et seq.)
### On Behalf of Plaintiffs and the Internal Do Not Call List Class

122.     Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

123.     Plaintiffs bring this claim on behalf of themselves and the Internal Do Not Call List Class.

124.     47 C.F.R. § 64.1200(d)(3) provides that "No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards: . . . Persons or entities making calls for

33

telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made."

125. 47 C.F.R. § 64.1200(d)(6) provides that "[a] person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made."

126. The TCPA provides a private right of action to "A person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations . . . ." 47 U.S.C. § 227(c)(5).

127. Defendant initiated more than one telephone telemarketing text message and/or call to telephone numbers belonging to Plaintiffs and members of the Class within a 12-month period where the telephone subscriber had previously made a do-not-call request to Defendant, and Defendant failed to honor the do-not-call request within a reasonable period of time from the date the request was made.

128. Each of the aforementioned messages by Defendant constitutes a violation of the TCPA and 47 C.F.R. § 64.1200(d) (d)(3), and (d)(6) by Defendant.

129. Plaintiffs and the Class are entitled to an award of $500.00 in statutory damages for each text message sent in violation of the TCPA pursuant to 47 U.S.C. § 227(c)(5)(B).

130. Additionally, Plaintiffs and the Class are entitled to and seek injunctive relief prohibiting such conduct by Defendant in the future pursuant to 47 U.S.C. § 227(c)(5)(A).

131. Further, Plaintiffs and the Class are also entitled to and do seek a declaration that:

- Defendant violated the TCPA; and

34

- Defendant initiated more than one telephone telemarketing text message and/or call to telephone numbers belonging to Plaintiffs and members of the Class within a 12-month period where the telephone subscriber had previously made a do-not-call request to Defendant, and Defendant failed to honor the do-not-call request within a reasonable period of time from the date the request was made.

## COUNT IV

## WILLFUL VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT,

### (47 U.S.C. § 227, *et seq.* and 47 C.F.R. § 64.1200(d) et seq.)
### On Behalf of Plaintiffs and the Internal Do Not Call List Class

132. Plaintiffs repeat and reallege the above paragraphs of this Complaint and incorporates them herein by reference.

133. Plaintiffs bring this claim on behalf of themselves and the Internal Do Not Call List Class.

134. Defendant deliberately programmed its telemarketing telephone systems to continue sending telemarketing messages and calls to consumers after receiving a "Stop" request. Accordingly, Defendant knowingly and/or willfully initiated more than one telephone telemarketing text message to telephone numbers belonging to Plaintiffs and members of the Class within a 12-month period where the telephone subscriber had previously made a do-not-call request to Defendant, and Defendant failed to honor the do-not-call request within a reasonable period of time from the date the request was made.

135. Each of the aforementioned messages and/or calls by Defendant constitutes a knowing and willful violation of the TCPA.

ER 000088

136.     Plaintiffs and the Class are entitled to an award of up to $1,500.00 in statutory damages for each message sent in knowing and willful violation of the TCPA pursuant to 47 U.S.C. § 227(c)(5)(C).

137.     Additionally, Plaintiffs and the Class are entitled to and seek injunctive relief prohibiting such conduct by Defendant in the future.

138.     Further, Plaintiffs and the Class are also entitled to and do seek a declaration that:

- Defendant knowingly and/or willfully violated the TCPA;

- Defendant knowingly and/or willfully initiated more than one telephone telemarketing text message to telephone numbers belonging to Plaintiffs and members of the Class within a 12-month period where the telephone subscriber had previously made a do-not-call request to Defendant, and Defendant failed to honor the do-not-call request within a reasonable period of time from the date the request was made.

- It is Defendant's practice and history to place telephone solicitations and telemarketing messages to persons whose telephone numbers are registered on the National Do-Not-Call Registry and to persons who had previously made a do-not-call request to Defendant.

## COUNT V
## NEGLIGENT AND WILLFUL VIOLATIONS OF THE FTSA, FLA. STAT. § 501.059(5)
## On Behalf of Plaintiffs Jones, Koller, and the FTSA Class

139.     Plaintiffs Jones and Koller repeat and reallege the above paragraphs of this Complaint and incorporates them herein by reference.

140.     The FTSA provides that "[a] telephone solicitor or other person may not initiate [a] … text message … to a consumer, business, or potential donor … who has previously

ER 000089

communicated to the telephone solicitor or other person that he or she does not wish to receive an outbound … text message … made by or on behalf of the seller whose goods or services are being offered[.]" Fla. Stat. § 501.059(5).

141. "Telephone solicitor" is defined as "a natural person, firm, organization, partnership, association, or corporation, or a subsidiary or affiliate thereof, doing business in this state, who makes or causes to be made a telephonic sales call[.]" Fla. Stat. § 501.059(1)(i).

142. "Telephonic sales call" is defined as a "…text message … to a consumer for the purpose of soliciting a sale of any consumer goods or services[.]" Fla. Stat. § 501.059(1)(j).

143. Black's Law Dictionary defines "service" as "the act of doing something useful for a person or company, usu[ally] for a fee." Black's Law Dictionary 1491 (9th ed.2009). *Wooten v. Quicken Loans, Inc.*, 626 F.3d 1187, 1193 (11th Cir. 2010).

144. Blackstone sent text messages to Plaintiffs Jones, Koller, and putative FTSA Class members intended to solicit the sale of sleep studies and other services for a fee.

145. Sleep studies are "consumer goods or services" within the meaning of Fla. Stat. § 501.059(1)(c).

146. Blackstone's text messages intended to solicit the sale of sleep studies and other services were therefore "telephonic sales calls."

147. Blackstone, as the entity placing the telephonic sales calls or causing them to be made, is therefore a "telephone solicitor."

148. Plaintiffs Jones, Koller, and putative class members requested Blackstone to stop sending them telephonic sales text messages, but Blackstone continued.

ER 000090

149. Blackstone's continued text messages to Plaintiffs Jones, Koller and putative class members after they asked Defendant to stop sending the text messages, therefore violate Fla. Stat. § 501.059(5).

150. Each member of the FTSA Class has constitutional standing as, by definition, each member expended the time and effort to ask Blackstone to stop, yet continued to be sent text messages, invading their privacy, further wasting their time, and constituting a personal nuisance.

151. For violations of Fla. Stat. § 501.059(5), Plaintiffs Jones, Koller, and putative class members are entitled to $500 per text message in statutory damages. Fla. Stat. § 501.059(10)(a).

152. Plaintiffs Jones, Koller, and putative class members are entitled to $1,500 per text message should the Court find the violations willful. Fla. Stat. § 501.059(10)(b).

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that judgment be entered against the Defendant as follows:

A. An order certifying this case as a class action on behalf of the Classes as defined above, and appointing Plaintiffs as the representative of the Classes and Plaintiff Jones's counsel, Kazerouni Law Group, APC as Class Counsel;

B. Injunctive relief prohibiting such violation of the TCPA and FTSA by Defendant in the future;

C. Statutory damages of $500.00 for each and every text message in violation of the TCPA and FTSA;

D. Treble damages of up to $1,5000.00 for each and every text message in willful and/or knowing violation of the TCPA and FTSA;

38

E.  An injunction requiring Blackstone to comply with 47 C.F.R. § 64.1200(d) by

    1)  maintaining the required written policies;

    2)  providing training to their personnel engaged in telemarketing;

    3)  maintaining a do-not-call list;

    4)  and such further and other relief as the Court deems necessary.

F.  An award of attorneys' fees and costs to counsel for Plaintiff Jones and the Classes; and

G.  Such other and further relief as may be just and proper.

**TRIAL BY JURY DEMANDED ON ALL COUNTS**

Dated: April 15, 2025                                          Respectfully submitted,

    By */s/ Abbas Kazerounian*
    Abbas Kazerounian, Esq.
    ak@kazlg.com
    Kazerouni Law Group, APC
    245 Fischer Ave., Suite D1
    Costa Mesa, CA 92626
    Telephone: (800) 400-6808
    Facsimile:  (800) 520-5523

    Ryan L. McBride, Esq.
    ryan@kazlg.com
    Kazerouni Law Group, APC
    2221 Camino Del Rio S., #101
    San Diego, CA 92108
    Telephone: (800) 400-6808
    Facsimile:  (800) 520-5523

    *Interim Lead Class Counsel*

ER 000092

By     */s/ Sergei Lemberg*
Sergei Lemberg
LEMBERG LAW, L.L.C.
43 Danbury Road, 3rd Floor
Wilton, CT 06897
Telephone: (203) 653-2250
Facsimile:  (203) 653-3424

*Attorneys for Plaintiffs Steidinger and Koller*

By: /s/ Scott D. Owens
Scott D. Owens
Florida Bar No. 0597651 (to file *PHV*)
SCOTT D. OWENS, P.A.
2750 N. 29th Ave., Ste. 209A
Hollywood, FL 33020
Telephone: (954) 589-0588
Facsimile: (954) 337-0666
scott@scottdowens.com

*Attorneys for Plaintiffs Steidinger and Koller*

By: /s/Kimberly H. Wochholz
Kimberly H. Wochholz
Fla. Bar No. 0092159 (*PHV*)
The Consumer Rights Law Group, PLLC
P.O. Box 5326
Sun City Center, FL 33571
Phone: 813-413-5710
Fax: 866-535-7199
Kim@ConsumerRightsLawGroup.com

*Attorneys for Plaintiffs Steidinger and Koller*

40

## CERTIFICATE OF SERVICE

I hereby certify that on April 15, 2025, a true and correct copy of the foregoing was filed with the Clerk of the Court through the ECF system which gave notice of such filing to all parties of record.

*/s/ Abbas Kazerounian*
Abbas Kazerounian

41

ER 000094

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## PEORIA DIVISION

| | | |
|---|---|---|
| Joseph Jones, Seth Steidinger and Natasha Koller, *on behalf of themselves and all others similarly situated,* | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 1:24-cv-01074-JEH-RLH |
| Blackstone Medical Services, LLC, | ) ) | |
| Defendant. | ) | |

### BLACKSTONE'S MOTION TO DISMISS COUNTS I–IV
### OF THE CONSOLIDATED CLASS ACTION COMPLAINT

NOW COMES Defendant Blackstone Medical Services, LLC ("Blackstone"), by its undersigned counsel, and pursuant to Federal Rules of Civil Procedure 12(b)(1) and (b)(6) moves to dismiss Counts I–IV, and dismiss the claims for injunctive and declaratory relief, in the Consolidated Class Action Complaint, filed by Plaintiffs Joseph Jones, Seth Steidinger, and Natasha Koller (collectively, "Plaintiffs"), and in support states:

1.      Blackstone provides at-home sleep tests designed to diagnose sleep apnea pursuant to a doctor's prescription. *See* [D.E. 29] ¶ 2–3.

2.      Plaintiffs are patients whose healthcare providers prescribed a home sleep test through Blackstone. *See, e.g.*, [D.E. 29] ¶¶ 53, 66.

3.      In response to the prescriptions, Blackstone contacted Plaintiffs to schedule the in-home sleep test and sent Plaintiffs text messages pertaining to their prescriptions.

4.      Now, Plaintiffs contend that Blackstone's text messages violate the Telephone Consumer Protection Act ("TCPA") and the Florida Telephone Solicitation Act ("FTSA"). Plaintiffs seek monetary, injunctive, and declaratory relief on behalf of three putative classes.

5.      This Court should dismiss the TCPA claims (Counts I–IV), as well as the requests for injunctive and declaratory relief.

6.      *First*, Counts I–IV, brought under the TCPA, must be dismissed because Plaintiffs raise only claims relating to text messages under § 227(c), which does not impose any liability for sending text messages.

7.      *Second*, Plaintiffs' requests for injunctive and declaratory relief must be dismissed because Plaintiffs have not alleged any real and immediate threat of future harm.

8.      *Third*, Plaintiffs' requests for declaratory relief should be dismissed because they are redundant to Plaintiffs' requests for monetary relief.

WHEREFORE, Defendant, Blackstone Medical Services, LLC, respectfully requests an order dismissing Counts I–IV of the Consolidated Class Action Complaint, dismissing Plaintiff's claims for injunctive and declaratory relief, and awarding any other relief deemed necessary and just under the circumstances.

Date: May 13, 2025                    Respectfully submitted,


        /s/ John P. Heil, Jr.
HEYL, ROYSTER, VOELKER & ALLEN, P.C.
300 Hamilton Blvd., P.O. Box 6199
Peoria, IL 61602
(309) 676-0400

    John P. Heil, Jr. (IL ARDC #6237286)
    jheil@heylroyster.com
    Samuel J. Perkins (IL ARDC #6321283)
    sperkins@heylroyster.com


    - and -

GUNSTER, YOAKLEY & STEWART, P.A.
777 South Flagler Drive, Suite 500 East
West Palm Beach, FL 33401
(561) 655-1980

Traci H. Rollins, Esq.
Florida Bar No. 769071
trollins@gunster.com
crossodivita@gunster.com
eservice@gunster.com
Ryan C. Childress, Esq.
Florida Bar No. 1049623
rchildress@gunster.com
mmargolese@gunster.com

*Attorneys for Defendant*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on May 13, 2025 I caused to be electronically filed the foregoing Motion with the Clerk of the Court using the CM/ECF system which will send notification to all registered CM/ECF participants:

KAZEROUNI LAW GROUP, APC
245 Fischer Avenue, Suite D1
Costa Mesa, CA 92626
(800) 400-6808
Abbas Kazerounian, Esq.
ak@kazlg.com
Ryan L. McBride, Esq.
ryan@kazlg.com

*Attorneys for Joseph Jones, and
Interim Lead Class Counsel*

LEMBERG LAW, LLC
43 Danbury Road, 3rd Floor
Wilton, CT 06897
(203) 653-2250
Sergi Lemberg, Esq.
slemberg@lemberglaw.com

*Attorney for Seth Steidinger and
Natasha Koller*

SCOTT D. OWENS, P.A.
2750 North 29th Avenue, Suite 209A
Hollywood, FL 33020
(954) 589-0588
Scott D. Owens, Esq.
scott@csottdowens.com

*Attorney for Seth Steidinger and
Natasha Koller*

THE CONSUMER RIGHTS LAW GROUP, PLLC
P.O. Box 5326
Sun City Center, FL 33571
(813) 413-5710
Kimberly H. Wochholz, Esq.
kim@consumerrightslawgroup.com

*Attorney for Seth Steidinger and
Natasha Koller*

　　　　　　　　　　　/s/ John P. Heil, Jr.

