No. 25-2398

_____

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE SEVENTH CIRCUIT

_____

SETH STEIDINGER, et al.,

Plaintiffs / Appellants,

v.

BLACKSTONE MEDICAL SERVICES, LLC

Defendant / Appellee.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
Case No. 1:24-cv-01074-JEH-RLH

---

## BRIEF OF APPELLEE BLACKSTONE MEDICAL SERVICES, LLC

---

John P. Heil, Jr.
Samuel J. Perkins
Heyl Royster Voelker & Allen, P.C.
300 Hamilton Blvd., Suite 200
Peoria, IL 61601-6199
(309)676-0400 telephone
(309)676-3374 facsimile

Lauren V. Purdy
Gunster Yoakley & Stewart, P.A.
1 Independent Drive, Suite 2300
Jacksonville, Florida 32202
(904)354-1980 telephone
(904)354-2170 facsimile

Ryan Childress
Gunster Yoakley & Stewart, P.A.
777 South Flagler Drive, Suite 500 East
West Palm Beach, Florida 33401
(561)655-1980 telephone
(561)655-5677 facsimile

*Counsel for Appellee, Blackstone Medical Services, LLC*

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 25-2398

Short Caption: Seth Steidinger, et al. v. Blackstone Medical Services, LLC

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
 Blackstone Medical Services, LLC

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
 Heyl, Royster, Voelker & Allen, P.C.; Gunster, Yoakley & Stewart, P.A.

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        N/A

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        N/A

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A

Attorney's Signature: /s/ Lauren V. Purdy      Date: December 22, 2025

Attorney's Printed Name: Lauren V. Purdy

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   **Yes** ☐  **No** ☑

Address: 1 Independent Drive, Suite 2300

Jacksonville, Florida 32202

Phone Number: (904)354-1980      Fax Number: (904) 354-2170

E-Mail Address: lpurdy@gunster.com

rev. 12/19 AK

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 25-2398

Short Caption: Seth Steidinger, et al. v. Blackstone Medical Services, LLC

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
Blackstone Medical Services, LLC

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
Heyl, Royster, Voelker & Allen, P.C.; Gunster, Yoakley & Stewart, P.A.

(3)    If the party, amicus or intervenor is a corporation:

i)    Identify all its parent corporations, if any; and

N/A

ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

N/A

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ Ryan C. Childress      Date: December 22, 2025

Attorney's Printed Name: Ryan C. Childress

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   **Yes** ☐  **No** ☑

Address: 777 South Flagler Drive, Suite 500 East

West Palm Beach, FL 33401-6194

Phone Number: (561)655-1980      Fax Number: (561) 655-5677

E-Mail Address: rchildress@gunster.com

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 25-2398

Short Caption: Seth Steidinger, et al. v. Blackstone Medical Services, LLC

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐      **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)       The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
 Blackstone Medical Services, LLC

(2)       The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
 Heyl, Royster, Voelker & Allen, P.C.; Gunster, Yoakley & Stewart, P.A.

(3)       If the party, amicus or intervenor is a corporation:

    i)       Identify all its parent corporations, if any; and

        N/A

    ii)      list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        N/A

(4)       Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    N/A

(5)       Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A

Attorney's Signature: /s/ John P. Heil, Jr.       Date: December 22, 2025

Attorney's Printed Name:  John P. Heil, Jr.

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   **Yes** ☐  **No** ☑

Address:  300 Hamilton Blvd., Suite 200

    Peoria, IL 61601-6199

Phone Number: (309)676-0400       Fax Number:  (309) 676-3374

E-Mail Address: jheil@heylroyster.com

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 25-2398

Short Caption: Seth Steidinger, et al. v. Blackstone Medical Services, LLC

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

    ☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Blackstone Medical Services, LLC

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Heyl, Royster, Voelker & Allen, P.C.; Gunster, Yoakley & Stewart, P.A.

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        N/A

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        N/A

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A

Attorney's Signature: /s/ Samuel J. Perkins      Date: December 22, 2025

Attorney's Printed Name: Samuel J. Perkins

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).     Yes ☐   No ☑

Address: 300 Hamilton Blvd., Suite 200

Peoria, IL 61601-6199

Phone Number: (309)676-0400      Fax Number: (309) 676-3374

E-Mail Address: sperkins@heylroyster.com

rev. 12/19 AK

**TABLE OF CONTENTS**

TABLE OF CITATIONS ............................................................................... iv

STATEMENT OF SUBJECT MATTER AND APPELLATE
JURISDICTION.................................................................................... viii

STATEMENT OF THE ISSUES...................................................................1

INTRODUCTION .........................................................................................2

STATEMENT OF THE CASE AND FACTS ...............................................3

SUMMARY OF ARGUMENT .....................................................................7

ARGUMENT ..............................................................................................10

    I.  STANDARD OF REVIEW.....................................................................10

    II. SECTION 227(C) OF THE TCPA DOES NOT PROVIDE FOR A
       PRIVATE RIGHT OF ACTION FOR TEXT MESSAGES........................11

       A.    The text of section 227(c) and the surrounding provisions of the
            TCPA demonstrate "telephone call" does not include text
            messages ........................................................................................11

            i.     The TCPA must be interpreted based on the ordinary
                 public meaning at the time of enactment in 1991, and
                 "telephone call" could not have meant text message in
                 1991 ....................................................................................12

            ii.    The surrounding provisions of the TCPA and associated
                 federal regulations demonstrate that Congress did not
                 intend to provide for a private right of action for text
                 messages in section 227(c).................................................14

            iii.   In 2018, Congress amended the TCPA to bring text
                 messages within its scope under section 227(e), but it has
                 not amended section 227(c) to include text messages .............16

       B.    This Court is not required to adopt an atextual interpretation of
            "telephone call" under section 227(c)(5) based on the FCC's
            orders and guidance..........................................................................18

i.     Following the Supreme Court's decisions in *Loper Bright* and *McLaughlin Chiropractic,* this Court is not required to follow FCC orders and guidance and ignore the ordinary meaning of "telephone call"......................................................19

ii.    The FCC's orders and implementing regulations on which Appellants principally rely cannot create a private right of action in section 227(c)(5) for text messages .........................24

C.    The public policy goals of the TCPA do not require interpreting section 227(c) in a manner inconsistent with the ordinary meaning of "telephone call"...........................................................28

CONCLUSION ..............................................................................................30

CERTIFICATE OF COMPLIANCE....................................................................32

CERTIFICATE OF SERVICE ..........................................................................33

**TABLE OF CITATIONS**

**Page(s)**

**Federal Cases**

*Alexander v. Sandoval*,
   532 U.S. 275 (2001)..................................................................................26

*Blow v. Bijora, Inc.*,
   191 F. Supp. 3d 780, 786 n.3 (N.D. Ill. 2016), *aff'd on other*
   *grounds*, 855 F.3d 793 (7th Cir. 2017) .................................................13