45773327.1

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION**

| | | |
|---|---|---|
| Joseph Jones, Seth Steidinger and Natasha Koller, *on behalf of themselves and all others similarly situated,* | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 1:24-cv-01074-JEH-RLH |
| Blackstone Medical Services, LLC, | ) ) | |
| Defendant. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF
BLACKSTONE'S MOTION TO DISMISS COUNTS I–IV
OF THE CONSOLIDATED CLASS ACTION COMPLAINT**

Defendant, Blackstone Medical Services, LLC ("Blackstone"), pursuant to Federal Rule of Civil Procedure 12(b)(1) and (b)(6), and pursuant to Local Civil Rule 7.1, submits this Memorandum of Law in Support of its Motion to Dismiss Counts I–IV of the Consolidated Class Action Complaint, filed by Plaintiffs, Joseph Jones, Seth Steidinger, and Natasha Koller (collectively, "Plaintiffs"), and in support states:

**INTRODUCTION**

Plaintiffs filed their Consolidated Class Action Complaint [D.E. 29] in this case, alleging violations of the Telephone Consumer Protection Act ("TCPA") and the Florida Telephone Solicitation Act ("FTSA"). Plaintiffs, collectively, seek to represent three putative classes of plaintiffs, requesting monetary, injunctive, and declaratory relief.

Pursuant to Federal Rule of Civil Procedure 12(b)(1) and (b)(6), Counts I–IV of the Complaint (the TCPA claims), and Plaintiffs' requests for injunctive and declaratory relief, must be dismissed. *First*, Counts I–IV, brought under the TCPA, must be dismissed because

Plaintiffs raise only claims relating to text messages under § 227(c), which does not impose any liability for sending text messages. *Second*, Plaintiffs' requests for injunctive and declaratory relief must be dismissed because Plaintiffs have not alleged any real and immediate threat of future harm. *Third*, Plaintiffs' requests for declaratory relief should be dismissed because they are redundant to Plaintiff's requests for monetary relief.

## ARGUMENT

### A. Counts I–IV must be dismissed because Section 227(c) does not prohibit text messages.

The TCPA, codified at 47 U.S.C. § 227, consists of two primary prohibitions, contained within § 227(b) and § 227(c), respectively. Section 227(b) prohibits certain uses of "automated telephone equipment," and § 227(c) authorizes the Federal Communications Commission ("FCC") to promulgate rules relating to "industry-based or company-specific 'do not call' systems." 47 U.S.C. § 227(c)(1)(a). Plaintiffs' lawsuit is brought exclusively under § 227(c).

As explained below, both § 227(b) and (c) regulate voice telephone calls; however, only § 227(b) regulates text messages. Section 227(c) does not apply to text messages. Because, in Counts I–IV, Plaintiffs make claims relating to text messages only under § 227(c), Counts I–IV must be dismissed.

### 1. Text messages are not regulated by § 227(c).

Section 227(c) creates a private cause of action when a person "has received more than one **telephone call** within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection." 47 U.S.C. § 227(c)(5) (emphasis added).

Such regulations include 47 C.F.R. § 64.1200(c), which states:

No person or entity shall initiate any telephone solicitation to … [a] residential telephone subscriber who has registered his or her telephone number on the

national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government.

The other of those regulations, 47 C.F.R. § 64.1200(d) — and the only other regulation under which Plaintiffs sue Blackstone for violation of the TCPA — states:

> No person or entity shall initiate any artificial or prerecorded-voice telephone call pursuant to an exemption under paragraphs (a)(3)(ii) through (v) of this section or any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive such calls made by or on behalf of that person or entity.

47 C.F.R. § 64.1200(d). The remainder of these implementing regulations identify the "minimum standards" for procedures to maintain do-not-call lists and to check the national do-not-call registry.

Notably, the phrases "text message" and "SMS message" are wholly absent from § 227(c)(5), and its implementing regulations — 47 C.F.R. § 64.1200(c) and (d). Rather, the statute uses the terms "telephone call," "artificial or prerecorded-voice telephone call," and "call." 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c), (d). Congress or the FCC, when enacting the TCPA and its regulations, respectively, could have included the term "text message" or "SMS message" in these provisions, but chose not to do so.

In stark contrast, the FCC clearly indicated its intent to regulate text messages or SMS messages under a regulation promulgated under § 227(b) (as opposed to § 227(c)), stating:

> As used in this paragraph (a)(9), the term 'call' includes a text message, including a short message service (SMS) call.

47 C.F.R. § 64.1200(a)(9). **Notably, § 64.1200(a) is implemented under § 227(b) only, and not § 227(c).** Thus, by limiting this definition to § 64.1200(a), the FCC clearly indicated that, unless otherwise specified, a "call" does **not** include a "text message" or "SMS message." If "call" **did** generally include text messages or SMS messages, the FCC would have no reason

to include a definition of "call" in this circumstance — it would have no effect. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts*, THOMPSON/WEST (1st ed 2012), at 174 ("If possible, every word and every provision is to be given effect (*verba cum effectu sunt accipienda*).").

Congress failed to include any such language as to text messages within 47 U.S.C. § 227(c), and the FCC failed to include any such language within its implementing regulations — 47 C.F.R. § 64.1200(c) and (d). Clearly, the FCC could have included "text message" or "SMS message" within the definition of a "call," as it did in 47 C.F.R. § 64.1200(a)(9), but chose not to do so within 47 C.F.R. § 64.1200(c) and (d). The FCC intentionally omitted text messages or SMS messages from its regulations within § 64.1200(c) and (d), and § 227(c), therefore, does not regulate text messages or SMS messages.

This distinction between § 227(b) (applying to calls and texts) and (c) (applying to calls only) makes sense. As a matter of public policy, "Congress found that automated or prerecorded telephone calls were a greater nuisance and invasion of privacy than live solicitation calls." 2003 Order, *infra*, at ¶ 165. Section 227(b) is entitled "[r]estrictions on the use of automated telephone equipment." § 227(b). Subsections (1)(A), (B) & (D), as expected, root their prohibitions in use of an automatic telephone dialing system or an artificial or prerecorded voice. § 227(b)(1)(A) ("using any automatic telephone dialing system or an artificial or prerecorded voice"); (B) ("using an artificial or prerecorded voice"); & (D) ("to use an automatic telephone dialing system").

Similar terminology is found throughout its implementing regulation: § 64.1200(a)(1) ("using an automatic telephone dialing system or an artificial or prerecorded voice); (2) ("using an automatic telephone dialing system or an artificial or prerecorded voice"); (3)

4
ER 000102

("using an artificial or prerecorded voice"); & (5) ("Use an automatic telephone dialing system").

Because "automated" and "prerecorded" calls were of a greater nuisance, it is logical and consistent that the FCC would implement regulations in support of the broader application of § 227(b)—which specifically regulates "automated telephone dialing systems"—to text messages, while § 227(c)—which does not require "automatic" or "artificial" calls—does not apply to text messages. **Accordingly, based on a plain reading of the TCPA and its implementing regulations, § 227(c) and its implementing regulations do not apply to text messages.**

   **2. The FCC's 2003 Order and Plaintiffs' case law do not create liability for text messages under § 227(c).**

Plaintiffs may argue that because 47 C.F.R. § 64.1200(e) states that the rules set forth in "paragraph (c) and (d) of this section are applicable to any person or entity making telephone solicitations or telemarketing calls or text messages to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, 'Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991'" (the "2003 Order"), that text messages are actionable under 47 U.S.C. § 227(c) and its implementing regulations, and that this Court must defer to the agency's order.[1] But this would be incorrect.

---

[1] The "Report and Order," which restricts and limits the application of 47 C.F.R. § 64.1200(e), was issued by the FCC on July 3, 2003 (the "2003 Order"). *In re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014 (2003), https://docs.fcc.gov/public/attachments/FCC-03-153A1.pdf. Plaintiffs cite this order in paragraph 19 of the Consolidated Class Action Complaint for the proposition that "The FCC has recognized that the TCPA and implementing regulations apply to 'both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls[.]'"

While paragraph 165 of the 2003 Order indicates that, *under some circumstances*, "calls" do include "text messages," those circumstances are not present here. The 2003 Order was only addressing text messages sent using "an automatic telephone dialing system or an artificial or prerecorded message" — a practice prohibited by § 227(b), not § 227(c). *Id.* ¶ 165. In fact, paragraph 165 of the 2003 Order cites only to § 227(b) and 47 C.F.R. § 64.1200(a) — **not § 227(c) or 47 C.F.R. § 64.1200(c) or (d).** *Id.* Thus, the 2003 Order cannot be used to imply that text messages are regulated by § 227(c) or § 64.1200(c), (d).

Further, Plaintiffs may claim—as they do in paragraph 24 of the Consolidated Class Action Complaint—that *Hand v. Beach Entm't KC, LLC*, 456 F. Supp. 3d 1099 (W.D. Mo. 2020) and *Doohan v. CTB Inv'rs, LLC*, 427 F. Supp. 3d 1034 (W.D. Mo. 2019) support the general proposition that "courts have also found that text messages fall under § 64.1200(d)." Plaintiffs, again, are mistaken.

In *Hand*, the Western District of Missouri found, "A text message qualifies as a 'call' within the scope of the [TCPA]." 456 F. Supp. 3d at 1114. However, as in the 2003 Order, the *Hand* court made this finding specifically as it relates to text messages sent by an automatic telephone dialing system, which is **not** governed by § 227(c). *Id.* Moreover, to the extent Plaintiffs quote the *Hand* opinion as it relates to § 64.1200(d), the issue was not whether text messages were regulated by the TCPA; but rather, whether a cell phone user constitutes a "residential telephone subscriber." *See id.* at 1124. Thus, *Hand* is inapplicable here.

Further, to the extent Plaintiffs cite *Doohan*, that case is not relevant. The *Doohan* court addressed the definition of an "ATDS" — i.e., an "automatic telephone dialing system" — and whether the definition was unconstitutionally vague for purposes of Fifth Amendment Due Process. 427 F. Supp. 3d at 1069. As discussed at length, above, the use of an "automatic

telephone dialing system" is regulated only by § 227(b), **not** § 227(c). Thus, Plaintiff's citation to *Doohan* is likewise inapplicable here.

The relevant sections of the 2003 Order address claims arising under § 227(b) — **not** § 227(c) — and thus do not speak to facts raised in the Consolidated Class Action Complaint or the issues before this Court, and this Court should not, and need not, defer to them under the Administrative Orders Review Act (the "Hobbs Act").[2] To be clear, Blackstone argues not that the FCC misinterpreted the law, but rather that **the 2003 Order <u>does not address</u> the specific provisions of the TCPA and its regulations that are at issue in this case**. The Court's rejection of the 2003 Order further comports with the Supreme Court's recent rejection of *Chevron* deference and pronouncement that it is for the courts to say what the law is. *Loper-Bright Ent. v. Raimondo*, 144 S. Ct. 2244, 2257 (2024) (citing *Marbury v. Madison*, 1 Cranch 137, 177, 2 L. Ed 60 (1803)).

Thus, the 2003 Order and Plaintiffs' case law do not create a cause of action under § 227(c) relating to the receipt of text messages. Therefore, Counts I–IV — in which Plaintiffs seek to impose liability for text messages under § 227(c) — must be dismissed.

**B. The Court has no jurisdiction to hear Plaintiffs' requests for injunctive relief or declaratory relief because Plaintiffs make no plausible allegations of a real and immediate threat of future harm.**

To sustain a claim for injunctive relief, a plaintiff must plausibly allege facts showing a "'real and immediate' threat of future injury from the challenged conduct as opposed to a merely 'conjectural or hypothetical' threat." *Morgan v. Federal Bureau of Prisons*, 129 F.4th 1043, 1048 (7th Cir. 2025) (quoting *City of L.A. v. Lyons*, 461 U.S. 95, 102 (1983)). As applied

---

[2] Hobbs Act (28 U.S.C. § 2342) requires a district court to accept the FCC's legal interpretations of the TCPA in a private enforcement action. Importantly here, however, the FCC rulings are inapplicable and thus no deference is in play.

to the TCPA, a plaintiff is not entitled to injunctive relief when the plaintiff fails to allege "'a real and immediate threat that he would again be' called." *Johnson v. ACA Helpline, LLC*, 2025 WL 315578, at *2 (N.D. Ind. Jan. 24, 2025) (quoting *Lyons*, 461 U.S. at 105).

Failure to sufficiently allege facts showing a "real and immediate threat" deprives the Court of jurisdiction to hear a claim for injunctive relief. Under Article III of the Constitution, the Court's jurisdiction is limited to "cases and controversies." However, "past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief." *Lyons*, 461 U.S. at 102. Unless Plaintiffs can allege facts sufficient to show a present "case or controversy," Plaintiffs have no Article III standing, and the Court has no jurisdiction to hear their requests for injunctive relief. *Id.* at 101 ("It goes without saying that those who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy.").

For these same reasons, declaratory relief is also unavailable to Plaintiffs unless they allege a real and immediate threat of future harm. *See Cohn v. Guaranteed Rate, Inc.*, 130 F. Supp. 3d 1198, 1205 (N.D. Ill. 2015) ("The Declaratory Judgment Act, 28 U.S.C. § 2201, allows federal courts, in their discretion, to render declaratory judgments only where there exists an 'actual controversy.' … When a party seeks a declaratory judgment on the basis that litigation against it is forthcoming, that party must be able to show that the feared lawsuit from the other party is immediate and real, rather than merely speculative."); *Sarkis' Cafe, Inc. v. Sarks in the Park, LLC*, 55 F. Supp. 3d 1034, 1038 (N.D. Ill. 2014) ("To seek a [declaratory judgment], a party must demonstrate a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of declaratory judgment." (alteration in original)).

Here, none of Plaintiffs sufficiently allege any real or immediate threat of future harm. Jones alleges he received text messages from Blackstone between September 2022 and November 2023. Cons. Class Action Compl. [D.E. 29], ¶¶ 34–38. Steidinger alleges he received text messages from Blackstone between October 2023 and January 2024. Cons. Class Action Compl. [D.E. 29], ¶¶ 54–56. And Koller alleges she received text messages from Blackstone between July 2023 and January 2024. Cons. Class Action Compl. [D.E. 29], ¶ 73.