*Bostock v. Clayton Cnty., Ga.*,
   590 U.S. 644 (2020)..................................................................................12

*Chadbourne & Parke LLP v. Troice*,
   571 U.S. 377 (2014)..................................................................................30

*Christopher v. United States*,
   148 F.4th 885 (7th Cir. 2025) ..................................................................10

*Davis v. CVS Pharmacy, Inc.*,
   797 F. Supp. 3d 1270 (N.D. Fla. 2025) ...................................................14

*Facebook, Inc. v. Duguid*,
   592 U.S. 395 (2021)............................................................................24, 28

*Ins. Mktg. Coal. Ltd. v. Fed. Commc'ns Comm'n*,
   127 F.4th 303 (11th Cir. 2025) ................................................................23

*Kucana v. Holder*,
   558 U.S. 233 (2010)..................................................................................29

*Loper Bright Enters. v. Raimondo*,
   603 U.S. 369 (2024)............................................................................*passim*

*McLaughlin Chiropractic Associates, Inc. v. McKesson Corporation*,
   606 U.S. 146 (2025)............................................................................*passim*

*United States v. Melvin*,
948 F.3d 848 (7th Cir. 2020) ............................................................12

*Our Country Home Enters., Inc. v. Comm'r of Internal Revenue*,
855 F.3d 773 (7th Cir. 2017) ......................................................12, 20

*Pulsifer v. United States*,
601 U.S. 124 (2024) ..........................................................9, 15, 16

*Schneider Nat'l Leasing, Inc. v. United States*,
11 F.4th 548 (7th Cir. 2021) ............................................................12

*Seven County Infrastructure Coal. v. Eagle County*,
605 U.S. 168 (2025)............................................................22

*Stanley v. City of Sanford, Fla.*,
606 U.S. 46 (2025)............................................................18

*Util. Air Reg. Grp. v. EPA*,
573 U.S. 302 (2014)............................................................23

*Wisconsin Cent. Ltd. v. United States*,
585 U.S. 274 (2018)............................................................15

*Wojciechowicz v. Garland*,
77 F.4th 511 (7th Cir. 2023) ............................................................26

**Federal Statutes**

28 U.S.C. § 1367............................................................7

47 U.S.C. § 227............................................................5, 8, 13, 23

47 U.S.C. § 227(c)(5)............................................................*passim*

47 U.S.C. § 227(a) ............................................................6

47 U.S.C. § 227(a)(4)............................................................8, 14

47 U.S.C. § 227(b) ............................................................*passim*

47 U.S.C. § 227(b)(2)............................................................23

47 U.S.C. § 227(e) ...................................................................16, 17, 29

47 U.S.C. § 227(c)(5).....................................................................*passim*

47 U.S.C. § 227(c)(1)..................................................................8, 14, 15

47 U.S.C. § 227(c)(2)...........................................................................22

47 U.S.C. § 227(e)(1).................................................................8, 9, 16

47 U.S.C. § 227(e)(8)......................................................................9, 16

47 U.S.C. § 227 (e)(8)(A), (B), (C) ....................................................17

**State Statutes**

§ 501.059(5), Fla. Stat...........................................................................3

**FCC Orders**

*In re Matter of Rules and Regulations Implementing the Telephone*
   *Consumer Protection Act of 1991,*
   27 FCC Rcd. 1830 (2012)..............................................................27

*In re Matter of Rules and Regulations Implementing the Telephone*
   *Consumer Protection Act of 1991,*
   30 FCC Rcd. 7961 (2015).............................................................27

*In re Matter of Rules and Regulations Implementing the Telephone*
   *Consumer Protection Act of 1991,*
   31 FCC Rcd. 9074 (2016)..............................................................28

*In Re Rules and Regulations Implementing the TCPA of 1991,*
   18 FCC Rcd. 14014 (2003)...................................................21, 24, 25

*In the Matter of Targeting & Eliminating Unlawful Text Messages*
   *Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*
   *Advanced Methods to Target & Eliminate Unlawful Robocalls,*
   38 F.C.C. Rcd. 12247 (2023)...........................................................21

**Regulations**

47 C.F.R. § 64.1200(a)..................................................................................27

47 C.F.R. § 64.1200(a)(9)............................................................................25

47 C.F.R. § 64.1200(c)............................................................................25, 27

47 C.F.R. § 64.1200(d) ...........................................................................25, 27

47 C.F.R. § 64.1200(e)......................................................................25, 26, 27

*Notice of Proposed Rulemaking*, 17 FCC Rcd. 17459 (2002)................................23

**Other Authorities**

Federal Rule of Civil Procedure 58(d)........................................................................7

# STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION

Appellee Blackstone Medical Services, LLC ("Blackstone") agrees that Appellants' jurisdictional statement is complete and correct.

**STATEMENT OF THE ISSUES**

Whether the district court correctly determined that 47 U.S.C. § 227(c)(5)'s plain language authorizing a private right of action for persons who receive certain unwanted "telephone call[s]" does not authorize a private right of action for unwanted text messages.

# INTRODUCTION

The issue in this appeal is straightforward: does the word "telephone call" in 47 U.S.C. § 227(c)(5) of the Telephone Consumer Protection Act ("TCPA") include text messages? The answer is no. A text message is not a "telephone call." The ordinary public meaning of "telephone call" when the TCPA was enacted in 1991 could not have meant text message because no such thing existed. At any rate, no ordinary person would think of a text message as a telephone call.

And when read in context with the neighboring provisions of the TCPA, it is clear Congress did not intend to include text messages within the scope of section 227(c)(5), the provision providing for a private right of action for unwanted "telephone call[s]." While Congress has amended other provisions of the TCPA, even as recently as 2018, to bring text messages within its scope, it has not similarly amended section 227(c)(5).

Finally, the Federal Communications Commission's ("FCC") prior orders and regulations expanding the scope of the statute beyond its textual foundations to include text messages are not entitled to deference following the Supreme Court's decisions in *McLaughlin Chiropractic Associates, Inc. v. McKesson Corporation*, 606 U.S. 146 (2025) and *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 500 (2024). As such, there is no private right of action under the TCPA for receiving unwanted text messages, and this Court should affirm the district court's final order.

<h1 style="text-align:center">STATEMENT OF THE CASE AND FACTS</h1>

On April 15, 2025, following multiple amendments and consolidation of multiple lawsuits, Plaintiffs/Appellants Joseph Jones, Seth Steidinger, and Natasha Koller ("Appellants") filed their five-count, consolidated class action complaint seeking monetary, injunctive and declaratory relief against Blackstone asserting violations of the TCPA and the Florida Telephone Solicitation Act ("FTSA"), § 501.059(5), Fla. Stat. [ER 54].