Thus, none of the three named Plaintiffs allege receiving any text message from Blackstone **within 14 months of filing** the Consolidated Class Action Complaint. Because of the lack of any text message from Blackstone for this extended period of time, none of Plaintiffs has plausibly alleged a "real and immediate" threat of future harm, and none of Plaintiffs has Article III standing to pursue injunctive or declaratory relief in this case. Accordingly, Plaintiffs' requests for injunctive and declaratory relief must be dismissed under Rule 12(b)(1) because the Court lacks jurisdiction to hear the issue.

**C. Plaintiffs are not entitled to declaratory relief because it is redundant to Plaintiffs' claim for damages.**

Even if Plaintiffs sufficiently alleged an "actual controversy" to support their request for declaratory relief (which they have not), the Court should exercise its discretion to dismiss the requests for declaratory relief because they are duplicative of Plaintiffs' requests for monetary relief. "This Court has discretion to decline to hear a declaratory judgment action even if it considers the action justiciable. In this district, courts commonly exercise [their] discretion where the claim for declaratory judgment substantially overlaps with Plaintiff's substantive claims." *Cohn*, 130 F. Supp. 3d at 1205. "A declaratory judgment that adds nothing to the plaintiffs' claims for monetary damages for the same violations serves no purpose." *House of Brides, Inc. v. Alfred Angelo, Inc.*, 163 F. Supp. 3d 534, 547 (N.D. Ill. 2016).

Here, Plaintiffs' substantive claims relate to Blackstone's alleged violations of the TCPA.[3] The TCPA provides for monetary relief when a plaintiff proves a violation. However, Plaintiffs seek the following declaratory relief on the identical issues that would entitle them to monetary relief:

> Defendant violated the TCPA; Defendant initiated more than one telephone solicitation text and/or call to telephone numbers belonging to Plaintiff Steidinger and members of the Class within a 12-month period despite the fact that Plaintiff Steidinger and other class members' telephone numbers were registered on the National Do-Not-Call Registry at all relevant times.

Cons. Class Action Compl. [D.E. 29], ¶ 115.

> Defendant knowingly and/or willfully violated the TCPA; Defendant knowingly and/or willfully initiated more than one telephone solicitation text message and/or call to telephone numbers belonging to Plaintiff Steidinger and members of the Class within a 12-month period despite the fact that Plaintiff Steidinger and other Do Not Call Registry class members' telephone numbers were registered on the National Do-Not-Call Registry at all relevant times; It is Defendant's practice and history to place telephone solicitations and telemarketing messages to persons whose telephone numbers are registered on the National Do-Not-Call Registry and to persons who had previously made a do-not-call request to Defendant.

Cons. Class Action Compl. [D.E. 29], ¶ 121.

> Defendant initiated more than one telephone telemarketing text message and/or call to telephone numbers belonging to Plaintiffs and members of the Class within a 12- month period where the telephone subscriber had previously made a do-not-call request to Defendant, and Defendant failed to honor the do-not-call request within a reasonable period of time from the date the request was made.

Cons. Class Action Compl. [D.E. 29], ¶ 131.

> Defendant knowingly and/or willfully initiated more than one telephone telemarketing text message to telephone numbers belonging to Plaintiffs and members of the Class within a 12-month period where the telephone subscriber had previously made a do-not-call request to Defendant, and Defendant failed to honor the do-not-call request within a reasonable period of time from the date the request was made. It is Defendant's practice and history to place telephone solicitations and telemarketing messages to persons whose telephone

---

[3] Plaintiffs do not seek declaratory relief relating to Count V for violation of the FTSA.

numbers are registered on the National Do-Not-Call Registry and to persons who had previously made a do-not-call request to Defendant.

Cons. Class Action Compl. [D.E. 29], ¶ 138.

None of the above declarations add anything to Plaintiffs substantive claims for monetary relief. Rather, "once the merits of the [TCPA] claim … are adjudicated, the substantive issues will be resolved, and there is nothing to be gained — and certainly nothing the plaintiff identifies — by entering duplicative [declaratory] relief." *See House of Brides*, 163 F. Supp. 3d at 547–48. Accordingly, the Court should exercise its discretion to dismiss Plaintiffs' request for declaratory relief as duplicative of its request for monetary relief.

## CONCLUSION

For all the above-stated reasons, the Court should grant Blackstone's Motion to Dismiss Counts I–IV of the Consolidated Class Action Complaint.

WHEREFORE, Defendant, Blackstone Medical Services, LLC, respectfully requests an order dismissing Counts I–IV of the Consolidated Class Action Complaint, dismissing Plaintiff's claims for injunctive and declaratory relief, and awarding any other relief deemed necessary and just under the circumstances.

Date: May 13, 2025

Respectfully submitted,

_____/s/ John P. Heil, Jr._____
HEYL, ROYSTER, VOELKER & ALLEN, P.C.
300 Hamilton Blvd., P.O. Box 6199
Peoria, IL 61602
(309) 676-0400

John P. Heil, Jr. (IL ARDC #6237286)
jheil@heylroyster.com
Samuel J. Perkins (IL ARDC #6321283)
sperkins@heylroyster.com

- and -

GUNSTER, YOAKLEY & STEWART, P.A.
777 South Flagler Drive, Suite 500 East
West Palm Beach, FL 33401
(561) 655-1980

 Traci H. Rollins, Esq.
 Florida Bar No. 769071
 trollins@gunster.com
 crossodivita@gunster.com
 eservice@gunster.com
 Ryan C. Childress, Esq.
 Florida Bar No. 1049623
 rchildress@gunster.com
 mmargolese@gunster.com

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on May 13, 2025 I caused to be electronically filed the foregoing Motion with the Clerk of the Court using the CM/ECF system which will send notification to all registered CM/ECF participants:

KAZEROUNI LAW GROUP, APC
245 Fischer Avenue, Suite D1
Costa Mesa, CA 92626
(800) 400-6808
Abbas Kazerounian, Esq.
ak@kazlg.com
Ryan L. McBride, Esq.
ryan@kazlg.com

*Attorneys for Joseph Jones, and Interim Lead Class Counsel*

LEMBERG LAW, LLC
43 Danbury Road, 3rd Floor
Wilton, CT 06897
(203) 653-2250
Sergi Lemberg, Esq.
slemberg@lemberglaw.com

*Attorney for Seth Steidinger and Natasha Koller*

SCOTT D. OWENS, P.A.
2750 North 29th Avenue, Suite 209A
Hollywood, FL 33020
(954) 589-0588
Scott D. Owens, Esq.
scott@csottdowens.com

*Attorney for Seth Steidinger and Natasha Koller*

THE CONSUMER RIGHTS LAW GROUP, PLLC
P.O. Box 5326
Sun City Center, FL 33571
(813) 413-5710
Kimberly H. Wochholz, Esq.
kim@consumerrightslawgroup.com

*Attorney for Seth Steidinger and Natasha Koller*

      /s/ John P. Heil, Jr.

45773331.2

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**

|  |  |
|---|---|
| Joseph Jones, Seth Steidinger and Natasha Koller, *on behalf of themselves and all others similarly situated,*<br><br>Plaintiffs,<br>v.<br><br>Blackstone Medical Services, LLC<br><br>Defendant. | :<br>:<br>:<br>:<br>:<br>: Case No. 24-cv-01074<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COUNTS I-IV OF THE <u>CONSOLIDATED CLASS ACTION COMPLAINT</u>**

Plaintiffs Joseph Jones ("Plaintiff Jones"), Seth Steidinger ("Plaintiff Steidinger") and Natasha Koller ("Plaintiff Koller") (collectively, the "Plaintiffs"), on behalf of themselves and all others similarly situated, hereby submits this Memorandum of Law in Opposition to Defendant's Motion to Dismiss Counts I-IV of the Consolidated Class Action Complaint.

**INTRODUCTION**

In a questionable attempt to avoid liability, Defendant advances the argument that § 227(c) of the Telephone Consumer Protection Act ("TCPA") and its incorporated Federal Regulations do not create liability for text messages. On its face, this argument strains credulity and lacks any substantive merit. Additionally, Defendant proposes that Plaintiffs' request for injunctive and declaratory relief be dismissed for lack of standing and redundancy. While all three of these arguments could have been brought in Defendant's previous Motion to Dismiss—falling under the purview of Fed. R. Civ. P. 12(g)(2) and its ban on piecemeal litigation—Plaintiffs nevertheless

ER 000112

contend that each lacks merit.[1] As such, and as explained in detail below, Plaintiffs respectfully request that this Court deny Defendant's Motion in its entirety.

## ARGUMENT

**A. The FCC and Courts unanimously agree that text messages apply under the TCPA.**

It has been universally agreed upon by Courts and the Federal Communications Commission ("FCC") that the TCPA applies to text messages. To argue otherwise, as Defendant does, is to selectively read features of the statute and regulations without regard to binding authority, historical context, or common sense.

When Congress enacted the TCPA in 1991, "text messaging capabilities were not available[.]" *Lozano v. Twentieth Century Fox Film Corp.*, 702 F. Supp. 2d 999, 1005 (N.D. Ill. 2010). Nevertheless, Congress sought to "protect residential telephone subscribers' privacy to avoid receiving ***telephone solicitations*** to which they object." 47 U.S.C. § 227(c)(1) (emphasis added).[2] For this endeavor, Congress tasked the FCC to consider approaches for addressing unwanted "telephone solicitations," and to "develop proposed regulations to implement the methods and procedures that the Commission determines are most effective and efficient to accomplish the purposes of this section." 47 U.S.C. § 227(c)(1)(C), (D), & (E). To this end, section 227(c)(5) of the TCPA provides a private right of action for any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation

---

[1] When Plaintiffs filed their First Amended Class Action Complaint ("FAC") (Doc. 6)—the operative pleading over Defendant's prior Motion to Dismiss (Doc. 9)—Plaintiffs Steidinger and Koller brought their claims, in part, under 47 U.S.C. § 227(c). *See* FAC, Counts I, II, III, and IV. Pursuant to these claims, and at the core of Plaintiffs factual allegations, stood violative text messages. *See id*. at ¶¶ 1, 3-7, 38-44, 47, 50-55, 58-74, 76, 78-80, 87-88. For these violations, Plaintiffs sought, *inter alia*, injunctive and declaratory relief. *Id*. at ¶¶ 102-103, 110-111, 121, 131. Upon filing their Consolidated Class Action Complaint ("CCAC") (Doc. 29), Plaintiffs made no material changes to the underlying allegations and once again included injunctive and declaratory relief. *See generally*, CCAC.

[2] The TCPA defines "telephone solicitation" to mean "the initiation of a ***telephone call or message***…which is transmitted to any person." 47 U.S.C. § 227(a)(4); *see also* 47 C.F.R. 64.1200(f)(15); *Lozano*, 702 F. Supp. 2d at 1007 ("As other courts have recognized, however, the term 'call' in § 227 is not limited to oral telephone calls: Webster's defines 'call' in this context 'to communicate with or try to get into communication with a person by a telephone'").

2

of the regulations prescribed under this subsection." 47 U.S.C. § 227(c)(5). Relevant to the facts here, the FCC promulgated 47 C.F.R. § 64.1200(c) which prohibits the initiation of "any telephone solicitation" to those registered with the national do-not-call registry, and 47 C.F.R. § 64.1200(d) which prohibits the initiation of "any artificial or prerecorded-voice telephone call…or any call for telemarketing purposes…" The regulations specifically state that text messages apply to subsections (c) and (d). 47 C.F.R. § 64.1200(e).

### 1. The FCC's Final Declaratory Rulings find that text messages are calls

In line with its own regulatory framework (see above), the FCC has made binding, declaratory rulings holding that "calls" are text messages under the TCPA.

As a preliminary matter, the Administrative Orders Review Act ("Hobbs Act") grants federal courts of appeal the "exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or determine the validity of [] all final orders of the Federal Communications Commission[.]" 28 U.S.C. § 2342(1). "This procedural path created by the command of Congress 'promotes judicial efficiency, vests an appellate panel rather than a single district judge with the power of agency review, and allows uniform, nationwide interpretation of the federal statute by the centralized expert agency created by Congress to enforce the TCPA.'" *Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110, 1119 (11th Cir. 2014) (quoting *CE Design, Ltd. v. Prism Bus. Media, Inc.*, 606 F.3d 443, 450 (7th Cir. 2010). In other words, District Courts are required to adhere to any "final orders" by the FCC. *Id.*; *see also PDR Network, LLC v. Carlton & Harris Chiropractic, Inc.*, 588 U.S. 1, 6-8 (2019).

In its 2003 Order, the FCC affirmed "that under the TCPA, it is unlawful to make *any call* using an automatic telephone dialing system or an artificial or prerecorded message to any wireless telephone number." *In re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*,

("2003 Order") 18 FCC Rcd. 14014 ¶ 165 (2003). It then goes on to say that "these calls, with limited exceptions…encompasses both voice calls and text calls to wireless numbers[.]" *Id*. The final order from the FCC is clear: calls encompass text messages.

However, the 2003 Order need not be dispositive in and of itself; later FCC Orders have come to similar conclusions about text messages. *See In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991* ("2012 Order"), 27 FCC Rcd. 1830, 1832 ¶ 4 (2012) ("The Commission has concluded that the prohibition encompasses both voice and text calls, including short message service (SMS) calls, if the prerecorded call is made to a telephone number assigned to such service"); *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991* ("2015 Order"), 30 FCC Rcd. 7961 (2015) ("Glide raises the issue of whether SMS text messages are subject to the same consumer protections under the TCPA as voice calls. We reiterate that they are"); *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991* ("2016 Order"), 31 FCC Rcd. 9074, 9092 ¶ 40 (2016) (requiring text messages related to debt servicing to "disclose the right [to-opt-out] within each text message or in a separate text message that contains only the disclosure and is sent immediately preceding the first covered text message"). Most notably, in 2023, "the Commission propose[d] ***to clarify*** that the National Do-Not-Call Registry protections apply to text messages as well as voice calls and to codify this clarification in the Commission's rules." *Targeting and Eliminating Unlawful Text Messages*, Further Notice of Proposed Rulemaking, 88 FR 20800, 20802 ¶ 6 (2023) (emphasis added). "Although the Commission has stated that text messages are calls for [TCPA] purposes, it has not explicitly included text messages in the codified DNC rules…" *Id*. The FCC sought "comment on whether codifying the DNC protections to marketing texts further protect[s] consumers from unwanted

4

marketing text messages" and "note[d] that the DNC protections do not depend on whether the caller uses an autodialer, unlike some provisions of the TCPA." *Id*. at 20802 ¶ 7.