Blackstone is a Florida-based company that provides at-home sleep tests designed to diagnose sleep apnea pursuant to a doctor's prescription. [ER 95]. Appellants essentially alleged they were consumers who received unwanted text messages from Blackstone to their telephones. [ER 55-56, 62-75]. They claimed that Blackstone continued to send them text messages soliciting home sleep tests although Appellants requested Blackstone to stop texting them. [ER 55-56, 62-75].

Appellants' consolidated class action complaint asserts the following three classes:

> **<u>Internal Do Not Call List Class:</u>** All persons within the United States who, within the time frame(s) relevant to this action, (1) received two or more text messages from Blackstone or anyone acting on Blackstone's behalf, (2) within any 12-month period, (3) for the purpose of selling Blackstone's products and/or services, and (4) including at least one of those text messages being placed more than 30 days after such person requested that Blackstone stop calling and/or texting.

3

**Do Not Call Registry Class:** All persons in the United States who from four years prior to the filing of this action (1) were sent text messages and/or telephone calls by or on behalf of Defendant; (2) more than one time within any 12-month period; (3) where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days; (4) for the purpose of encouraging the purchase or rental of Defendant's products and/or services; and (5) where either (a) Defendant did not obtain prior express written consent to message the person or (b) the called person previously advised Defendant to "STOP" messaging them.

**FTSA Class (Jones and Koller only):** All persons within the State of Florida who, (1) were sent a text message from Blackstone or anyone acting on Blackstone's behalf; (2) for the purpose of soliciting Defendant's goods and/or services, and (2) had previously communicated to Blackstone that they did not wish to receive Defendant's text messages.

[ER 56-57].

On May 13, 2025, Blackstone filed a motion to dismiss as to the TCPA claims (Counts I-IV). [ER 95].[1] Blackstone argued that section 227(c)(5), which provides for a private right of action for "[a] person who has received more than one ***telephone call*** within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under [Section 227(c)]," *id.* § 227(c)(5) (emphasis added), does not authorize a private right of action for unwanted text messages. [ER 95-109].

Blackstone based its argument on not only the ordinary meaning of the term "telephone call" in the statute but also by examining surrounding provisions of the

---

[1] Blackstone answered Count V, which was solely predicated on the Florida state law claim under the FTSA.

TCPA that explicitly regulate text messages, unlike section 227(c). [ER 101-03].

Blackstone also asserted that any reliance on FCC orders or guidance to demonstrate section 227(c)(5) included text messages failed for two reasons. First, the FCC's orders are no longer entitled to *Chevron* deference following the Supreme Court's decision in *Loper Bright*. [ER 104-05]. Second, the FCC's 2003 order, which Appellants cited within their complaint, was directed only to section 227(b) of the TCPA, but not section 227(c). [ER 103-05]. Blackstone also asserted that the various regulations implemented by the FCC pursuant to section 227 did not support the conclusion that section 227(c)(5) provided for a private right of action for text messages. [ER 100-03]. Finally, Blackstone also asserted that Appellants' claims for injunctive and declaratory relief failed as a matter of law. [ER 105-09].

On May 27, 2025, Appellants filed their response to Blackstone's motion to dismiss, asserting Blackstone's statutory arguments "strain[ed] credulity and lack[ed] any substantive merit." [ER 112]. Appellants essentially asserted that the TCPA provides for a private right of action for unwanted text messages because: (1) the FCC's declaratory orders, including most specifically the FCC's 2003 order, have found text messages are "telephone call[s]" and "call[s]" within the meaning of the TCPA and these orders and subsequent federal regulations must provide for a private right of action for unwanted text messages under section 227(c)(5), (2) pre-*Loper Bright* and pre-*McLaughlin Chiropractic* federal court cases that deferred to

the FCC's interpretation of the TCPA have held that section 227(c) and the FCC's associated federal regulations apply to text messages, and (3) public policy demands that text messages apply to section 227(c)(5). [ER 113-21]. Appellants also argued they are entitled to injunctive and declaratory relief. [ER 121-26].

On July 21, 2025, the district court granted Blackstone's motion to dismiss Counts I-IV of the consolidated class action complaint. [ER 128]. Recognizing its obligation post-*McLaughlin Chiropractic* and *Loper Bright* to independently determine whether the FCC's interpretation of the TCPA is correct, the district court agreed with Blackstone that section 227(c)(5) does not apply to text messages. [ER 134]. It noted that "telephone call" is not defined in the statute and would not have included text messages in 1991, given the technology did not exist at that time. [ER 135]. The district court also concluded from its analysis of the surrounding provisions of the TCPA, including section 227(a), that "telephone call" in section 227(c)(5) did not include text messages. [ER 135].

And finally, it rejected Appellants' reliance on the FCC's 2003 order and other subsequent FCC orders. [ER 136-38]. The district court noted that the FCC's 2003 order was addressed to section 227(b) only. [ER 136-37]. And, at any rate, while courts continue to give respect to the FCC's interpretation of the terms used in the TCPA, post-*Loper Bright*, that interpretation is not entitled to deference, particularly

where the "ordinary" principle of statutory interpretation demonstrates "telephone call" does not include text messages under section 227(c)(5). [ER 137-38].

As such, the district court dismissed Counts I-IV without prejudice with leave to amend within 21 days of the order. [ER 139].[2] The district court also declined to exercise supplemental jurisdiction under 28 U.S.C. § 1367 over the remaining Florida state law claim under the FTSA. [ER 139]. Appellants filed their notice of appeal on August 11, 2025. [ER 140].

On August 20, 2025, the parties jointly filed a request for entry of judgment pursuant to Federal Rule of Civil Procedure 58(d). [ER 142]. In the joint request, Appellants acknowledged that the gravamen of their claims "centered on alleged text messages received in violation of the Telephone Consumer Protection Act" and that they agreed to treating the district court's August 11, 2025 order as a dismissal with prejudice. [ER 143]. Judgment was entered on August 21, 2025. [ER 145, 151].

## SUMMARY OF ARGUMENT

The district court correctly determined that section 227(c)(5)'s private right of action for unwanted "telephone call[s]" does not authorize a private right of action for unwanted text messages. Therefore, the district court's well-reasoned decision should be affirmed for four reasons.

---

[2] Presumably, leave to amend was given in the event Appellants wished to amend their complaint to state claims only related to unwanted telephone calls.

First, the ordinary meaning of "telephone call" in 1991 when the TCPA was enacted did not include text messages. Text messages did not exist in 1991, and no person then—or now—would reasonably interpret "telephone call" to mean text message. Section 227(c)(5) has not been amended to add text messages or to define "telephone call" in a manner inconsistent with its plain meaning. Given this Court must interpret statutory terms based on their ordinary public meaning at the time of enactment of the statute, this alone justifies affirmance.