In its 2023 Report and Order, the FCC "adopt[ed] the proposal to codify the National DNC Registry's existing protections to text messages." 89 FR 5098, 5099 ¶ 6, Commission's Second Report and Order and Waiver Order (2023). Noting its previous conclusion "that the national database should allow for the registration of wireless telephone numbers," the FCC made it clear that its "action is ***consistent with Federal court opinions and will deter illegal texts*** and make DNC enforcement easier." *Id*. (emphasis added). Speaking to its legal authority, the FCC stated that, for purposes of the TCPA, texts are included in the term 'call.'" *Id*. at 5101 ¶ 26. Indeed, "[t]he DNC restrictions have long applied to wireless phones and the Commission and courts have long held that text messages are calls under the TCPA." *Id*. Pursuant to this Order, and as of March 26, 2024, the FCC amended C.F.R. § 64.1200(e) "by adding 'or text messages' after the word 'calls.'" *Id*. at 5104; *E.g.*, *Misner v. Empire Auto Protect, LLC*, 2024 U.S. Dist. LEXIS 202146, at *7 (S.D. Ohio Nov. 6, 2024) ("The FCC issued a regulation clarifying that [47 C.F.R. § 64.1200(d)] applies equally to text message calls or text messages to wireless telephone numbers").

Despite binding authority from the FCC, it is odd that Defendant focused solely on the fact that the 2003 Order referenced § 227(b). In fact, Defendant even attempted to posit that "[t]he FCC intentionally omitted text messages or SMS messages from its regulations within § 64.1200(c) and (d)." (Doc. 33 at 4). Not so. As stated previously, § 64.1200(e) unambiguously states that text messages apply to the preceding two sections. Anticipating this retort, Defendant argues that section (e) only applies "to the extent described in the [FCC's 2003 Order]." (Doc. 33 at 5-6). According to Defendant, the plain language of § 64.1200(e) must be ignored because the only

5

paragraph in the 2003 Order which references text messages does so in the context of § 227(b).[3] This misconstrues the purpose of § 64.1200(e) and its historical context.

The 2003 Order, widely known for its initial adoption of the National do-not-call registry, also discussed "whether a subscriber to a wireless telephone service could be considered a residential telephone subscriber for purposes of the FCC Rule." *United States v. Dish Network LLC*, 75 F. Supp. 3d 916, 926 (C.D. Ill. 2014). *Dish Network* provides an instructive summary:

> "The FCC found that many consumers elect to use a wireless telephone as their residential phone service. The FCC determined that these wireless customers should receive the benefits of the protections of the FCC Rule. Based on this analysis, the FCC concluded that wireless customers could register their wireless telephone numbers on the Registry…***The FCC incorporated by reference in the FCC Rule this analysis from [the 2003 Order]***: '(e) The rules set forth in paragraph (c) and (d) of this section are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers…'"

*Id*. (quoting 47 C.F.R. § 64.1200(e)) (emphasis added). Because the original purpose of 64.1200(e) had been to give wireless customers protection under the FCC's do-not-call provisions, its incorporation of the 2003 Order had merely been to qualify when a wireless customer may not be considered a 'residential subscriber' under the rules. *See* 2003 Order ¶ 36.[4] Thus, Defendant's sole reliance on the 2003 Order is unavailing. In fact, even courts have noted that a textual analysis of the 2003 Order compels a different conclusion from Defendant:

> "The fact that the FCC uses 'voice,' 'text' and 'short message service (SMS)' to modify 'calls' itself indicates that voice calls, text calls, and SMS calls are all types of calls, and thus, necessarily, calls. [citing the "2003 Order"]. Subsection 227(c)(5) grants a private right of action to a 'person who has received more than one telephone call within any 12-month period.' The statute does not specify that it must

---

[3] It should come as no surprise that the 2003 Order mentions text messages once; Text messaging had barely been *invented* ten years prior "with customers in 1995 sending on average only 0.4 messages per GSM customer per month." *See* https://en.wikipedia.org/wiki/Text_messaging (last accessed 5/22/2025).

[4] "Therefore, we conclude that wireless subscribers may participate in the national do-not-call list. As a practical matter, since determining whether any particular wireless subscriber is a 'residential subscriber' may be more fact-intensive than making the same determination for a wireline subscriber, we will presume wireless subscribers who ask to be put on the national do-not-call list to be 'residential subscribers.' Such a presumption, however, may require a complaining wireless subscriber to provide further proof of the validity of that presumption should we need to take enforcement action."

6

be a voice call or a live telephone solicitation or a live telemarketing call: it simply applies to telephone calls broadly. Because the FCC recognizes text calls as a type of call, a text message would presumably be a form of a telephone call under § 227(c)(5)."

*Hudson v. Palm Beach Tan, Inc.*, 2024 U.S. Dist. LEXIS 165676, at *19-20 (M.D.N.C. Aug. 12, 2024); *see also United States v. Amer. Trucking Assoc.*, 310 U.S. 534, 542-43 (1940) ("when words of a statute are susceptible to more than one meaning, courts are to interpret them in a manner which is reasonable given the subject matter of the statute and its purpose").

Given these unambiguous orders from the FCC—including the TCPA's own regulatory framework— and the FCC's binding authority under the Hobbs Act, this Court should find that text messages apply under § 227(c) of the TCPA.

### 2.  Case law universally holds that text messages are calls within the TCPA

In the seminal case of *Satterfield v. Simon & Schuster, Inc.*, the Ninth Circuit Court of Appeals found that "a text message is a 'call' within the meaning of the TCPA." *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009). Applying the 2003 Order, discussed above, the Court first looked "to the ordinary, contemporary, and common meaning of the verb 'to call'" which Webster's defined as "to communicate with or try to get into communication with a person by a telephone." *Id*. at 953-54. Acknowledging nuisance and privacy concerns, the Court held "that a voice message or a text message are not distinguishable in terms of being an invasion of privacy." *Id*. at 954. The Court even "recognize[d] that Congress could not have spoken clearly to this issue in 1991 when the statute was enacted" precisely because text messages had not been invented. *Id*. Finally, when addressing the 2003 Order, the Court found that "[i]t is undisputed that text messaging is a form of communication used primarily between telephones" and "[t]he FCC's interpretation is also consistent with the purpose of the TCPA—to protect the privacy interests of telephone subscribers." *Id*.

7

While *Satterfield* spoke in the context of § 227(b), Courts within the Seventh Circuit and across the country universally agree that the federal regulations and § 227(c) of the TCPA apply to text messages. *Griffith v. ContextMedia, Inc.*, 235 F. Supp. 3d 1032, 1033 (N.D. Ill. 2016) ("the legislative history indicates that Congress sought to protect the 'freedom [of consumers] to choose how their telephones are used,' 137 Cong. Rec. S18317-01, 1991 WL 250460 (Senator Pressler), and unwanted text messages are no less an encroachment on that freedom than unwanted phone calls"); *Reimer v. Kohl's, Inc.*, 2023 U.S. Dist. LEXIS 168078, at *13 (E.D. Wis. Sept. 21, 2023) (finding that text messages apply to § 227(c)); *Fralish v. Digital Media Solutions*, 2021 U.S. Dist. LEXIS 225281, at *18 (N.D. Ind. Nov. 17, 2021) (explaining in a motion to compel that "the sending of text messages at issue…are relevant to [plaintiff's] Section 227(c) claim because this information bears directly on whether [defendant] potentially violated Section 227(c) by directing more than one telephonic communication…"); *Hall v. Smosh Dot Com, Inc.*, 72 F.4th 983, 986 (9th Cir. 2023) (Recognizing that under 47 U.S.C. § 227(c), "the owner and subscriber of a phone with a number listed on the Do-Not-Call Registry has suffered an injury in fact when unsolicited telemarketing calls or texts are sent to the number in putative violation of the TCPA"); *Barton v. Temescal Wellness, LLC*, 525 F. Supp. 3d 195, 198-99 (D. Mass. 2021) ("The overwhelming weight of precedent holds that text messages are calls for purposes of the TCPA…[Defendant] has not pointed to a single court which has held that text messages are not calls for the purposes of TCPA"); *Pariseau v. Built USA, LLC*, 619 F. Supp. 3d 1203, 1206-07 (M.D. Fla. 2022) (finding that allegations under § 227(c) stated a claim for relief based on text messages); *Persichetti v. T-Mobile USA, Inc.*, 479 F. Supp. 3d 1333, 1336-38 (N.D. Ga. 2020) (finding that text messages apply under 47 C.F.R. § 64.1200(d)); *Pepper v. GVG Capital LLC*, 677 F. Supp. 3d 638, 643 (S.D. Tex. June 9, 2023) ("[Defendant] also argues that text messages are not actionable under the TCPA

8

ER 000119

provisions at issue…This argument fails in the face of the statutory text, which refers to 'telephone call[s] or message[s],' 47 U.S.C. § 227(c), the applicable regulations, and the decisions of the various courts to consider the issue"); *Hudson*, 2024 U.S. Dist. LEXIS 165676 at *15-16 (finding that "the weight of the case law supports the conclusion that the receipt of text messages can establish an injury under § 227(c)(5)…[and] the statutory text and FCC regulations and guidance support the conclusion that text messages can establish the basis for a claim under § 227(c)(5)"); *Abboud v. Circle K Stores Inc.*, 2025 U.S. Dist. LEXIS 13605 at * (D. Ariz. 2025) ("A telephone solicitation can be a call or text message").

This seemingly universal stance appears to comport with the Seventh Circuit's recognition that "statutes must be permitted to apply to technologies not in existence when a statute was drafted." *Lozano*, 702 F. Supp. 2d at 1008 (citing *Squillacote v. United States*, 739 F.2d 1208, 1213 (7th Cir. 1984)). In fact, "the legislative history of the TCPA reflects that Congress anticipated future technologies when it enacted the statute." *Id*. (citing 137 Cong. Rec. S18784 (1991) (statement of Sen. Hollings) ("The FCC is given the flexibility to consider what rules should apply to future technologies as well as existing technologies")). Thus, "while text messaging was not a capability in 1991, the plain meaning of the term 'call' at that time includes communications by phone, and does not prohibit application of the statute to text messaging." *Id*. at 1007. It should be no surprise, then, that Defendant is unable to cite any case law to support its position.[5] Indeed, Defendant attempts to contest an issue so thoroughly adjudicated that it borders on frivolity.

### 3.  Public policy demands that text messages apply to § 227(c)

---

[5] Defendant only attempts to distinguish the case law cited in Plaintiffs' Consolidated Complaint rather than put forth any substantive case law affirming its position. Still, the attempts to distinguish these cases are inapposite as both cases stated that "[a] text message qualifies as a 'call' within the scope of the Act," with *Hand*, in particular, denying dismissal of claims under § 227(c) through Motion for Summary Judgment and certifying a DNC-based Class. *Hand v. Beach Entm't KC, LLC*, 456 F. Supp. 3d 1099, 1153 (W.D. Mo. 2020).

9

Defendant's argument, taken to its logical conclusion, would be disastrous to public policy. Individuals, young and old, would be inundated with unwanted text messages and lack any appropriate remedy. Here, Plaintiffs and many others suffered from Defendant repeatedly sending text messages despite clear revocations. CCAC ¶¶ 3-6. The fact that so many individuals have come forward about Defendant's harassing behavior speaks of the need for text messages to be within the TCPA's purview. Indeed, the very purpose of the TCPA—to protect consumers from intrusive, unwanted communications—is turned upside down if text messaging, a major form of telephone communication, is excluded from 227(c). Text messages are functionally equivalent to phone calls in their immediacy and personal intrusion—often more so, given the near-universal use of mobile devices and the disruption caused by unsolicited alerts. Eliminating liability under § 227(c) for unwanted texts would effectively gut a key deterrent against these intrusions, incentivizing businesses to flood consumers' phones with messages without their consent. Consumers would lose meaningful recourse, while companies would gain a low-cost, high-impact channel to bypass privacy boundaries. In a digital age where communication is increasingly mobile, stripping the protections of § 227(c) from text messages would greatly undermine public policy.

Not only has the FCC ruled definitively on the matter, but Courts are in agreement: text messages apply to § 227(c) of the TCPA. Holding otherwise goes against binding precedent, sound law, and good public policy. Accordingly, this Court should deny Defendant's Motion to Dismiss.

**B.  Plaintiffs are entitled to injunctive relief.**

Standing for prospective injunctive relief is typically said to require that "a plaintiff must face a 'real and immediate' threat of future injury as opposed to a threat that is merely 'conjectural or hypothetical." *Simic v. City of Chicago*, 851 F.3d 734, 738 (7th Cir. 2017) (citing *City of Los*

10

*Angeles v. Lyons*, 461 U.S. 95, 102 (1983)). In *Lyons*, the Supreme Court analyzed a civil rights case against abusive law enforcement practices and gave great deference to its prior holding in *O'Shea v. Littleton*, 414 U.S. 488 (1974). Many courts, including Defendant here, have gone on to cite the proposition from *O'Shea* that "past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief." *Id*. However, the analysis is not so simple. *O'Shea* spoke about "a continuing pattern and practice of conduct, under color of law" with respect to general allegations:

> ***None of the named plaintiffs is identified as himself having suffered any injury in the manner specified***. In sharp contrast to the claim for relief against the State's Attorney where specific instances of misconduct with respect to particular individuals are alleged, the claim against petitioners alleges injury in only the most general terms. At oral argument, respondents' counsel stated that some of the named plaintiffs-respondents…had actually been defendants in proceedings before petitioners and had suffered from the alleged unconstitutional practices. Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief, however, if unaccompanied by and continuing, present adverse effects. Neither the complaint nor respondents' counsel suggested that any of the named plaintiffs at the time the complaint was filed were themselves serving an allegedly illegal sentence or were on trial or awaiting trial before petitioners…***Of course past wrongs are evidence bearing on whether there is a real and immediate threat of repeated injury***."

*Id*. at 495-96 (emphasis added). Indeed, *O'Shea* did not foreclose evidence of "past exposure…in itself" but qualified its applicability. Furthermore, the Supreme Court tempered this view on injunctive relief in lieu of the "the need for a proper balance in the concurrent operation of federal and state courts" which "counsels restraint against the issuance of injunctions ***against state officers engaged in the administration of the State's criminal laws***." *Id*.; *see also Sierakowski v. Ryan*, 223 F.3d 440, 443 (7th Cir. 2000) ("past wrongs, while not sufficient to confer standing for injunctive relief, may be evidence that future violations are likely to occur").