Second, the surrounding text of section 227 supports the conclusion that while other provisions of section 227 explicitly address text messages and text message services, section 227(c)(5)'s private right of action does not. For example, section 227(a)(4) defines the term "telephone solicitation" to mean "initiation of a telephone call or message." *Id.* § 227(a)(4). Section 227(c)(1) similarly directs the FCC to initiate rulemaking "to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." *Id.* § 227(c)(1).

But despite choosing to use "telephone solicitation" in these other provisions of the statute, Congress selected "telephone call" and not "telephone solicitation" in section 227(c)(5). In other words, section 227(c)(5) confers a far narrower remedy for private plaintiffs to recover statutory damages only for "telephone call[s]" made to "residential telephone subscribers."

Similarly, section 227(e)(1) addresses certain telecommunications abuses in

connection with knowingly transmitting misleading or inaccurate Caller ID information "in connection with any voice service or text messaging service." *Id. See also id.* § 227(e)(8) (defining "text message" and "text messaging service"). These terms are not found in section 227(c)(5). And the Court must conclude that these differing terms, or absence of the terms, was intended by Congress. *See Pulsifer v. United States*, 601 U.S. 124, 149 (2024). Again, the textual foundation of section 227(c)(5) provides no basis for Appellants' attempt to assert a private right of action for unwanted text messages.

Third, Appellants' exhaustive reliance on prior FCC orders and FCC implemented regulations is unpersuasive in light of the Supreme Court's recent pronouncements in *Loper Bright* and *McLaughlin Chiropractic*. Simply put: these decisions overturning *Chevron* mean that this Court must interpret federal statutes for itself without deference to the agency's interpretation. Whether the FCC or Appellants believe it would be good public policy or "reasonable" to expand the meaning of "telephone call" to include text messages in section 227(c)(5) is irrelevant to the Court's analysis.

By the same token, Appellants cannot sidestep the plain language of section 227(c)(5) by relying on the FCC's implementing regulations to read a private right of action for text messages into the statute that is not there. Only Congress can create a statutory private right of action—not the FCC. Regardless, the regulations relied

upon by Appellants do not support their argument at any rate. As such, neither the FCC's orders nor its regulations provide a basis for importing a private right of action for unwanted text messages into section 227(c)(5).

Finally, ignoring the lack of statutory bases for their claim, Appellants assert that the public policy goals of the TCPA will be diminished and usurped if consumers cannot bring a private right of action for unwanted text messages. This argument is misguided at best because it ignores that the best evidence of Congress's intentions and public policy goals is the language of the statute itself. Congress could have sound reasons for choosing to authorize a private right of action for consumers in the context of telephone calls but not text messages. Indeed, the plain language of section 227(c)(5) demonstrates that is exactly the judgment Congress has made. That consumers do not have a private right of action for unwanted text messages under section 227(c)(5), however, does not mean the TCPA lacks teeth. The FCC is empowered with the authority to bring enforcement actions for violations of the TCPA. Thus, returning the TCPA to its textual foundations does not undermine Congress's public policy goals; it furthers them.

## ARGUMENT

### I.    STANDARD OF REVIEW

The district court's interpretation of 47 U.S.C. § 227(c)(5) is reviewed *de novo*. *Christopher v. United States*, 148 F.4th 885, 894 (7th Cir. 2025).

## II. SECTION 227(C) OF THE TCPA DOES NOT PROVIDE FOR A PRIVATE RIGHT OF ACTION FOR TEXT MESSAGES

The plain language of section 227(c) is clear: a "telephone call" is not a text message. Therefore, Congress has not provided for a private right of action for unwanted text messages under section 227(c)(5) of the TCPA. This interpretation is supported by the ordinary meaning of "telephone call" at the time of the enactment of the TCPA in 1991, as well as the surrounding provisions of the Act. This Court may affirm on that basis alone.

Tellingly, Appellants hang much of their argument on FCC orders regarding text messages and case law deferring to the agency's interpretation of the TCPA. But that authority is inapposite given the Supreme Court's recent decisions in *Loper Bright* and *McLaughlin Chiropractic* holding that agency decisions are no longer entitled to *Chevron* deference. Whatever "appropriate respect" courts continue to give agency interpretations of statutes, that respect does not extend to atextual interpretations of statutory language that is contrary to its plain meaning. *See Loper Bright*, 603 U.S. at 393. Accordingly, this Court should affirm the judgment of the district court.

### A. The text of section 227(c) and the surrounding provisions of the TCPA demonstrate "telephone call" does not include text messages

The plain and ordinary meaning of "telephone call" when the TCPA was enacted in 1991 demonstrates that section 227(c) does not include text messages.

The surrounding provisions of the TCPA, as well as implementing regulations, support this conclusion as well. *Infra*, II (A)(ii). Finally, the fact that Congress has amended the TCPA to explicitly bring text messages within its scope—but has not amended section 227(c)—further confirms that Congress did not intend to authorize a private right of action for unwanted text messages.

### i. The TCPA must be interpreted based on the ordinary public meaning at the time of enactment in 1991, and "telephone call" could not have meant text message in 1991

The Court must interpret statutes "in accord with the ordinary public meaning of its terms at the time of its enactment." *Bostock v. Clayton Cnty., Ga.*, 590 U.S. 644, 654 (2020). "That is the whole point of having written statutes; every statute's meaning is fixed at the time of enactment." *Loper Bright*, 603 U.S. at 400 (internal quotation marks omitted).

If a statute's "plain meaning is unambiguous, [the] inquiry ends there," *United States v. Melvin*, 948 F.3d 848, 852 (7th Cir. 2020), and the Court enforces "the plain meaning of the language enacted by Congress." *Our Country Home Enters., Inc. v. Comm'r of Internal Revenue*, 855 F.3d 773, 791 (7th Cir. 2017) (internal quotation marks omitted). Absent contrary definitions within the statute itself, the Court should give words and phrases their ordinary dictionary meanings. *See Schneider Nat'l Leasing, Inc. v. United States*, 11 F.4th 548, 559 (7th Cir. 2021).

The TCPA was enacted in 1991. Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394 (1991), codified at 47 U.S.C. § 227. Section 227(c)(5), which is unchanged since enactment, provides in its entirety as follows:

**(5) Private right of action**

A person who has received more than one ***telephone call*** within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may, if otherwise permitted by the laws or rules of court of a State bring in an appropriate court of that State—

(A) an action based on a violation of the regulations prescribed under this subsection to enjoin such violation,

(B) an action to recover for actual monetary loss from such a violation, or to receive up to $500 in damages for each such violation, whichever is greater, or

(C) both such actions.

It shall be an affirmative defense in any action brought under this paragraph that the defendant has established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations prescribed under this subsection. If the court finds that the defendant willfully or knowingly violated the regulations prescribed under this subsection, the court, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.

§ 227(c)(5) (emphasis added).