Here, unlike *O'Shea*, Plaintiffs allege specific harm done to them (and others). *See generally*, CCAC. Additionally, these harms are against a business entity—not a state actor. *Id*. ¶

11

13. Moreover, Plaintiffs' Consolidated Complaint—which is predicated on Defendant's systematic failure to stop sending telephonic solicitations, despite repeated requests by Plaintiffs— is replete with examples of the "real and immediate threat" of future injury. *See* CCAC ¶ 2 ("Blackstone operates an aggressive telemarketing campaign where it repeatedly sends text messages and telephone calls…"); ¶¶ 3-5 (summarizing Plaintiffs personal experiences); 6 (detailing consumer complaints online); ¶ 35 (describing how when Plaintiff Jones said he was not interested, Defendant directly responded to his text, acknowledging their knowledge of his opt-out, and proceeded to continue soliciting him thereafter); ¶ 59 (Defendant "deliberately programmed its telephone dialing systems to ignore [stop requests]"); ¶ 84 (showing other consumers complaining of similar treatment). While Defendant claims that not receiving texts for "extended period of time" warrants denial of injunctive relief, the pervasive and prolonged actions of Defendant warrant otherwise. *See Griffith*, 235 F. Supp 3d at 1035 ("I am not persuaded, however, that dismissal of plaintiff's claim for injunctive relief is appropriate at this juncture. As plaintiff points out, the TCPA expressly authorizes injunctive relief, and plaintiff's allegations— particularly those directed to her months-long efforts to stop defendants' unwanted texts—are sufficient to entitle her to develop the factual record as to whether injunctive relief is appropriate"); *Le v. Kohls Dep't Stores, Inc.*, 160 F. Supp. 3d 1096, 1109 (E.D. Wis. 2016) (finding standing to pursue claims for injunctive relief based on a defendant's engagement in a "company-wide, pervasive" marketing campaign).

Furthermore, claims of injunctive relief should not be stricken at the motion to dismiss stage when class-wide allegations are presented. *Burke v. Credit One Bank, N.A.*, 2019 U.S. Dist. LEXIS 62770 (M.D. Fla. Feb. 5, 2019). In *Burke*, the Court denied Defendant's request to dismiss

12

or strike Plaintiff's prayers for injunctive relief because an injunction standing analysis had not yet

been conducted for prospective class members. *Id*. at *10-12. The Court provided as follows:

> Here, however, the Complaint's allegations do not show that Plaintiff currently faces an ongoing threat of receiving calls from Defendants. As Defendants point out, Plaintiff does not allege that she has continued to receive such calls or even that she has received calls within the past year. Nonetheless, Plaintiff seeks injunctive relief in favor of both herself *and* the putative class. **The Court cannot examine, at this juncture, whether injunctive relief is appropriate for members of the putative class, as the parties have not engaged in discovery and Plaintiff has not moved to certify the class**. *See Snyder*, 258 F. Supp. 3d at 900-01 (preliminarily finding that the **named plaintiffs did not face a current threat** of receiving telephone calls from the defendant, but conducting a standing analysis for the requested injunction—finding that the **named plaintiffs had sufficiently demonstrated that class members continued to receive phone calls and a named plaintiff possessed a live claim for injunctive relief when she joined the lawsuit**—where the parties had engaged in discovery and the named plaintiffs had moved for class certification). Indeed, Defendants ask the Court to dismiss or strike injunctive relief for presently unidentifiable class members prior to an opportunity for the putative class' certification. Defendants' request for the Court to dismiss or strike Plaintiff's prayers for injunctive relief is therefore due to be denied.

*Id*. (emphasis added); *see also Synder v. Ocwen Loan Servicing, LLC*, 258 F. Supp. 3d 893, 901

(N.D. Ill. 2017) (finding "that plaintiffs may pursue claims for injunctive relief on behalf of a

class" as "[a] defendant's choice to end the challenged behavior—where he remains free to resume

the unlawful conduct at any time—is insufficient to render plaintiff's claim moot").

Here, Plaintiff alleges class wide claims and prayers for relief which includes a prospective

class. To strike or dismiss Plaintiff's prayer for injunctive relief—like the Defendants asked for

and were denied in Burke—would prevent and future class claimants from receiving an adequate

remedy. Class wide injunctive relief based on TCPA claims are statutorily available and may be

closely tailored to prevent Defendant from engaging in future harm. Even if such harm has not

recently happened, the potential for recurrence remains a significant possibility. Defendant has not

stated that it stopped sending text messages as part of its baseline practices. Further discovery is

13

thus warranted. Accordingly, at this stage, this Court should deny Defendant's motion to dismiss Plaintiff's prayers for injunctive relief.

### C. Plaintiffs are entitled to declaratory relief.

For the same reasons as expressed above, Plaintiffs are entitled to declaratory relief. *See Simon v. Coop. Educ. Serv. Agency #5*, 46 F.4th 602, 609 (7th Cir. 2022) ("The Supreme Court has repeatedly found that declaratory judgments 'closely resemble' injunctive relief, the quintessential equitable remedy").

The Declaratory Judgment Act provides that "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The Act further provides that "[a]ny such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." *Id*. "The very purpose of a declaratory judgment is to provide *prospective* relief." *White v. Califano*, 437 F. Supp. 543, 560 (D.S.D. 1977), aff'd, 581 F.2d 697 (8th Cir. 1978) (emphasis original). Moreover, "the availability of another remedy does not preclude declaratory relief[.]" *Highland Park v. Train*, 519 F.2d 681, 693 (7th Cir. 1975). In that sense, a court may exercise its discretion to provide declaratory relief "if the declaratory judgment will clarify and settle the disputed legal relationships and afford relief from the uncertainty and controversy that created the issues[.]" *Nucor Corp. v. Aceros Y Maquilas de Occidente, S.A. de C.V.*, 28 F.3d 572, 578 (7th Cir. 1994).

Here, declaratory relief will "afford relief from the uncertainty and controversy" surrounding Defendant's attempt to characterize these text messages, among other things, as required under healthcare exceptions. Indeed, the declaration would solidify, once fully adjudicated, that Defendant knowingly violated the TCPA and refused to abide by both its National

14

and company-specific do-not-call provisions. *See* CCAC ¶¶ 115, 121, 131, 138. Defendant argues that declaratory relief is duplicative of the Plaintiffs' request for monetary relief; however, the cases Defendant cites in support specifically analyze declaratory relief under a breach of contract context. *See Holmes v. Progressive Universal Ins. Co.*, 2023 U.S. Dist. LEXIS 3348, at *32 (N.D. Ill. Jan. 9, 2023) ("federal courts commonly exercise their discretion to dismiss declaratory judgment claims where they are duplicative of breach of contract claims"). Plaintiffs do not have separate breach of contract claims but seek clarification as to their rights pursuant to this Court's discretion to provide declaratory relief. Accordingly, Plaintiffs respectfully request that Defendant's motion be denied as to declaratory relief.

## CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that this Court deny Defendant's Motion to Dismiss in its entirety. Alternatively, Plaintiffs request leave to amend should the Court believe that the operative complaint is deficient. *See Gonzalez-Koeneke v. West*, 791 F.3d 801, 807 (7th Cir. 2015) (recognizing the broad discretion of district courts to provide leave to amend under Fed. R. Civ. P. 15).

Dated: May 27, 2025

Respectfully submitted,

By    */s/ Abbas Kazerounian*
Abbas Kazerounian, Esq.
ak@kazlg.com
Ryan L. McBride, Esq.
ryan@kazlg.com
KAZEROUNI LAW GROUP, APC
245 Fischer Ave Suite D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

*Lead Interim Class Counsel*

15

## CERTIFICATE OF SERVICE

I hereby certify that on May 27, 2025, a true and correct copy of the foregoing was filed with the Clerk of the Court through the ECF system which gave notice of such filing to all parties of record.

/s/ *Abbas Kazerounian*
Abbas Kazerounian

16

ER 000127

**IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION**

| | |
|---|---|
| JOSEPH JONES, SETH STEIDINGER, and NATASHA KOLLER, on behalf of themselves and all others similarly situated,<br>        Plaintiffs,<br><br>v.<br><br>BLACKSTONE MEDICAL SERVICES, LLC,<br>        Defendant. | Case No. 1:24-cv-01074-JEH-RLH |

**Order**

Now before the Court is Defendant Blackstone Medical Services, LLC's Motion to Dismiss Counts I-IV of the Consolidated Class Action Complaint (D. 32).[1]  For the reasons set forth, *infra*, the Motion is GRANTED.

**I**

On April 14, 2025, Plaintiffs Joseph Jones, Seth Steidinger, and Natasha Koller filed their Consolidated Class Action Complaint (D. 29) against Blackstone Medical Services, LLC (Blackstone) alleging violations of the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227, (Counts I-IV) and the Florida Telephone Solicitation Act (FTSA), FLA. STAT. § 501.059(5) (2023) (Count V).  The individually named Plaintiffs are consumers who received telemarketing text messages and calls to their telephones from Blackstone.  Defendant Blackstone is a Florida-based

---

[1] Citations to the electronic docket are abbreviated as "D. ___ at ECF p. ___."

1

ER 000128

company that sells home sleep tests.  The Plaintiffs brought their class action as representatives/members of the following classes:

> **Internal Do Not Call List Class** (Jones, Steidinger, and Koller):  All persons within the United States who, within the time frame(s) relevant to this action, (1) received two or more text messages from Blackstone or anyone acting on Blackstone's behalf, (2) within any 12-month period, (3) for the purpose of selling Blackstone's products and/or services, and (4) including at least one of those text messages being placed more than 30 days after such person requested that Blackstone stop calling and/or texting.

> **Do Not Call Registry Class** (Steidinger):  All persons in the United States who from four years prior to the filing of this action (1) were sent text messages and/or telephone calls by or on behalf of Defendant; (2) more than one time within any 12-month period; (3) where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days; (4) for the purpose of encouraging the purchase or rental of Defendant's products and/or services; and (5) where either (a) Defendant did not obtain prior express written consent to message the person or (b) the called person previously advised Defendant to "STOP" messaging them.

> **FTSA Class** (Jones and Koller):  All persons within the State of Florida who, (1) were sent a text message from Blackstone or anyone acting on Blackstone's behalf; (2) for the purpose of soliciting Defendant's goods and/or services, and (2) [sic] had previously communicated to Blackstone that they did not wish to receive Defendant's text messages.

(D. 29 at ECF pp. 3-4).  Collectively, the Plaintiffs request the three putative classes receive monetary, injunctive, and declaratory relief for the alleged violations of the TCPA and FTSA.

Specifically, the Plaintiffs allege[2] Defendant Blackstone operates an aggressive telemarketing campaign where it repeatedly sends text messages and telephone calls to telephone numbers that have been placed on the National Do-Not-Call Registry for at least 30 days and over the messaged party's objections in order to sell home sleep tests.  Plaintiff Steidinger is an Illinois resident who registered his residential cellular telephone number with the National Do-Not-Call Registry on April 18, 2018.  He began receiving telephone calls and text messages to his telephone number after discussing potentially taking a home sleep test with his healthcare provider.  During his first and only live conversation with Blackstone, the Plaintiff replied he was not interested in the home sleep test.  After Plaintiff Steidinger's telephone number was added to the National Do-Not-Call Registry and after he advised the Defendant he was not interested in its home sleep tests and repeatedly messaged Blackstone to "STOP", the Defendant continued to place repeated telemarketing text messages.  Plaintiff Koller is a Florida resident whose cellular telephone number, upon information and belief, Blackstone obtained from Koller's doctor; Koller did not give her doctor permission to convey to Blackstone her consent to its calls.  Koller repeatedly requested Blackstone to "STOP" sending her its solicitation text messages but the Defendant continued to place repeated telemarketing text messages to her cellular telephone which she used as her residential telephone line.  Plaintiff Jones, a Florida resident, received a barrage of text messages on his cellular telephone, which he used for personal and residential purposes, beginning in or around September 2022 despite never having given consent to be contacted and requesting the Defendant stop multiple

---

[2] When ruling on a motion to dismiss, the court must take all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. *Indep. Truck Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 934 (7th Cir. 2012).

3

times.    In Yelp reviews, other consumers complain about the Defendant's aggressive telemarketing and failure to abide by "stop" requests.

## II

Federal Rule of Civil Procedure 12(b)(6) authorizes the dismissal of claims for "failure to state a claim upon which relief can be granted".  A court may grant a Rule 12(b)(6) motion to dismiss only if a complaint lacks "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A complaint sufficient on its face need not give "detailed factual allegations," but it must provide more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action".  *Id*. at 555.  The Court accepts all well-pleaded factual allegations in the complaint as true and draws all reasonable inferences in favor of the plaintiff.  *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007).

## A

Defendant Blackstone seeks the dismissal of Counts I-IV of the Consolidated Class Action Complaint (CAC), arguing the provision of the TCPA pursuant to which the Plaintiffs bring their claims, 47 U.S.C. § 227(c), does not prohibit text messages.  The Plaintiffs bring Counts I and II pursuant to "47 U.S.C. § 227(c)(5), and 47 C.F.R. § 64.1200(c)(2)" and Counts III and IV pursuant to "47 U.S.C. § 227, et seq. and "47 C.F.R. § 64.1200(d) et seq."  Pls.' CAC (D. 29 at ECF pp. 30, 32, 33, 35).

## 1

"Voluminous consumer complaints about abuses of telephone technology . . . prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 370-71 (2012).  Thus, under 47 U.S.C. § 227(b), it is "unlawful for any person . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone

4

dialing system or an artificial or prerecorded voice" to several specified types of telephones including, among others, emergency telephone lines and telephone numbers assigned to a cellular telephone service.  47 U.S.C. § 227(b)(1)(A)(i)-(iii). The TCPA directs the Federal Communications Commission (FCC) "to prescribe regulations to implement the requirements of [Section 227(b)]."  47 U.S.C. § 227(b)(2).  Section 227(b)(3) provides for a private right of action based on a violation of Section 227(b) or the regulations prescribed under it.  47 U.S.C. § 227(b)(3).