The term "telephone call" is not defined in the TCPA and could not have meant text message in 1991; the first text message was not sent until December 3, 1992. *See Blow v. Bijora, Inc.*, 191 F. Supp. 3d 780, 786 n.3 (N.D. Ill. 2016), *aff'd*

*on other grounds*, 855 F.3d 793 (7th Cir. 2017) ("The first text message was sent on December 3, 1992."). Thus, Congress in 1991 could not have intended "telephone call" to encompass a non-voice technology that had not yet been created.

Just as importantly, no ordinary person would think of a text message as a "telephone call." As acknowledged by Appellants, [I.B. at 21], another federal court recently explained:

> No normal person refers to a text message, or thinks of a text message, as a "call." No ordinary user of the English language would write the sentence "John called Sue" intending to mean "John sent a text message to Sue," nor would any ordinary reader interpret the sentence in that manner.

*Davis v. CVS Pharmacy, Inc.*, 797 F. Supp. 3d 1270, 1273 (N.D. Fla. 2025).

The ordinary public meaning of "telephone call" in 1991 when the TCPA was enacted is enough alone to justify affirmance of the district court's order.

### ii. The surrounding provisions of the TCPA and associated federal regulations demonstrate that Congress did not intend to provide for a private right of action for text messages in section 227(c)

Contrary to Appellants' contentions, the other provisions of the TCPA confirm that "telephone call" in section 227(c)(5) does not include text messages as well.

For example, section 227(a)(4) defines the term "telephone solicitation" within the entire TCPA to mean "initiation of a ***telephone call or message***." *Id.* § 227(a)(4) (emphasis added). And section 227(c)(1) similarly directs the FCC to

initiate rulemaking "to protect residential telephone subscribers' privacy rights to avoid receiving ***telephone solicitations*** to which they object." *Id.* § 227(c)(1) (emphasis added). These provisions reflect the grant of authority under sections 227(c)(1)-(4) to the FCC to regulate and enforce regulations regarding "telephone solicitations."

But while Congress has defined "telephone solicitation" in this manner, and it has directed the FCC to regulate certain "telephone call[s] or message[s]," the private right of action Congress created under section 227(c)(5) exists only for those who received multiple unwanted "telephone call[s]." *Id.* § 227(c)(5). In other words, section 227(c)(5) confers a narrower remedy for private plaintiffs to recover statutory damages only for "telephone call[s]" made to "residential telephone subscribers." *Id.* § 227(c)(5).

The fact that section 227(c)(5) provides a private right of action only for "telephone call[s]" but not "telephone solicitation[s]," a term that includes a "telephone call or message," demonstrates Congress's intent to not use the term "telephone call" to include all "messages" including "text messages." As the Supreme Court recently reiterated, "[i]n a given statute, the same term usually has the same meaning and different terms usually have different meanings." *Pulsifer*, 601 U.S. at 149 (citing A. Scalia & B. Garner, Reading Law, 170-71 (2012)). *See also Wisconsin Cent. Ltd. v. United States*, 585 U.S. 274, 279 (2018) (holding that

"money remuneration" must mean something different from "all remuneration" when used in "companion statutes"). Congress's use of "telephone call" and not "telephone solicitation" or "telephone call or message" must mean something different.

By the same token, section 227(e)(1) prohibits any person from causing a Caller ID service to knowingly transmit misleading or inaccurate Caller ID information "in connection with any voice service or text messaging service." *Id.* § 227(e)(1). And section 227(e)(8) specifically defines "text message" and "text messaging service," but those terms do not apply to section 227(c)(5). *Id.* § 227(e)(8). Again, the fact that these other provisions of the TCPA explicitly reference text messages or text messaging services, but section 227(c)(5)'s private right of action does not, demonstrates Congress's intention to exclude text messages from section 227(c)(5). *See Pulsifer*, 601 U.S. at 149.

### iii. In 2018, Congress amended the TCPA to bring text messages within its scope under section 227(e), but it has not amended section 227(c) to include text messages

Appellants rightly noted that Congress has amended the TCPA numerous times since 1991, citing four such amendments to the TCPA in support. [I.B. at 17 (citing Pub. L. No. 109-21 (July 9, 2005); Pub. L. No. 111-331 (December 22, 2010); Pub. L. No. 114-74 (November 2, 2015); Pub. L. No. 116-105 (December 30, 2019))]. Appellants assert that these amendments evidence Congress's intent to not

"upset the existing consensus and FCC rulings that text messages constitute calls under the Act" presumably because none of these amendments explicitly provide that text messages are ***not*** included within the terms "telephone call" or "call" in the TCPA, which the FCC has proclaimed since 2003. [I.B. at 17].

But rather than advance Appellants' arguments, the history of the TCPA only underscores Congress's intent to exclude text messages from the private right of action authorization in section 227(c)(5). Appellants' Initial Brief conspicuously omits Congress's 2018 amendment to the TCPA, [I.B. at 17], which brought text messages within the scope of the TCPA—but under a different provision regarding Caller ID requirements. Consolidated Appropriations Act, 2018, H.R. 1625, 115th Cong., Pub. L. No. 115-141, div. P, § 503(a) (2018) (codified at 47 U.S.C. § 227(e)). In doing so, as stated above, Congress explicitly distinguished between "a call made using a voice service" from a "text message sent using a text message service." § 227(e)(8)(A), (B), (C). If Congress intended for "telephone call" to include text messages in section 227(c), the statutory delineation between calls and text messages in section 227(e) would make no sense.

The 2018 amendment did not amend the language in section 227(c)(5). The fact that Congress has only amended the TCPA in section 227(e) to explicitly bring text messages within its scope is persuasive textual evidence of Congress's intent to not include text messages within the authorization for a private right of action in

section 227(c). Again, "[t]hat Congress used different language in these two provisions strongly suggests that it meant for them to work differently." *Stanley v. City of Sanford, Fla.*, 606 U.S. 46, 53 (2025).

Accordingly, the plain language of the TCPA itself demonstrates Congress has not authorized a private right of action under section 227(c)(5) for text messages. This Court should therefore affirm.

**B. This Court is not required to adopt an atextual interpretation of "telephone call" under section 227(c)(5) based on the FCC's orders and guidance**

Without textual support for their interpretation of section 227(c)(5), Appellants spend much of their Initial Brief lobbying this Court to follow the FCC's orders interpreting the TCPA to include text messages within the meaning of "call." [I.B. at 9-15, 28-30]. They also rely heavily on pre-*Loper Bright* and *McLaughlin Chiropractic* cases deferring to the FCC's interpretations for their contention that "Courts have routinely held that text messages apply to the TCPA and specifically to Section 227(c)." [I.B. at 19].

As explained in more detail below, Appellants' argument fails for two reasons. First, this Court is not required to defer to the FCC's atextual interpretations of section 227(c)(5) consistent with the Supreme Court's recent pronouncements overturning *Chevron* deference in *Loper Bright* and *McLaughlin Chiropractic*. Second, and at any rate, the FCC's 2003 order and associated federal regulations on

which Appellants principally rely do not support their contention anyway. As such, the Court should reject these arguments as well.