Title 47 U.S.C. § 227(c), meanwhile, directed the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object."  47 U.S.C. § 227(c)(1).  Pursuant to its authority to prescribe regulations to implement methods and procedures for protecting those privacy rights, 47 U.S.C. § 227(c)(2), the FCC established a National "Do Not Call" Registry.  *See* 47 U.S.C. § 227(c)(3) ("The regulations required by paragraph (2) may require the establishment and operation of a single national database to compile a list of telephone numbers of residential subscribers who object to receiving telephone solicitations, and to make that compiled list and parts thereof available for purchase.").  Section 227(c)'s implementing regulation, 47 C.F.R. § 64.1200(c), provides in relevant part:

> No person or entity shall initiate any telephone solicitation to [] A residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government.

47 C.F.R. § 64.1200(c)(2).  Another implementing regulation, 47 C.F.R. § 64.1200(d), provides in relevant part:

5

> No person or entity shall initiate any artificial or prerecorded-voice telephone call pursuant to an exemption under paragraphs (a)(3)(ii) through (v) of this section or any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive such calls made by or on behalf of that person or entity.

47 C.F.R. § 64.1200(d).

Section 227(c)(5) provides for a private right of action by "A person who has received more than one *telephone call* within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under [Section 227(c)] . . . ."  47 U.S.C. § 227(c)(5) (emphasis added).

**2**

Defendant Blackstone argues that the phrases "text message" and "SMS message" are wholly absent from Section 227(c)(5) and its implementing regulations, 47 C.F.R. § 64.1200(c) and (d).  Indeed, only "call", "telephone call", and "artificial or prerecorded-voice telephone call" appear in Section 227(c) and its implementing regulations.    47 U.S.C. §  227(c)(1)(D), (c)(5); 47 C.F.R. § 64.1200(c)(2)(iii), (d).  The Defendant notes that the FCC clearly indicated its intent to regulate text messages or SMS messages under 47 C.F.R. § 64.1200(a) which was implemented under Section 227(b) only.[3]  Section 64.1200(a)(9) states, "As used in this paragraph (a)(9), the term 'call' includes a text message, including a short message service (SMS) call."  47 C.F.R. § 64.1200(a)(9). In their CAC and Response (D. 36) to the Motion to Dismiss, the Plaintiffs rely upon the FCC's Report and Order, CG Docket No. 02-278, FCC 03-153, *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991* (2003 Order), wherein the FCC stated:

> We affirm that under the TCPA, it is unlawful to make *any call* using an automatic telephone dialing system or an artificial or prerecorded

---

[3] The Defendant states that 47 C.F.R. § 64.1200(a) is implemented under Section 227(b) only, *not* Section 227(c).  The Plaintiffs do not contest that.

6

message to any wireless telephone number.  Both the statute and our rules[] prohibit these calls, with limited exceptions, "to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other common carrier service, or any service for which the called party is charged."[]  This encompasses both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls, provided the call is made to a telephone number assigned to such service.

18 FCC Rcd. 14014, 14116 para. 165 (2003) (emphasis in original).  They say the 2003 Order, along with later FCC Orders, case law, and public policy make clear that "calls" encompass text messages.

The Supreme Court very recently explained:

In an enforcement proceeding, a district court must independently determine for itself whether the agency's interpretation of a statute is correct.  District courts are not bound by the agency's interpretation, but instead must determine the meaning of the law under ordinary principles of statutory interpretation, affording appropriate respect to the agency's interpretation.

*McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 145 S. Ct. 2006, 2015 (2025) (citing *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 402 (2024)).[4]  Pursuant to *McLaughlin* and *Loper Bright*, the Court agrees with the Defendant that based on a plain reading of the TCPA and its implementing regulations, Section 227(c)(5) does not apply to text messages.

Under the principles of statutory interpretation, a court must start with the text of the statute to ascertain its plain meaning.  *U.S. v. Melvin*, 948 F.3d 848, 851 (7th Cir. 2020).  "Unless words are otherwise defined, they 'will be interpreted as

---

[4] The Supreme Court's opinion in *McLaughlin Chiropractic* was issued after the parties had already briefed the Motion to Dismiss in this case.  Relevant to the parties' positions in this case, *McLaughlin Chiropractic* held the Administrative Orders Review Act (or Hobbs Act), 28 U.S.C. § 2342, "does not preclude district courts in enforcement proceedings from independently assessing whether an agency's interpretation of the relevant statute is correct."  145 S. Ct. at 2013.

7

taking their ordinary, contemporary, common meaning.'"  *Id.* at 852 (quoting *Sandifer v. U.S. Steel Corp.*, 571 U.S. 220, 227 (2014)).    Section 227(c)(5) simultaneously explicitly refers to a "telephone call", a term not defined in the statute itself, and remains silent as to its application to text messages.  Text messaging was not an available technology in 1991, and thus "telephone call" would not have included text messages or SMS messages. *See id.* ("We find words' ordinary, contemporary, common meaning by looking at what they meant when the statute was enacted . . . ."); Alex Fitzpatrick, *How Text Messages Are Being Killed and Replaced*, TIME (Dec. 3, 2014), https://time.com/3612277/text-message-history-future/ ("The world's very first text message, sent Dec. 3, 1992, was a cheerful, if early, holiday greeting: 'Merry Christmas,' it read, short and sweet."). Moreover, in today's American parlance, "telephone call" means something entirely different from "text message".  Thus, under a plain reading, Section 227(c)(5) of the TCPA does not regulate text messages.  *See West v. Hoy*, 126 F.4th 567, 575 (7th Cir. 2025) (stating a court's "inquiry begins with the statutory text, and ends there as well if the text is unambiguous.") (quoting *BedRoc Ltd., LLC v. U.S.*, 541 U.S. 176, 183 (2004)); *Melvin*, 948 F.3d at 852 ("If the statutory language's plain meaning is unambiguous, [the court's] inquiry ends there.").

The fact that "telephone solicitation" appears in Section 227(c) and is defined earlier in Section 227(a) to mean "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person" does not change the plain meaning analysis.  47 U.S.C. § 227(a)(4).  Section 227(a)(4) does not refer to "text message"; "telephone call or message" could not be interpreted in 1991 to telephone call or *text* message, contrary to the Plaintiffs' footnoted suggestion.  Again, a statute's words are given their common meaning as of the time the statute was enacted.  *Melvin*, 948 F.3d at 852.

8

As for the Plaintiffs' reliance upon the FCC's 2003 Order to bring "text message" within the purview of Section 227(c)(5), within the relied upon Paragraph 165, the FCC explicitly mentions "automatic telephone dialing system", "artificial or prerecorded message", and "automated or prerecorded telephone calls".  18 FCC Rcd. 14014, 14116 para. 165.  In footnotes appearing within Paragraph 165, only 47 U.S.C. § 227(b) of the TCPA is cited along with 47 C.F.R. § 64.1200(a).  Section 227(b), *not* 227(c), addresses restrictions on the use of "an automatic telephone dialing system or an artificial or prerecorded message", and, as already discussed, 47 C.F.R. § 64.1200(a) is the implementing regulation for Section 227(b), not Section 227(c).  As the Defendant argues, the 2003 Order was only addressing text messages sent using an automatic telephone dialing system or an artificial or prerecorded message, and, thus, the 2003 Order does not even address the specific provisions of the TCPA and its regulations at issue in this case.

The Plaintiffs cobble together the FCC's 2003 Order and several later FCC Orders (dated 2012, 2015, 2016), which they describe as "unambiguous", together with 47 C.F.R. § 64.1200(e) in an effort to establish that text messages apply under Section 227(c) of the TCPA.  *In re Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 27 FCC Rcd. 1830, 1832 para. 4 (2012); *In re Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961, 8016 para. 107 (2015); *In re Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 31 FCC Rcd. 9074, 9092 para. 40 (2016).  The Plaintiffs' approach is problematic.  First, on its face and as just detailed, the 2003 Order explicitly references only Section 227(b).  Second, the portions of the FCC's later Orders the Plaintiffs discuss refer back to the 2003 Order which cites only Section 227(b) and themselves fail to include citation to Section 227(c).  The 2016 Order merely speaks of "covered text messages" without

9

any reference to Section 227(c).  2016 Order, 31 FCC Rcd. 9074, 9092 para. 40.  Third, 47 C.F.R. § 64.1200(e) incorporates the 2003 Order:

> The rules set forth in paragraph (c) and (d) of this section are applicable to any person or entity making telephone solicitations or telemarketing calls or text messages to wireless telephone numbers *to the extent described in* the Commission's Report and Order, CG Docket No. 02–278, FCC 03–153, "Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991."

47 C.F.R. § 64.1200(e) (emphasis added).  Again, the 2003 Order addressed only Section 227(b).  By limiting Section 64.1200(e)'s application in such a manner, the FCC presents a complicated rather than simplified legal interpretation of "telephone call" for purposes of Section 227(c)(5).

The Court understands the FCC has a level of expertise as to the various forms of communication existing at the time of the TCPA's enactment as well as now.  *See Loper Bright*, 603 U.S. at 402 ("[An agency's] expertise has always been one of the factors which may give an Executive Branch interpretation particular 'power to persuade, if lacking power to control.'") (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)).  While the Court affords a certain amount of respect to the FCC's interpretation of the terms used in the TCPA, the fact remains that Section 227(c)(5) of the TCPA includes "telephone call" and does not mention text messages or SMS messages, and nowhere does the TCPA define "telephone call" to include text and/or SMS messages.  As illustrated above, the FCC's interpretation of call to include text messages is a complicated one, and potentially does not even apply to Section 227(c)(5).

The Plaintiffs' position – that text messages are calls as the latter term is used in the TCPA – is an eminently reasonable one, particularly given the TCPA's purpose and the prevalence of text messaging in the U.S. today.  Nevertheless, "[i]n the business of statutory interpretation, if [an interpretation] is not the best,

10

it is not permissible." *Loper Bright*, 603 U.S. at 400. The "ordinary" principle of statutory interpretation – to start with the text of the statute to ascertain its plain meaning – provides the answer. *See id.* at 392 ("Under the [Administrative Procedure Act], it thus 'remains the responsibility of the court to decide whether the law means what the agency says.'") (quoting *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 109 (2015) (Scalia, J., concurring in judgment)). It is not for a court to legislate by reading into the TCPA something that is not there[5]:

> The better presumption is therefore that Congress expects courts to do their ordinary job of interpreting statutes, with due respect for the views of the Executive Branch. And to the extent that Congress and the Executive Branch may disagree with how the courts have performed that job in a particular case, they are of course always free to act by revising the statute.

*See Loper Bright*, 603 U.S. at 403. It is for Congress to respond to the issues presented in this case and to address the realities of today's technology (and the intrusions caused therefrom) which is commonplace in American life in 2025. The Court confines itself to its assigned role which does not include legislating.

The Court finds that the Plaintiffs have failed to state claims for violations of Section 227(c) of the TCPA, 47 C.F.R. § 64.1200(c), and 47 C.F.R. § 64.1200(d) given that allegedly "violative text messages" stand "at the core of Plaintiffs' factual allegations". Pls.' Resp. (D. 36 at ECF p. 2 n.1). Indeed, the Plaintiffs' reference to receipt of telephone calls in violation of the TCPA are few compared to their reference to text messages and inclusion of text message screenshots; the

---

[5] For these reasons, the Court need not delve into the cases the Plaintiffs discuss as support for their position that text messages are calls within the TCPA. The Court also notes that the cases included in their CAC are not binding on this Court. *See OSF Healthcare Sys. v. Insperity Grp. Health Plan*, 82 F. Supp. 3d 860, 865 (C.D. Ill. 2015) (quoting *U.S. v. Glaser*, 14 F.3d 1213, 1216 (7th Cir. 1994)) (providing that out-of-circuit precedent is not binding, though it is entitled to "respectful consideration[]"). The Plaintiffs' cited cases, *Hand v. Beach Ent. KC, LLC*, 456 F. Supp. 3d 1099 (W.D. Mo. 2020), and *Doohan v. CTB Invs., LLC*, 427 F. Supp. 3d 1034 (W.D. Mo. 2019), do not persuade the Court to find as Plaintiffs argue.

11

crux of the CAC is that their receipt of repetitive text messages prompted them to seek relief pursuant to the TCPA. The Court's finding is fatal to the Plaintiffs' requests for injunctive and declaratory relief, and the Defendant's argument that the Court has no jurisdiction to entertain those requests is therefore moot.

**B**

Because of the Court's finding that the Plaintiffs' TCPA claims must be dismissed, no federal claims remain in this case. Only Count V pursuant to Florida law remains. "A district court has 'supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.'" *West*, 126 F.4th at 575 (quoting 28 U.S.C. § 1367(a)). However, a district court "may decline to exercise supplemental jurisdiction over a claim under subsection (a) [of Section 1367] if . . . the district court has dismissed all claims over which it has original jurisdiction[.]" 28 U.S.C. § 1367(c)(3). The Court declines to exercise supplemental jurisdiction over the Plaintiffs' remaining claim under the FTSA.

**III**

For the reasons set forth, *supra*, Defendant Blackstone Medical Services, LLC's Motion to Dismiss Counts I-IV of the Consolidated Class Action Complaint (D. 32) is GRANTED. The entirety of the Plaintiffs' Consolidated Class Action Complaint (D. 29) is DISMISSED WITHOUT PREJUDICE. If the Plaintiffs choose to file an amended consolidated class action complaint, they must do so within 21 days of the date of this Order.

*It is so ordered.*

Entered on July 21, 2025

s/Jonathan E. Hawley
U.S. DISTRICT JUDGE

12

E-FILED
Monday, 11 August, 2025  06:01:07 PM
Clerk, U.S. District Court, ILCD

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION**

| | |
|---|---|
| Joseph Jones, Seth Steidinger and Natasha Koller, *on behalf of themselves and all others similarly situated*, <br><br> Plaintiffs, <br> v. <br><br> Blackstone Medical Services, LLC <br><br> Defendant. | : <br> : <br> : <br> : <br> : Case No. 24-cv-01074-JEH-RLH <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : |

**PLAINTIFF'S NOTICE OF APPEAL**

Notice is hereby given that Joseph Jones ("Plaintiff Jones"), Seth Steidinger ("Plaintiff Steidinger") and Natasha Koller ("Plaintiff Koller") (collectively, the "Plaintiffs"), on behalf of themselves and all others similarly situated, hereby appeals to the United States Court of Appeals for the Seventh Circuit from this Court's Order Granting Defendant Blackstone Medical Services, LLC's Motion to Dismiss filed on July 21, 2025. (ECF No. 37).