> **i. Following the Supreme Court's decisions in *Loper Bright* and *McLaughlin Chiropractic,* this Court is not required to follow FCC orders and guidance and ignore the ordinary meaning of "telephone call"**

In 2024, the Supreme Court eliminated *Chevron* deference in its seminal decision, *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024). Federal courts therefore must "decide whether the law means what the agency says." *Id.* at 392. Critically, the Court's construction must be "the reading the court would have reached if no agency were involved." *Id.* at 400 (internal quotation marks and citation omitted).

And just six months ago, the Supreme Court specifically addressed federal courts' deference to the FCC's interpretation of the TCPA in *McLaughlin Chiropractic Associations, Inc. v. McKesson Corp.*, 606 U.S. 146 (2025).[3] Echoing *Loper Bright*, the Supreme Court held that federal courts are not "bound by the FCC's interpretation of the TCPA" and "should interpret the TCPA under ordinary principles of statutory interpretation, affording appropriate respect to the agency's

---

[3] Notably, *McLaughlin Chiropractic* arose from a TCPA class action involving violations of section 227(b). 606 U.S. at 150-51, 155-56. The Supreme Court held that the district court was not required to defer to a 2019 FCC order interpreting the statute. *Id.*

interpretation." *Id.* at 152. *See also Loper Bright*, 603 U.S. at 385 (recognizing "due respect" owed to agency interpretations of federal statutes).

Much of Appellants' argument either ignores or misstates the impact of this binding precedent. Tellingly, Appellants rely almost entirely on pre-*Loper Bright* and *McLaughlin Chiropractic* case law for the premise that federal courts are virtually unanimous in their finding that section 227(c)(5) includes text messages. [I.B. at 19-21]. Of course, before the Supreme Court eliminated *Chevron* deference, federal courts felt bound to follow agency interpretations of federal statutes, whatever their differing views on the correct construction of the text, so long as the interpretation was "reasonable." *See Our Country Home Enters., Inc.*, 855 F.3d at 787 (applying *Chevron* deference and holding that "[s]o long as the IRS's interpretation is reasonable, we must apply it").

The Supreme Court is clear that "appropriate respect" for agency interpretation is not deference. "Appropriate respect" for the FCC's interpretation of the TCPA does not require this Court to accept an interpretation of section 227(c)(5) that conflicts with the ordinary public meaning of clear statutory text. Thus, even assuming the FCC's 2003 order heavily relied upon by Appellants clearly defined "telephone call[s]" as that term is used in section 227(c)(5) to include text messages, (which it did not), "appropriate respect" for that conclusion does not require this Court to change the meaning of the statute in the manner Appellants request.

And at any rate, even "appropriate respect" or "due respect" is less relevant when the agency interpretation comes long after the statute's enactment. As the *Loper Bright* Court recognized, "due respect" is "especially warranted when an Executive Branch interpretation was issued roughly contemporaneously with enactment of the statute and remained consistent over time." 603 U.S. at 386-88, 394. But the FCC's 2003 order—issued 12 years after the statute was enacted—is not contemporaneous with the enactment of the TCPA in 1991. *See In Re Rules and Regulations Implementing the TCPA of 1991*, 18 FCC Rcd. 14014 (2003). And the FCC's extension of the Do Not Call Registry regulations to text messaging did not occur until the FCC's 2023 order, more than 20 years later. *See In the Matter of Targeting & Eliminating Unlawful Text Messages Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991 Advanced Methods to Target & Eliminate Unlawful Robocalls*, 38 F.C.C. Rcd. 12247, 12256-57 (2023). These facts make the FCC's belated pronouncements unhelpful at best.

Appellants also argue that the FCC's orders interpreting the TCPA continue to be subject to an arbitrary and capricious standard of review. [I.B. at 14]. Citing *Seven County Infrastructure Coal. v. Eagle County*, 605 U.S. 168 (2025) in support, Appellants assert that judicial review of the FCC's 2003 order is subject to this deferential standard, regardless of *Loper Bright* and *McLaughlin Chiropractic*, because the FCC was exercising its discretion granted by the TCPA. [I.B. at 13-14].

That contention is incorrect. As the Supreme Court recently stated, while agency actions are reviewed under the APA's arbitrary and capricious standard, the agency's interpretation of statutes is no longer entitled to deference. *McLaughlin Chiropractic*, 606 U.S. at 168 ("The District Court should interpret the statute as courts traditionally do under ordinary principles of statutory interpretation, affording appropriate respect to the agency's interpretation").

At any rate, Appellants do not explain what discretion the FCC was exercising under the TCPA that is entitled to arbitrary and capricious review. [I.B. at 14].[4] Appellants presumably rely on the FCC's (somewhat routine) power to "prescribe regulations to implement" section 227(c) for their contention that the FCC's orders and rulemaking are entitled to an arbitrary and capricious standard of review. *See* § 227(c)(2).

Putting aside that Appellants' position would immediately erode the Supreme Court's recent rejection of *Chevron* deference, Appellants' argument also ignores that the TCPA does not somehow give the FCC discretion to alter the plain language of the TCPA. While the TCPA does provide the FCC with implementing authority, the FCC does not have the authority to define "telephone call" beyond the plain and

---

[4] By contrast, *Seven County Infrastructure* addressed the reason for arbitrary and capricious deference to the agency's action under NEPA based on the uniquely broad delegation of authority provided under the statute and the reality that the agency would be making scientific and sometimes speculative assessments. 605 U.S. at 180-83.

ordinary meaning of that term. As the Eleventh Circuit recently recognized with respect to an atextual argument regarding the meaning of a similar provision in section 227(b)(2):

> [T]o "implement" means "[t]o complete, perform, carry into effect (a contract, agreement, etc.); to fulfil[l] (an engagement or promise)." *Implement*, *Oxford English Dictionary* (2d ed. 1989). It does not mean to "alter." Indeed, "[a]t the level of plain meaning, it seems to us a non sequitur to claim that a[n] [agency] can 'implement' a [statute] by issuing a regulation that is inconsistent with that [statute]." *Solar v. City of Farmington*, 2 F.4th 1285, 1289 (10th Cir. 2021). After all, "[a] generic grant of rulemaking authority to fill gaps ... does not allow the FCC to alter the specific choices Congress made." *Nat'l Ass'n of Broads. v. FCC*, 39 F.4th 817, 820 (D.C. Cir. 2022).

*Ins. Mktg. Coal. Ltd. v. Fed. Commc'ns Comm'n*, 127 F.4th 303, 312 (11th Cir. 2025). That including text messages within section 227(c)(5) might be good public policy does not empower the FCC to create a meaning divorced from the plain text of the statute. *See Util. Air Reg. Grp. v. EPA*, 573 U.S. 302, 325 (2014) ("An agency has no power to 'tailor' legislation to bureaucratic policy goals by rewriting unambiguous statutory terms.").