Dated: August 11, 2025

Respectfully submitted,

By      */s/ Abbas Kazerounian*
Abbas Kazerounian, Esq.
ak@kazlg.com
Ryan L. McBride, Esq.
ryan@kazlg.com
KAZEROUNI LAW GROUP, APC
245 Fischer Ave Suite D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

ER 000140

*Lead Interim Class Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that on August 11, 2025, a true and correct copy of the foregoing was filed with the Clerk of the Court through the ECF system which gave notice of such filing to all parties of record.

*/s/ Abbas Kazerounian*
Abbas Kazerounian

2

E-FILED
Wednesday, 20 August, 2025  06:14:30 PM
Clerk, U.S. District Court, ILCD

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**

|  |  |
|---|---|
| Joseph Jones, Seth Steidinger and Natasha Koller, *on behalf of themselves and all others similarly situated*,<br><br>Plaintiffs,<br>v.<br><br>Blackstone Medical Services, LLC<br><br>Defendant. | :<br>:<br>:<br>:<br>: Case No. 24-cv-01074<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

**Joint Request for Entry of Judgment Pursuant to Fed. R. Civ. P. 58(d)**

Plaintiffs Joseph Jones ("Plaintiff Jones"), Seth Steidinger ("Plaintiff Steidinger") and Natasha Koller ("Plaintiff Koller") (the "Plaintiffs"), together with Defendant Blackstone Medical Services, LLC ("Defendant") (collectively, the "Parties"), hereby submit this Request for Entry of Judgment Pursuant to Fed. R. Civ. P. 58(d).

On July 21, 2025, the Court granted Defendant's Motion to Dismiss, "finding that Plaintiffs' TCPA claims must be dismissed" with "no federal claims remain[ing] in this case." (D. 37 at ECF p. 12). Accordingly, the Court "decline[d] to exercise supplemental jurisdiction over Plaintiffs' remaining claim under the FTSA." *Id*. Although the Court dismissed the federal claims, it did so *without prejudice* and provided twenty-one (21) days to file an amended complaint. *Id*. On August 11, 2025, Plaintiffs filed their Notice of Appeal. (D. 38). Pursuant to the Court's Order granting dismissal and the Order[1] of the United States Court of Appeals for the Seventh Circuit,

---

[1] *Steidinger, et al. v. Blackstone Medical Services*, No. 25-2398 (Order, D. 2 ("both appellants and appellee shall file, on or before August 20, 2025, a statement advising the court whether they will request in the district court that judgment be set out in a separate document.")

the Parties request that final judgment be entered such that Plaintiffs' (appellants') appeal may proceed.

To proceed with the appeal, the time to file a notice of appeal depends on whether Rule 58 requires a separate document for entry of judgment. *See Perry v. Sheet Metal Workers' Local No. 73 Pension Fund*, 585 F.3d 358, 361 (7th Cir. 2009). Under Fed. R. Civ. P. 58(d), "[a] party may request that judgment be set out in a separate document as required by Rule 58(a)." Rule 58(a) does not provide an exception to the separate document requirement for Motions to Dismiss. *See* Fed. R. Civ. P. 58(a). As such, "judgment is entered for [Appellate] Rule 4 purposes when the judgment is entered in the civil docket and the earlier of these events occur: the judgment or order is set forth on a separate document, or 150 days have run from entry of the judgment or order…" *Perry*, 585 F.3d at 361. The Seventh Circuit has stated that "if the court has not entered a proper Rule 58 judgment on a separate document, the parties should ask the court to do so." *Id*. at 362.

Here, the Parties request a separate document entering judgment pursuant to Fed. R. Civ. P. 58(d) to move forward with the appeal in a timely manner. When the Court dismissed the federal claims, it effectively foreclosed the gravamen of Plaintiffs' Consolidated Class Action Complaint which centered on alleged text messages received in violation of the Telephone Consumer Protection Act. (D. 37). As such, Plaintiffs agree to treating the Court's Order dismissing the federal claims as a dismissal with prejudice, and the parties jointly request the Court issue a Rule 58 judgment in separate document to resolve any doubts as to appellate jurisdiction.

Based on the foregoing, the Parties request entry of judgment pursuant to Fed. R. Civ. P. 58(d).

Dated: August 20 , 2025                        Respectfully submitted,

2

By     */s/ Abbas Kazerounian*
               Abbas Kazerounian, Esq.
               ak@kazlg.com
               Ryan L. McBride, Esq.
               ryan@kazlg.com
               KAZEROUNI LAW GROUP, APC
               245 Fischer Ave Suite D1
               Costa Mesa, CA 92626
               Telephone: (800) 400-6808
               Facsimile: (800) 520-5523

*Lead Interim Class Counsel*


*/s/ John P. Heil, Jr.*
John P. Heil, Jr.
jheil@heylroyster.com
HEYL ROYSTER VOELKER & ALLEN
300 Hamilton Blvd., St. 200
Peoria, IL 61602
Telephone: (309) 676-0400

*Attorney for Defendant*


## CERTIFICATE OF SERVICE

I hereby certify that on August 20, 2025, a true and correct copy of the foregoing was filed with the Clerk of the Court through the ECF system which gave notice of such filing to all parties of record.

*/s/ Abbas Kazerounian*
Abbas Kazerounian

3

ER 000144

AO 450 (Rev. 11/11)  Judgment in a Civil Action

# UNITED STATES DISTRICT COURT
### for the

Central _____ District of _____ Illinois

| | |
|---|---|
| Seth Steidinger, Natasha Koller | ) |
| *Plaintiff* | ) |
| v. | ) |
| Blackstone Medical Services | ) |
| *Defendant* | ) |

Civil Action No.     24-CV-1074

## JUDGMENT IN A CIVIL ACTION

The court has ordered that *(check one)*:

☐ the plaintiff *(name)* _____ recover from the defendant *(name)* _____ the amount of _____ dollars ($ _____ ), which includes prejudgment interest at the rate of _____ %, plus post judgment interest at the rate of _____ % per annum, along with costs.

☐ the plaintiff recover nothing, the action be dismissed on the merits, and the defendant *(name)* _____ recover costs from the plaintiff *(name)* _____ .

☐ other: _____

_____ .

This action was *(check one)*:

☐ tried by a jury with Judge _____ presiding, and the jury has rendered a verdict.

☐ tried by Judge _____ without a jury and the above decision was reached.

☒ decided by Judge     Jonathan E. Hawley     on a motion for     Entry of Judgment
Pursuant to Fed R. Civ. P. 58(d).  Judgment is entered in favor of the Defendant and against the Plaintiff and the case is closed.

_____ .

Date: _____ 8/21/2025 _____

*CLERK OF COURT*

_____
*Signature of Clerk or Deputy Clerk*

ER 000145

# U.S. District Court
## CENTRAL DISTRICT OF ILLINOIS (Peoria)
## CIVIL DOCKET FOR CASE #: 1:24−cv−01074−JEH−RLH

Steidinger v. Blackstone Medical Services
Assigned to: District Judge Jonathan E Hawley
Referred to: Magistrate Judge Ronald L Hanna
Case in other court:  Seventh Circuit, 25−02398
Cause: 47:227 Restrictions of Use of Telephone Equipment

Date Filed: 02/14/2024
Date Terminated: 08/21/2025
Jury Demand: Plaintiff
Nature of Suit: 485 Telephone Consumer Protection Act (TCPA)
Jurisdiction: Federal Question

**Plaintiff**

**Seth Steidinger**                    represented by   **Kimberly Wochholz**
THE CONSUMER RIGHTS LAW GROUP
P.O. Box 5326
Sun City Center, FL 33571
813−413−5710
Email: kim@consumerrightslawgroup.com
*ATTORNEY TO BE NOTICED*

**Stephen F Taylor**
LEMBERG LAW LLC
43 Danbury Road
Wilton, CT 06897
203−653−2250
Fax: 203−653−3424
Email: staylor@lemberglaw.com
*ATTORNEY TO BE NOTICED*

**Abbas Kazerounian**
KAZEROUNI LAW GROUP, APC
Unit D1
245 Fischer Avenue
Costa Mesa, CA 92626
800−400−6808
Email: ak@kazlg.com
*ATTORNEY TO BE NOTICED*

**Sergei Lemberg**
LEMBERG LAW LLC
43 Danbury Road
Wilton, CT 06897
203−653−2250
Fax: 203−653−3424
Email: slemberg@lemberglaw.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Natasha Koller**                    represented by   **Kimberly Wochholz**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Stephen F Taylor**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Abbas Kazerounian**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sergei Lemberg**

ER 000146

(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Consol Plaintiff**

| | | |
|---|---|---|
| **Joseph Jones** *Individually and on behalf of all others similarly situated* | represented by | **Mohammad Kazerouni** Kazerouni Law Group Apc 245 Fischer Ave Suite D1 Costa Mesa, CA 92626 800–400–6808 Fax: 800–520–5523 *LEAD ATTORNEY* *ATTORNEY TO BE NOTICED* |

**Ryan Lee McBride**
KAZEROUNI LAW GROUP, APC
Suite S#101
2221 Camino Del Rio
San Diego, CA 92108
800–400–6808
Email: ryan@kazlg.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Abbas Kazerounian**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

| | | |
|---|---|---|
| **Blackstone Medical Services** | represented by | **John P Heil , Jr** HEYL ROYSTER VOELKER & ALLEN 300 Hamilton Boulevard PO Box 6199 Peoria, IL 61601–6199 309–676–0400 Fax: 309–676–3374 Email: jheil@heylroyster.com *ATTORNEY TO BE NOTICED* |

**Samuel J Perkins**
HEYL ROYSTER
Suite 200
300 Hamilton Blvd.
Peoria, IL 61602
309–676–0400
Email: sperkins@heylroyster.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 02/14/2024 | 1 | COMPLAINT against Blackstone Medical Services ( Filing fee $ 405 receipt number AILCDC–4406293.), filed by Seth Steidinger. (Attachments: # 1 Civil Cover Sheet, # 2 Exhibit Summons)(Lemberg, Sergei) (Main Document 1 replaced on 2/14/2024) (TK). (Entered: 02/14/2024) |
| 02/14/2024 | 2 | Summons Issued as to Blackstone Medical Services. Copies returned to plaintiff's counsel for service. (BMG) (Entered: 02/14/2024) |

| | | |
|---|---|---|
| 03/19/2024 | 3 | SUMMONS Returned Executed by Seth Steidinger. Blackstone Medical Services served on 3/4/2024, answer due 3/25/2024. (Lemberg, Sergei) (Entered: 03/19/2024) |
| 03/25/2024 | 4 | NOTICE of Appearance of Attorney by John P Heil, Jr on behalf of Blackstone Medical Services (Heil, John) (Entered: 03/25/2024) |
| 03/25/2024 | 5 | MOTION for Extension of Time to File *Responsive Pleading* by Defendant Blackstone Medical Services. Responses due by 4/8/2024 (Heil, John) (Entered: 03/25/2024) |
| 03/26/2024 | | TEXT ORDER granting 5 Motion for Extension of Time to File Responsive Pleading. Defendant Blackstone Medical Services' responsive pleading is due 4/15/2024. Entered by Magistrate Judge Jonathan E. Hawley on 3/26/24. (WG) (Entered: 03/26/2024) |
| 04/05/2024 | 6 | AMENDED COMPLAINT against Blackstone Medical Services, filed by Seth Steidinger, Natasha Koller.(Lemberg, Sergei) (Entered: 04/05/2024) |
| 04/05/2024 | 7 | NOTICE *of Filing* re 6 Amended Complaint (Lemberg, Sergei) (Entered: 04/05/2024) |
| 04/08/2024 | 8 | MOTION for Extension of Time to File *Responsive Pleading* by Defendant Blackstone Medical Services. Responses due by 4/22/2024 (Heil, John) (Entered: 04/08/2024) |
| 04/09/2024 | | TEXT ORDER granting 8 Motion for Extension of Time to File Responsive Pleading. Blackstone Medical Services' responsive pleading due 5/6/2024. Entered by Magistrate Judge Jonathan E. Hawley on 4/9/24. (WG) (Entered: 04/09/2024) |
| 05/03/2024 | 9 | MOTION to Dismiss *Plaintiffs' First Amended Class Action Complaint and to Strike Demand for Attorneys' Fees* by Defendant Blackstone Medical Services. Responses due by 5/17/2024 (Heil, John) (Entered: 05/03/2024) |
| 05/03/2024 | 10 | MEMORANDUM in Support re 9 MOTION to Dismiss *Plaintiffs' First Amended Class Action Complaint and to Strike Demand for Attorneys' Fees* filed by Defendant Blackstone Medical Services. (Heil, John) (Entered: 05/03/2024) |
| 05/14/2024 | 11 | Consent MOTION for Extension of Time to File Response/Reply as to 9 MOTION to Dismiss *Plaintiffs' First Amended Class Action Complaint and to Strike Demand for Attorneys' Fees* by Plaintiffs Natasha Koller, Seth Steidinger. Responses due by 5/28/2024 (Lemberg, Sergei) (Entered: 05/14/2024) |
| 05/15/2024 | | TEXT ORDER granting 11 Motion for Extension of Time to File Response. Plaintiffs' Response is now due on or by 5/24/2024. Entered by Judge Joe Billy McDade on 5/15/2024. (LH) (Entered: 05/15/2024) |
| 05/24/2024 | 12 | MEMORANDUM in Opposition re 9 MOTION to Dismiss *Plaintiffs' First Amended Class Action Complaint and to Strike Demand for Attorneys' Fees* filed by Plaintiffs Natasha Koller, Seth Steidinger. (Lemberg, Sergei) (Entered: 05/24/2024) |
| 06/07/2024 | 13 | MOTION for Leave to File *Reply in Support of Rules 12(b)(6) and 12(f) Motion to Dismiss Plaintiffs' First Amended Class Action Complaint* by Defendant Blackstone Medical Services. Responses due by 6/21/2024 (Attachments: # 1 Exhibit 1)(Heil, John) (Entered: 06/07/2024) |
| 06/26/2024 | 14 | NOTICE of Appearance of Attorney by Kimberly Wochholz on behalf of Natasha Koller, Seth Steidinger (Wochholz, Kimberly) (Entered: 06/26/2024) |
| 11/17/2024 | | TEXT ORDER entered by Chief Judge Sara Darrow on 11/17/2024. Due to Judge Jonathan E. Hawley's confirmation as a District Judge, this case is no longer referred to Judge Jonathan E. Hawley. Any previously scheduled hearings are reset before the presiding judge. (Entered: 11/17/2024) |
| 11/20/2024 | | TEXT ORDER denying Defendant's 13 Motion for Leave to File Reply. Reply briefs, unless explicitly allowed by the Local Rules, are disfavored unless the response "introduced new and unexpected issues," *Shefts v. Petrakis*, No. 10–cv–1104, 2011 WL 5930469, at *8 (C.D. Ill. Nov. 29, 2011), or in the interest of completeness, *Vought v. Bank of Am., N.A.*, No. 10–cv–2052, 2013 WL 3336883, at *2 (C.D. Ill. July 2, 2013). Defendant did not sufficiently address what new and unexpected issues were raised by Plaintiffs or how the Motion otherwise meets the Court's standard. Instead, Defendant states that it wishes to correct several misrepresentations made by Plaintiff, and then rehashes arguments that it made or could have made in the Motion to |