For more than 20 years, the FCC has expanded the textual scope of the TCPA in the name of accounting for "new technologies" that the statute did not address. *See Notice of Proposed Rulemaking*, 17 FCC Rcd. 17459, ¶ 1 (2002). In the FCC's 2003 order, it declared that the term "call" under the TCPA "encompasses both voice calls and text calls" without relying on any textual support within section 227 itself.

*See In Re Rules and Regulations Implementing the TCPA of 1991*, 18 FCC Rcd. 14014 ¶ 165 (2003).

The Supreme Court has recently spoken regarding atextual attempts to expand the TCPA in the name of accounting for advancements in technology that Congress has chosen not to address itself. Even where the TCPA may be "outdated," courts (like the FCC) "cannot rewrite the TCPA to update it for modern technology." *Facebook, Inc. v. Duguid*, 592 U.S. 395, 397 (2021). Congress did not—and could not have—intended section 227(c)(5) to include text messages in 1991, no subsequent amendments have added text messages to the scope of section 227(c)(5), and neither the FCC nor the federal courts may add language to the statute that is not there. *See supra*, II (A)(iii).

### ii. The FCC's orders and implementing regulations on which Appellants principally rely cannot create a private right of action in section 227(c)(5) for text messages

Even considering the language of the FCC's 2003 order and various FCC regulations on which Appellants rely, Appellants' argument that section 227(c) includes text messages fails as a matter of law.

The FCC's 2003 order, which purported to interpret the TCPA to include "text calls" and SMS calls, stated as follows:

> We affirm that under the TCPA, it is unlawful to make any call using an automatic telephone dialing system or an artificial or prerecorded message to any wireless telephone number. Both the statute and our rules[] prohibit these calls, with limited exceptions, "to any telephone

24

number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other common carrier service, or any service for which the called party is charged."[] This encompasses both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls, provided the call is made to a telephone number assigned to such service.

18 FCC Rcd. 14014, 14116 ¶ 165 (2003) (emphasis in original). The FCC subsequently incorporated the 2003 order by reference when it implemented 47 C.F.R. § 64.1200(e) to regulate "telephone solicitations or telemarketing calls or text messages . . . to the extent described in" the 2003 order:

> The rules set forth in paragraph (c) and (d) of this section are applicable to any person or entity making telephone solicitations or telemarketing calls or text messages to wireless telephone numbers **to the extent described in** the Commission's Report and Order, CG Docket No. 02–278, FCC 03–153, "Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991."

47 C.F.R. § 64.1200(e) (emphasis added).

Appellants argue that because section 64.1200(e) states that the rules set forth in "paragraph (c) and (d) of this section[5] are applicable to any person or entity making telephone solicitations or telemarketing calls or text messages to wireless

---

[5] Notably, 47 C.F.R. §§ 64.1200(c) and (d), the implementing regulations for section 227(c), do not include the phrases "text message" or "SMS message" but only the terms "telephone call," "artificial or prerecorded-voice telephone call," and "call." By contrast, 47 C.F.R. § 64.1200(a)(9), which implements section 227(b), defines "call" for the purposes of *that subsection only* to include "a text message, including a short message service (SMS) call." *Id.* § 64.1200(a)(9). This difference in terminology and Congress's failure to include similar language in section 227(c) also undermines Appellants' argument that text messages are included within the private right of action for "telephone call" provided in section 227(c).

telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, 'Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991'", that text messages are actionable under section 227(c) and its implementing regulations. [I.B. at 27, 29].

Appellants' reliance on 47 C.F.R. § 64.1200(e) and FCC orders is misplaced and should be rejected on multiple grounds. [I.B. at 27]. Most fundamentally, Appellants cannot rely on an FCC regulation to create a private right of action under section 227(c)(5). A "private right[] of action to enforce federal law must be created by Congress"—not an agency. *Alexander v. Sandoval*, 532 U.S. 275, 286, 291 (2001). Stated differently, a federal regulation cannot "conjure up a private cause of action that has not been authorized by Congress." *Id.* at 291. This well-settled principle forecloses Appellants' reliance on FCC rulemaking to expand the private right of action under section 227(c)(5) beyond the text of the statute.

Regardless, agency regulations are not entitled to any deference, and do not control when the regulations introduce ambiguity that conflicts with the plain language of the statute and legislative intent. *See, e.g.*, *Wojciechowicz v. Garland*, 77 F.4th 511, 518 (7th Cir. 2023) ("[W]here agency regulations conflict with statutory text, statutory text wins out every time."). We have that here. While section 227(c)(5) explicitly applies only to "telephone call[s]," and a "telephone call" is not

a "text message," the FCC's implementing regulations are not subject to deference by a reviewing court.

Additionally, Appellants' argument ignores that section 64.1200(e) incorporates the 2003 order and purports to regulate "telephone solicitations or telemarketing calls or text messages" only "to the extent described in" the 2003 order. § 64.1200(e). While paragraph 165 of the 2003 order incorporated by reference into section 64.1200(e) indicates that, under some circumstances, "calls" include "text messages," those circumstances are not present here. The 2003 Order was only addressing text messages sent using "an automatic telephone dialing system or an artificial or prerecorded message" — a practice prohibited by section 227(b), but not section 227(c). *Id.* ¶ 165. In fact, the footnotes to paragraph 165 of the 2003 Order cites only to section 227(b) and section 64.1200(a) — not section 227(c) or sections 64.1200(c) or (d). *Id.* Thus, the 2003 Order does not support the implication that text messages are regulated by section 227(c) or its associated regulations in sections 64.1200(c), (d).

By extension, subsequent FCC orders refer back to the 2003 order, which cite only section 227(b) and themselves do not reference section 227(c). *In re Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 27 FCC Rcd. 1830, 1832 ¶ 4 (2012); *In re Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961,

8016 ¶ 107 (2015); *In re Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 31 FCC Rcd. 9074, 9092 ¶ 40 (2016). So, subsequent FCC orders are at best unclear and provide no support for Appellants' argument, either.

Accordingly, Appellants' attempt to ignore the sea change created by *Loper Bright* and *McLaughlin Chiropractic* and graft FCC regulations onto the plain language of section 227(c)(5) fails as a matter of law and should be rejected.

**C.    The public policy goals of the TCPA do not require interpreting section 227(c) in a manner inconsistent with the ordinary meaning of "telephone call"**

Finally, Appellants argue that public policy goals demand inclusion of text messages within the meaning of section 227(c) because it would be "disastrous" to do otherwise and would create regulatory loopholes that defeat Congress's intent to protect consumers' privacy from emerging telecommunications abuses. [I.B. at 6, 25-26]. Appellants assert text messaging is often more intrusive than voice calls and that without liability under section 227(c)(5) for unwanted texts, bad actors would be incentivized to flood consumers' phones with text messages while consumers will have lost meaningful recourse. [I.B. at 25-26].