| | | |
|---|---|---|
| | | Dismiss. Thus, the 13 Motion is denied. Entered by Judge Joe Billy McDade on 11/20/2024. (LH) (Entered: 11/20/2024) |
| 12/12/2024 | 15 | ORDER entered by Judge Joe Billy McDade on 12/12/2024. Defendant's Motion to Dismiss 9 is GRANTED in part and DENIED in part. Counts I, II, III, and IV of Plaintiffs' FAC 6 are dismissed without prejudice. Plaintiffs may file an amended pleading within twenty−one (21) days of the date of this Order. Defendant may file an answer within fourteen (14) days of the filing of the amended pleading. See written Order.(BMG) (Entered: 12/12/2024) |
| 12/23/2024 | 16 | MOTION to Consolidate Cases by Defendant Blackstone Medical Services. Responses due by 1/6/2025 (Attachments: # 1 Exhibit Exhibit 1: 11/11/2024 Order)(Heil, John) (Entered: 12/23/2024) |
| 12/31/2024 | 17 | AMENDED COMPLAINT against Blackstone Medical Services, filed by Seth Steidinger, Natasha Koller.(Lemberg, Sergei) (Entered: 12/31/2024) |
| 01/07/2025 | | TEXT ORDER entered by Judge Joe Billy McDade on 1/7/2025. Defendant Blackstone Medical Services, LLC, has filed a motion to consolidate this case with a subsequently filed lawsuit, Jones v. Blackstone Medical Services, LLC, Case No. 24−1456, which was recently transferred to this district from the Middle District of Florida. No plaintiff opposes this consolidation. Under Federal Rule of Civil Procedure 42, the Court may exercise its discretion to consolidate causes involving common questions of law or fact. Keeping in mind the principles of judicial economy and weighing whether any party would be prejudiced by this consolidation, the Court GRANTS the unopposed 16 Motion to consolidate. The Clerk is ORDERED to consolidate this case with Case No. 24−1456. (LH) (Entered: 01/07/2025) |
| 01/13/2025 | 18 | MOTION for Extension of Time to File *Response to the Plaintiffs' Second Amended Class Action Complaint* by Defendant Blackstone Medical Services. Responses due by 1/27/2025 (Heil, John) (Entered: 01/13/2025) |
| 01/17/2025 | | TEXT ORDER granting 18 Motion for Extension of Time filed by Defendant Blackstone Medical Services, LLC. The Court sets the following deadlines. Any motion or joint stipulation for the appointment of Interim Lead Class Counsel pursuant to Fed. R. Civ. P. 23(g)(3) shall be filed within 14 days of the date of this Text Order. Plaintiffs Steidinger, Koller, and Jones shall file a status report within 21 days indicating whether they intend to file a consolidated complaint. If so, the report should suggest a deadline for the filing of a consolidated complaint, and the parties should confer to propose a deadline for Defendant to answer or respond. If Plaintiffs choose not to file a consolidated complaint, Defendant's answer or otherwise responsive filing to the 17 Second Amended Complaint shall be due 14 days after the filing of the status report. Entered by Judge Joe Billy McDade on 1/17/2025. (LH) (Entered: 01/17/2025) |
| 01/29/2025 | 19 | NOTICE of Appearance of Attorney by Abbas Kazerounian on behalf of Joseph Jones (Kazerounian, Abbas) (Entered: 01/29/2025) |
| 01/29/2025 | 20 | MOTION *TO APPOINT INTERIM LEAD CLASS COUNSEL PURSUANT TO FED. R. CIV. P. 23(g)* by Consol Plaintiff Joseph Jones. Responses due by 2/12/2025 (Attachments: # 1 Declaration of Abbas Kazerounian, # 2 Declaration of Ryan L. McBride, # 3 Proposed Order, # 4 Certificate of Service)(McBride, Ryan) (Entered: 01/29/2025) |
| 02/07/2025 | 21 | STATUS REPORT by Seth Steidinger, Natasha Koller. (Lemberg, Sergei) (Entered: 02/07/2025) |
| 02/12/2025 | 22 | MEMORANDUM in Opposition re 20 MOTION *TO APPOINT INTERIM LEAD CLASS COUNSEL PURSUANT TO FED. R. CIV. P. 23(g)* filed by Plaintiffs Seth Steidinger, Natasha Koller. (Attachments: # 1 Declaration of Sergei Lemberg, # 2 Declaration of Scott D. Owens, # 3 Declaration of Kimberly H. Wochholz)(Lemberg, Sergei) (Entered: 02/12/2025) |
| 02/18/2025 | 23 | NOTICE of Appearance of Attorney by Stephen F Taylor on behalf of Seth Steidinger, Natasha Koller (Taylor, Stephen) (Entered: 02/18/2025) |
| 02/18/2025 | 24 | Second MOTION for Extension of Time to File *a Responsive Pleading* by Defendant Blackstone Medical Services. Responses due by 3/4/2025 (Heil, John) (Entered: 02/18/2025) |

| | | |
|---|---|---|
| 02/19/2025 | | TEXT ORDER granting 24 Motion for Extension of Time to File. Defendant's answer or otherwise responsive pleading to the 17 Second Amended Complaint is now due on or before 3/21/2025. The pending 20 Motion and dispute within the 21 Status Report will be ruled on in due course. Entered by Judge Joe Billy McDade on 2/19/2025. (LH) (Entered: 02/19/2025) |
| 02/19/2025 | 25 | MOTION for Leave to File *a Reply to Plaintiffs Seth Steidinger and Natasha Koller's Response In Opposition to Joseph Jones's Motion to Appoint Interim Lead Class Counsel* by Consol Plaintiff Joseph Jones. Responses due by 3/5/2025 (Attachments: # 1 Exhibit A)(McBride, Ryan) (Entered: 02/19/2025) |
| 02/27/2025 | | TEXT ORDER OF REASSIGNMENT entered by Chief Judge Sara Darrow on 2/27/2025. This case and the corresponding hearings are reassigned to District Judge Jonathan E. Hawley for further proceedings. (LN) (Entered: 02/27/2025) |
| 03/05/2025 | 26 | NOTICE *of non−opposition* re 25 MOTION for Leave to File *a Reply to Plaintiffs Seth Steidinger and Natasha Koller's Response In Opposition to Joseph Jones's Motion to Appoint Interim Lead Class Counsel* (Lemberg, Sergei) (Entered: 03/05/2025) |
| 03/06/2025 | | TEXT ORDER granting 25 Plaintiff Joseph Jones's Motion for Leave to File a Reply to Plaintiffs Seth Steidinger and Natasha Koller's Response in Opposition to Joseph Jones's Motion to Appoint Interim Lead Class Counsel. The Clerk is directed to docket the [25−1] Reply attached to the instant Motion. Entered by District Judge Jonathan E Hawley on 3/6/2025. (KZ) (Entered: 03/06/2025) |
| 03/07/2025 | 27 | REPLY to Response to Motion re 20 MOTION *TO APPOINT INTERIM LEAD CLASS COUNSEL PURSUANT TO FED. R. CIV. P. 23(g)* filed by Consol Plaintiff Joseph Jones. (RAH) (Entered: 03/07/2025) |
| 03/20/2025 | | TEXT ORDER: The Defendant's deadline to answer or otherwise plead to the 17 Second Amended Complaint is VACATED pending the Court's ruling on Plaintiff Jones's 20 Motion to Appoint Interim Lead Class Counsel Pursuant to Fed. R. Civ. P. 23(g) and the Plaintiffs' dispute over the filing of a consolidated complaint. Entered by District Judge Jonathan E Hawley on 3/20/2025. (KZ) (Entered: 03/20/2025) |
| 03/25/2025 | 28 | ORDER entered by District Judge Jonathan E Hawley on 3/25/2025. Plaintiff Joseph Jones's Motion to Appoint Interim Lead Class Counsel Pursuant to Fed. R. Civ. P. 23(g) (D. 20 & D. 45) is GRANTED. The Court appoints Abbas Kazerounian and Ryan L. McBride of the Kazerouni Law Group, APC as interim class counsel. The Steidinger Plaintiffs and Plaintiff Jones are directed to file a consolidated complaint within 21 days of the date of this Order. Defendant Blackstone Medical Services, LLC must file its answer or other responsive pleading within 14 days thereafter. See written Order.(BMG) (Entered: 03/25/2025) |
| 04/15/2025 | 29 | AMENDED COMPLAINT against Blackstone Medical Services, filed by Seth Steidinger, Natasha Koller, Joseph Jones.(Kazerounian, Abbas) (Entered: 04/15/2025) |
| 04/22/2025 | 30 | MOTION for Extension of Time to File *a Response to the Plaintiffs' Consolidated Class Action Complaint (Unopposed)* by Defendant Blackstone Medical Services. Responses due by 5/6/2025 (Heil, John) (Entered: 04/22/2025) |
| 04/23/2025 | | TEXT ORDER granting 30 the Defendant's Unopposed Motion for Extension of Time to Respond to the Plaintiffs' Consolidated Class Action Complaint. The Defendant's answer or other responsive pleading is now due by 5/13/2025. Entered by District Judge Jonathan E Hawley on 4/23/2025. (KZ) (Entered: 04/23/2025) |
| 04/24/2025 | | TEXT ORDER entered by Chief Judge Sara Darrow on 4/24/2025. This case is referred to Magistrate Judge Ronald L. Hanna for further proceedings. (Entered: 04/24/2025) |
| 05/13/2025 | 31 | NOTICE of Appearance of Attorney by Samuel J Perkins on behalf of Blackstone Medical Services (Perkins, Samuel) (Entered: 05/13/2025) |
| 05/13/2025 | 32 | MOTION to Dismiss *Counts I−IV of the Consolidated Class Action Complaint* by Defendant Blackstone Medical Services. Responses due by 5/27/2025 (Heil, John) (Entered: 05/13/2025) |

| 05/13/2025 | 33 | MEMORANDUM in Support re 32 MOTION to Dismiss *Counts I–IV of the Consolidated Class Action Complaint* filed by Defendant Blackstone Medical Services. (Heil, John) (Entered: 05/13/2025) |
|---|---|---|
| 05/13/2025 | 34 | MOTION for Extension of Time to File Answer *to Count V of Plaintiffs' Consolidated Class Action Complaint* by Defendant Blackstone Medical Services. Responses due by 5/27/2025 (Heil, John) (Entered: 05/13/2025) |
| 05/27/2025 | 35 | ANSWER to 29 Amended Complaint *Count V* by Blackstone Medical Services.(Heil, John) (Entered: 05/27/2025) |
| 05/27/2025 | 36 | RESPONSE to Motion re 32 MOTION to Dismiss *Counts I–IV of the Consolidated Class Action Complaint* filed by Consol Plaintiff Joseph Jones, Plaintiffs Natasha Koller, Seth Steidinger. (Kazerounian, Abbas) (Entered: 05/27/2025) |
| 05/28/2025 | | TEXT ORDER granting Unopposed 34 Motion for an Extension of Time to Answer Count V. The Court notes that the Answer filed on May 27, 2025, is therefore considered timely filed. Entered by Magistrate Judge Ronald L Hanna on 05/28/2025. (NJR) (Entered: 05/28/2025) |
| 07/21/2025 | 37 | ORDER entered by District Judge Jonathan E Hawley on 7/21/2025. Defendant Blackstone Medical Services, LLC's Motion to Dismiss Counts I–IV of the Consolidated Class Action Complaint 32 is GRANTED. The entirety of the Plaintiffs' Consolidated Class Action Complaint 29 is DISMISSED WITHOUT PREJUDICE. If the Plaintiffs choose to file an amended consolidated class action complaint, they must do so within 21 days of the date of this Order. See written Order.(BMG) (Entered: 07/21/2025) |
| 08/11/2025 | 38 | NOTICE OF APPEAL as to 37 Order on Motion to Dismiss,,,, Set/Reset Deadlines:, by Joseph Jones, Natasha Koller, Seth Steidinger. Filing fee $ 605, receipt number AILCDC–4802431. (Kazerounian, Abbas) (Entered: 08/11/2025) |
| 08/12/2025 | 39 | Short Record of Appeal Sent to US Court of Appeals re 38 Notice of Appeal. (BMG) (Entered: 08/12/2025) |
| 08/13/2025 | 40 | NOTICE of Docketing Record on Appeal from USCA re 38 Notice of Appeal filed by Seth Steidinger, Joseph Jones, Natasha Koller. USCA Case Number 25–2398 (JMB) (Entered: 08/13/2025) |
| 08/20/2025 | 41 | Joint MOTION for Judgment on Partial Findings *Pursuant to Fed. R. Civ. P. 58(d)* by Consol Plaintiff Joseph Jones, Plaintiffs Natasha Koller, Seth Steidinger. Responses due by 9/3/2025 (Kazerounian, Abbas) (Entered: 08/20/2025) |
| 08/21/2025 | | Text Order entered by Judge Hawley on 8/21/2025. The parties' 41 Joint Request for Entry of Judgment Pursuant to Fed. R. Civ. P. 58(d) is GRANTED. The Clerk is directed to enter judgment and close this case.(BMG) (Entered: 08/21/2025) |
| 08/21/2025 | 42 | JUDGMENT entered. (BMG) (Main Document 42 replaced on 8/21/2025) (BMG). (Entered: 08/21/2025) |

**CERTIFICATE OF COMPLIANCE**

Pursuant to 7th Cir. R. 30(d) , I certify that this excerpt of records contains all materials required under 7th Cir. R. 30(b).


Date:  October 21, 2025


/s/ Ryan L. McBride
Ryan L. McBride
*Attorneys for Plaintiffs*