Appellants' assertion should be rejected. First, the Supreme Court in *Duguid*, 592 U.S. at 409, declined to accept Appellants' view that the TCPA is an "agile tool" that can be interpreted in a manner inconsistent with its text simply to further the

public policy goals of the statute. It is undisputed that "telephone call" in 1991 could not have included text messages. Neither the FCC nor this Court may interpret the plain language of a clear statute in a manner inconsistent with the language in the name of regulatory "agility."

The premise of Appellants' public policy argument itself is also suspect. Congress could have reasonably concluded that unwanted telephone calls are more intrusive than unwanted text messages, and it could have provided for broader statutory protections for unwanted telephone calls as a result. The Court should not look beyond the plain and clear language in the statute to divine Congress's purpose and intent. "[T]he textual limitations upon a law's scope are no less a part of its 'purpose' than its substantive authorizations." *Kucana v. Holder*, 558 U.S. 233, 252 (2010) (internal quotation marks omitted).

Finally, the FCC is authorized to bring enforcement actions against violators of the TCPA, regardless of whether Appellants have a private right of action for unwanted text messages under section 227(c)(5). *See, e.g.*, §§ 227(b), 227(e). The concept that without a private right of action for unwanted text messages in section 227(c)(5), consumers will be bombarded with unlawful text communications is speculative and at any rate ignores the unambiguous text that defines the private right of action provided by Congress. Indeed, the Supreme Court has recognized that "the scope of the private right of action is more limited than the scope of the statutes

upon which it is based." *Chadbourne & Parke LLP v. Troice*, 571 U.S. 377, 382 (2014). There is nothing inconsistent with Congress's intent or public policy to hold, in accordance with the plain language of section 227(c)(5), that there is no private right of action for text messages under the TCPA. In fact, returning the TCPA to its textual foundations does not undermine Congress's public policy goals; it furthers them.

## CONCLUSION

For the foregoing reasons, this Court should affirm the well-reasoned judgment of the district court and hold that the TCPA does not provide for a private right of action under 47 U.S.C. § 227(c)(5) for unwanted text messages.

Respectfully submitted,

Gunster, Yoakley & Stewart, P.A.

By: */s/ Lauren V. Purdy*
    Lauren V. Purdy
    Florida Bar No. 93943
    lpurdy@gunster.com
    awinsor@gunster.com
    1 Independent Drive, Suite 2300
    Jacksonville, Florida 32202
    Tel: (904) 354-1980
    Fax: (904) 354-2170

    Ryan Childress
    Florida Bar No. 1049623
    rchildress@gunster.com
    mmargolese@gunster.com
    777 South Flager Drive, Suite 500 East
    West Palm Beach, Florida 33401
    Tel: (561)655-1980

Fax: (561)655-5677

Heyl Royster Voelker & Allen, P.C.
John P. Heil, Jr.
Samuel J. Perkins
jheil@heylroyster.com
sperkins@heylroyster.com
300 Hamilton Blvd., Suite 200
Peoria, IL 61602
Tel: (309) 676-0400
Fax: (309) 676-3374

*Counsel for Defendant-Appellee, Blackstone Medical Services, LLC*

31

# CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g)(1), I certify that this brief complies with the type-volume limit of Fed R. App. P. 32(a)(7)(B) and 7th Cir. R. 32(c) because the Introduction, Jurisdictional Statement, Issues Presented, Statement of the Case and Facts, Summary of the Argument, Argument and Conclusion sections (including their headers) of the brief contains 6,962 words.

The brief complies with the type face requirements of Fed. R. App. P. 32(a)(5) and 7th Cir. R. 32(b) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Time New Roman.

*/s/ Lauren V. Purdy*
Lauren V. Purdy

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 22, 2025, I electronically filed the foregoing with the Clerk of Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I also certify that the foregoing document is being served on all counsel of record in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to electronically receive Notices of Electronic Filing.

*/s/ Lauren V. Purdy*
Lauren V. Purdy

No. 25-2398

_____

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE SEVENTH CIRCUIT

_____

SETH STEIDINGER, et al.,

Plaintiffs / Appellants,

v.

BLACKSTONE MEDICAL SERVICES, LLC

Defendant / Appellee.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
Case No. 1:24-cv-01074-JEH-RLH

---

## SUPPLEMENTAL APPENDIX

---

John P. Heil, Jr.
Samuel J. Perkins
Heyl Royster Voelker & Allen, P.C.
300 Hamilton Blvd., Suite 200
Peoria, IL 61601-6199
(309)676-0400 telephone
(309)676-3374 facsimile

Lauren V. Purdy
Gunster Yoakley & Stewart, P.A.
    1 Independent Drive, Suite 2300
Jacksonville, Florida 32202
(904)354-1980 telephone
(904)354-2170 facsimile

Ryan Childress
Gunster Yoakley & Stewart, P.A.
777 South Flagler Drive, Suite 500 East
West Palm Beach, Florida 33401
(561)655-1980 telephone
(561)655-5677 facsimile

*Counsel for Appellee, Blackstone Medical Services, LLC*

# TABLE OF CONTENTS

**Page**

Judgment in a Civil Action
Docket No. 42 (filed August 21, 2025) ...................................................................3

E-FILED
Thursday, 21 August, 2025  01:04:44 PM
Clerk, U.S. District Court, ILCD

AO 450 (Rev. 11/11)   Judgment in a Civil Action

# UNITED STATES DISTRICT COURT
### for the

Central  District of  Illinois

| | |
|---|---|
| Seth Steidinger, Natasha Koller | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No.  24-CV-1074 |
| Blackstone Medical Services | ) |
| *Defendant* | ) |

## JUDGMENT IN A CIVIL ACTION

The court has ordered that *(check one)*:

☐  the plaintiff *(name)* _____ recover from the defendant *(name)* _____ the amount of _____ dollars ($ _____ ), which includes prejudgment interest at the rate of _____ %, plus post judgment interest at the rate of _____ % per annum, along with costs.

☐  the plaintiff recover nothing, the action be dismissed on the merits, and the defendant *(name)* _____ recover costs from the plaintiff *(name)* _____ _____ .

☐  other: _____
_____
_____ .

This action was *(check one)*:

☐  tried by a jury with Judge _____ presiding, and the jury has rendered a verdict.

☐  tried by Judge _____ without a jury and the above decision was reached.

☒  decided by Judge     Jonathan E. Hawley     on a motion for   Entry of Judgment
Pursuant to Fed R. Civ. P. 58(d).  Judgment is entered in favor of the Defendant and against the Plaintiff and the case is closed.
.

Date:     8/21/2025

*CLERK OF COURT*

*Signature of Clerk or Deputy Clerk*

3