No. 25-2398

# IN THE UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

SETH STEIDINGER et al.,

*Plaintiffs-Appellants*,

v.

BLACKSTONE MEDICAL SERVICES, LLC,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the Central District of Illinois
Case No. 1:24-cv-01074 (The Honorable Jonathan E. Hawley)

## BRIEF OF THE NRSC AND THE NRCC AS *AMICI CURIAE* IN SUPPORT OF APPELLEES AND AFFIRMANCE

Michael E. Toner
Brandis L. Zehr
Jeremy J. Broggi
**WILEY REIN LLP**
2050 M Street NW
Washington, DC  20036
Phone: (202) 719-7000
Fax: (202) 719-7049
mtoner@wiley.law
bzehr@wiley.law
jbroggi@wiley.law

December 29, 2025          *Counsel for the NRSC and the NRCC*

# APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 25-2398

Short Caption: Seth Steidinger et al. v. Blackstone Medical Services, LLC

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

   The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

  National Republican Congressional Committee and National Republican Senatorial Committee

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

  Wiley Rein LLP

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

      See attached ("Responses to Question 3").

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

      See attached ("Responses to Question 3").

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

  N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

  N/A

Attorney's Signature: /s/ Jeremy J. Broggi     Date: 12/29/2025

Attorney's Printed Name:  Jeremy J. Broggi

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   **Yes** ☑  **No** ☐

Address:  2050 M Street, NW, Washington, D.C. 20036

Phone Number: (202) 719-7000     Fax Number:  (202) 719-7049

E-Mail Address: jbroggi@wiley.law

# APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 25-2398

Short Caption: Seth Steidinger et al. v. Blackstone Medical Services, LLC

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐      **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

   National Republican Congressional Committee and National Republican Senatorial Committee

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

   Wiley Rein LLP

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

      See attached ("Responses to Question 3").

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

      See attached ("Responses to Question 3").

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

   N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

   N/A

Attorney's Signature: /s/ Michael E. Toner      Date: 12/29/2025

Attorney's Printed Name: Michael E. Toner

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   **Yes** ☐   **No** ☑

Address: 2050 M Street, NW, Washington, D.C. 20036

Phone Number: (202) 719-7000      Fax Number: (202) 719-7049

E-Mail Address: mtoner@wiley.law

# APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 25-2398

Short Caption: Seth Steidinger et al. v. Blackstone Medical Services, LLC

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

   The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[ ]   **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)   The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

   National Republican Congressional Committee and National Republican Senatorial Committee

(2)   The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

   Wiley Rein LLP

(3)   If the party, amicus or intervenor is a corporation:

   i)   Identify all its parent corporations, if any; and

      See attached ("Responses to Question 3").

   ii)   list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

      See attached ("Responses to Question 3").

(4)   Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

   N/A

(5)   Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

   N/A

---

Attorney's Signature: /s/ Brandis L. Zehr   Date: 12/29/2025

Attorney's Printed Name: Brandis L. Zehr

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).  **Yes** [ ]  **No** [✓]

Address: 2050 M Street, NW, Washington, D.C. 20036

Phone Number: (202) 719-7000   Fax Number: (202) 719-7049

E-Mail Address: bzehr@wiley.law

rev. 12/19 AK

# RESPONSES TO QUESTION 3

The NRSC has no parent corporation, and no publicly held corporation has a ten percent or greater ownership interest in it.

The NRCC has no parent corporation, and no publicly held corporation has a ten percent or greater ownership interest in it.

# TABLE OF CONTENTS

CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

TABLE OF AUTHORITIES ................................................................vi

GLOSSARY ....................................................................................xi

INTEREST OF *AMICI CURIAE* ...................................................1

ARGUMENT ....................................................................................3

I.    The Court Should Affirm Because Text Messages Are Not "Telephone Calls" ...................................................................3

    A.   The TCPA Excludes Text Messages .......................................3

    B.   The FCC's Contrary Interpretation Fails .............................6

II.   The Court May Affirm On Alternative Grounds Because Cellular Telephones Are Not "Residential Telephones" ..............13

III. At Minimum, The Court Should Recognize The TCPA Does Not Regulate Political Organizations' Text Messages .................19

CONCLUSION .................................................................................25

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abboud v. Circle K Stores Inc.*,
No. 23-cv-01683, 2025 U.S. Dist. LEXIS 13605 (D. Ariz.
Jan. 27, 2025) ........................................................................10

*ACA International v. FCC*,
885 F.3d 687 (D.C. Cir. 2018) ..............................................17

*Ambassador Animal Hospital, Ltd. v. Elanco Animal Health
Inc.*,
74 F.4th 829 (7th Cir. 2023) ..........................................6, 16

*Astellas US Holding, Inc. v. Federal Insurance Co.*,
66 F.4th 1055 (7th Cir. 2023) ................................................4

*Barr v. American Association of Political Consultants, Inc.*,
591 U.S. 610 (2020) ...............................................................15

*Blow v. Bijora, Inc.*,
855 F.3d 793 (7th Cir. 2017) ..................................................9

*Bondi v. VanDerStok*,
604 U.S. 458 (2025) .................................................................4

*Chennette v. Porch.com, Inc.*,
50 F.4th 1217 (9th Cir. 2022) ........................................14, 15

*City of Arlington v. FCC*,
569 U.S. 290 (2013) ...............................................................12

*Corner Post, Inc. v. Board of Governors of Federal Reserve
System*,
603 U.S. 799 (2024) ...............................................................11

*Douglas v. The Western Union Co.*,
955 F.3d 662 (7th Cir. 2020) ..................................................9

*Facebook, Inc. v. Duguid*,
  592 U.S. 395 (2021) ............................................... 7, 8, 9, 18

*FEC v. Cruz*,
  596 U.S. 289 (2022) ...................................................... 23

*FRAC v. Garland*,
  112 F.4th 507 (8th Cir. 2024) ........................................ 7

*Groff v. DeJoy*,
  600 U.S. 447 (2023) ......................................................... 3

*Henson v. Santander Consumer USA Inc.*,
  582 U.S. 79 (2017) ......................................................... 18

*Kennedy v. Bremerton School District*,
  597 U.S. 507 (2022) ...................................................... 21

*Knight v. IRS*,
  552 U.S. 181 (2008) .......................................................... 6

*Loper Bright Enterprises v. Raimondo*,
  603 U.S. 369 (2024) ............................... 2, 8, 10, 11, 12, 13

*McIntyre v. Ohio Elections Commission*,
  514 U.S. 334 (1995) ...................................................... 23

*McLaughlin Chiropractic Associates, Inc. v. McKesson Corp.*,
  606 U.S. 146 (2025) ............................... 2, 11, 12, 13, 18

*Morris v. Lincare, Inc.*,
  No. 8:22-cv-2048, 2023 WL 5336780 (M.D. Fla. Aug. 18,
  2023) ............................................................................. 15

*Mujahid v. Newity, LLC*,
  No. 25-cv-8012, 2025 WL 3140725 (N.D. Ill. Nov. 10, 2025) ............... 5

*Niz-Chavez v. Garland*,
  593 U.S. 155 (2021) ...................................................... 18

*Patriotic Veterans, Inc. v. Zoeller*,
  845 F.3d 303 (7th Cir. 2017) ........................................ 22

*Satterfield v. Simon & Schuster, Inc.*,
  569 F.3d 946 (9th Cir. 2009)...................................................................10

*Schindler Elevator Corp. v. U.S. ex rel. Kirk*,
  563 U.S. 401 (2011) ................................................................................4

*SEC v. Bauer*,
  723 F.3d 758 (7th Cir. 2013)..................................................................13

*Seven County Infrastructure Coalition v. Eagle County, Colorado*,
  605 U.S. 168 (2025)................................................................................12

*Sutherland v. Save America PAC*,
  No. 1:22-cv-303, 2023 WL 9785040 (N.D. Fla. May 25, 2023) ................................................................................................20

*Turizo v. Subway Franchisee Advertising Fund Trust Ltd.*,
  603 F. Supp. 3d 1334 (S.D. Fla. 2022)..................................................16

*United States v. American Railway Express Co.*,
  265 U.S. 425 (1924)................................................................................13

*United States v. Ford*,
  106 F.4th 607 (7th Cir. 2024) ..................................................................9

*United States v. Sineneng-Smith*,
  590 U.S. 371 (2020) ..................................................................................8

*United States v. Turkette*,
  452 U.S. 576 (1981) ................................................................................17

*Utility Air Regulatory Group v. EPA*,
  573 U.S. 302 (2014) ................................................................................18

*Warciak v. Subway Restaurants, Inc.*,
  949 F.3d 354 (7th Cir. 2020)....................................................................9

*Ward v. Rock Against Racism*,
  491 U.S. 781 (1989) ................................................................................22

*West Virginia University Hospitals, Inc. v. Casey*,
  499 U.S. 83 (1991) ............................................................... 18

*Wilson v. Skopos Financial, LLC*,
  No. 6:25-cv-00376, 2025 U.S. Dist. LEXIS 138638 (D. Or.
  July 21, 2025) ..................................................................... 10

**Statutes and Legislative Materials**

26 U.S.C. § 527 ...................................................................... 20

47 U.S.C. § 227 ...................................................... 5, 14, 15, 17, 19, 20, 22

Ray Baum's Act of 2018, Pub. L. No. 115-141, Div. P, Tit. V,
  132 Stat. 348 (2018) ............................................................. 5

Telephone Consumer Protection Act of 1991, Pub. L. No.
  102-243, 105 Stat. 2394 (1991) ............................................. 17, 21, 22

H.R. Rep. No. 102-317 (1991) ................................................. 21, 23

**FCC Orders**

*In re Rules & Regulations Implementing the Controlling the
  Assault of Non-Solicited Pornography & Marketing Act of
  2003*,
  19 FCC Rcd. 15927 (2004) .................................................... 7

*In re Rules & Regulations Implementing the Telephone
  Consumer Protection Act of 1991*,
  18 FCC Rcd. 14014 (2003) .................................................... 7, 16, 17

*In re Targeting & Eliminating Unlawful Text Messages*,
  38 FCC Rcd. 12247 (2023) .................................................... 6

**Other Authorities**

Alex Ford, *Billions of political text messages were sent last
  year*, NBC News (Jan. 26, 2023),
  https://tinyurl.com/57e7vbbh ................................................ 23

Max Greenwood, *Democrats Reckon With Digital Fundraising Tactics Ahead of 2026*, Campaigns & Elections (Oct. 24, 2025), https://tinyurl.com/hf8fwja7 ...................... 23

Sareen Habeshian, *Why political campaigns won't stop texting you*, Axios (Feb. 22, 2024), https://tinyurl.com/mrpbt79c ........................................... 24

Zoe Kleinman, '*Merry Christmas': 30 Years of the Text Message*, BBC (Dec. 2, 2022), https://tinyurl.com/bp59j6ut ................ 4

*Merriam Webster's Collegiate Dictionary* (10th ed. 1994) .................. 4, 14

National Public Radio, KQED Forum, *Inside the Democrats' Campaign Spam Machine* (Aug. 20, 2025), https://tinyurl.com/yh4akvef ............................................. 1

NRCC, *Opt-in now to receive important updates from the NRCC!*, https://tinyurl.com/5n88s99d; ................................................. 1

Jessica Piper, *An Algorithm to Stop Democratic Donors From Wasting Their Money*, Politico Magazine (Feb. 6, 2024), https://tinyurl.com/28ztrnam ............................................ 24

Eric Troutman, *Law Firm Appears to Have Declared TCPA War on the GOP*, TCPA World (Mar. 16, 2021), https://tinyurl.com/y729xs75 ...................................... 2, 20

*Webster's Third New International Dictionary* (2002) ............................ 5

# GLOSSARY

FCC          Federal Communications Commission

TCPA        Telephone Consumer Protection Act

The **NRCC** (the National Republican Congressional Committee) is the principal national political party committee devoted to electing Republicans to the U.S. House of Representatives. The NRCC's membership includes all Republican Members of the House.

The **NRSC** (the National Republican Senatorial Committee) is the principal national political party committee focused on electing Republicans to the U.S. Senate. The NRSC's membership includes all Republican Members of the Senate.

Republican and Democratic political party committees regularly use text messages to communicate with supporters and potential supporters. *See, e.g.*, NRCC, *Opt-in now to receive important updates from the NRCC!*, https://tinyurl.com/5n88s99d; National Public Radio, KQED Forum, *Inside the Democrats' Campaign Spam Machine* (Aug. 20, 2025), https://tinyurl.com/yh4akvef. Although the Telephone Consumer Protection Act does not purport to regulate text messages (only

---

[1] No counsel for a party authored this brief in whole or in part, and no person or entity other than *amici* and their counsel made a monetary contribution intended to fund the preparation or submission of this brief. All parties consent to the filing of this brief. *See* Fed. R. App. P. 29(a)(2).

"telephone calls"), political organizations, including national political party committees, increasingly are targeted with abusive TCPA litigation over the text messages they send. Often these suits are organized and funded by political or ideological opponents who seemingly are as eager to silence speech with which they disagree as they are to try and obtain a financial payout. *See, e.g.*, Eric Troutman, *Law Firm Appears to Have Declared TCPA War on the GOP*, TCPA World (Mar. 16, 2021), https://tinyurl.com/y729xs75.

The NRCC and the NRSC have a strong interest in reestablishing the correct interpretation of the TCPA. Since 2003, the Federal Communications Commission has unlawfully expanded statutory liability beyond the clear textual limits set by Congress, wrongly allowing political organizations (including Republican and Democratic political party committees) to face costly private litigation over text messages the statute does not purport to regulate. The Supreme Court has squarely held that the FCC's statutory interpretations can never bind an Article III court—neither in general nor in TCPA litigation specifically. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024); *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146 (2025).

Interpreting the plain meaning of the TCPA for itself, the district court below rightly held that text messages are not "telephone calls" and thus cannot give rise to liability under 47 U.S.C. § 227(c).

Because the district court's statutory interpretation is correct, this Court should affirm. The Court may also affirm on any alternative ground supported by the record, including because this case involves cellular telephones and not a "residential telephone" as is required by subsection 227(c). At a minimum, the Court should make clear that liability cannot attach under subsection 227(c) to text messages sent by political organizations because the TCPA exempts such messages from its definition of "telephone solicitations."

## ARGUMENT

### I. The Court Should Affirm Because Text Messages Are Not "Telephone Calls"

#### A. The TCPA Excludes Text Messages

The Supreme Court has "stressed over and over again in recent years" that "statutory interpretation" must "heed … what a statute actually says." *Groff v. DeJoy*, 600 U.S. 447, 468 (2023). "When terms used in a statute are undefined," the Court must "give them their

3

ordinary meaning." *Schindler Elevator Corp. v. U.S. ex rel. Kirk*, 563 U.S. 401, 407 (2011) (cleaned up).

The TCPA says "telephone call." The ordinary meaning of that statutorily undefined term can refer only to an auditory event. In common parlance, a "telephone" is "an instrument for reproducing sounds at a distance." *Merriam Webster's Collegiate Dictionary*, at 1211 (10th ed. 1994). Similarly, a "call" is "an act of calling with the voice." *Id.* at 162; *see also Astellas US Holding, Inc. v. Fed. Ins. Co.*, 66 F.4th 1055, 1075 (7th Cir. 2023) ("ordinary, contemporary, common meaning" may be derived from "dictionary definitions from the time of the statute's enactment"). Neither has anything to do with written communication. That is why "an ordinary speaker" in "everyday spee[ch]" would not "describe" a text message as a "telephone call." *See Bondi v. VanDerStok*, 604 U.S. 458, 470–71 (2025).

The district court rightly grasped this point. It explained that "in today's American parlance, 'telephone call' means something entirely different from 'text message,'" and observed that the same was true when Congress enacted the TCPA "in 1991." S.A.000008. Indeed, short message service texting technology did not even exist until 1992, *see* Zoe

4

Kleinman, *'Merry Christmas': 30 Years of the Text Message*, BBC (Dec. 2, 2022), https://tinyurl.com/bp59j6ut (explaining "the first [text message] was sent to a mobile phone by a Vodafone engineer in Berkshire in the UK on 3 December 1992"), so it is not surprising that Congress chose language which excludes it.[2]

The TCPA's structure confirms its text. Elsewhere, the TCPA restricts a "telephone call" that uses "an artificial or prerecorded *voice*," 47 U.S.C. § 227(b)(1)(B) (emphasis added); *see also* 47 U.S.C. § 227(b)(1)(A) (similar), again showing Congress addressed auditory acts. And when, in 2018, Congress expanded the TCPA's caller identification requirements to expressly include "text message[s]" and "text messaging," *see* Ray Baum's Act of 2018, Pub. L. No. 115-141, Div. P, Tit. V, § 503, 132 Stat. 348, 1091 (2018) (codified at 47 U.S.C. § 227(e)(1),

---

[2] Steidinger's 28(j) letter cites a district court opinion holding "call" means any "communication with a person by a telephone." *See Mujahid v. Newity, LLC*, No. 25-cv-8012, 2025 WL 3140725, at *2 (N.D. Ill. Nov. 10, 2025). But the same dictionary entry the district court cited actually makes clear a "call" involves a "voice." *Webster's Third New International Dictionary* 318 (2002) ("to speak in a loud distinct voice"; "to utter in a loud distinct voice"; etc.). And its entry for "telephone" defines that as "an instrument for reproducing sounds." *Id.* at 2350. In any event, that court's interpretation proves far too much: if a "telephone call" is any telephone communication, then unwanted email messages and smart phone notifications would also give rise to TCPA liability.

(e)(8)), it did not similarly amend the telephone solicitation requirements at issue here, although it could have easily done so. "The fact that [Congress] did not adopt this readily available and apparent alternative strongly supports [the district court's] reading." *Knight v. IRS*, 552 U.S. 181, 188 (2008); *see also Ambassador Animal Hosp., Ltd. v. Elanco Animal Health Inc.*, 74 F.4th 829, 831 (7th Cir. 2023) ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983))). If Congress had wanted to include text messages, it would have said so.

## B. The FCC's Contrary Interpretation Fails

Resisting the plain meaning of the text Congress actually enacted, the FCC has, "[s]ince 2003," interpreted "call" "to include both voice calls and text messages." *See In re Targeting & Eliminating Unlawful Text Messages*, 38 FCC Rcd. 12247, ¶ 5 n.8 (2023) (FCC 23-107). But contrary to Steidinger's position, the agency's construction does not persuade and it certainly cannot control.

**1. The FCC's View Does Not Persuade**

First, the FCC has never attempted to justify its interpretation. Its 2003 order merely asserts, without any textual or other analysis, that the term "call" "encompasses both voice calls and text calls." *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶ 165 (2003) (FCC 03-153) (hereinafter "2003 FCC Order"). Subsequent orders are similar. After citing the statute, the FCC has simply announced its position as if it were self-evident. *See, e.g., In re Rules & Regulations Implementing the Controlling the Assault of Non-Solicited Pornography & Marketing Act of 2003*, 19 FCC Rcd. 15927, ¶ 17 (2004) (FCC 04-194) (asserting, without analysis, "the TCPA prohibition on using automatic telephone dialing systems to make calls to wireless phone numbers applies to text messages … as well as voice calls"). Assertion, obviously, is not an argument. The FCC's results-oriented approach "is much like shooting the side of a barn, drawing the target around the bullet holes, and then proclaiming, 'bullseye!'" *See FRAC v. Garland*, 112 F.4th 507, 525 n.15 (8th Cir. 2024).

Perhaps for this reason, the Supreme Court has signaled its doubts about the FCC's position. In *Facebook, Inc. v. Duguid*, 592 U.S. 395, 400

n.2 (2021), "[n]either party dispute[d] that the TCPA's prohibition also extends to sending unsolicited text messages." Nonetheless, the Supreme Court made clear that it would only "assume" the FCC's position and that, consistent with the parties' framing, it was *not* "considering or resolving that issue." *Ibid.*; *see also United States v. Sineneng-Smith*, 590 U.S. 371, 375 (2020) ("we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present"). That the Supreme Court pointedly flagged the FCC's unchallenged interpretation *years* before it overruled *Chevron* suggests its doubts about whether the FCC's interpretation is even *reasonable*—let alone *best. See Loper Bright*, 603 U.S. at 400 ("instead of declaring a particular party's reading 'permissible'" as under *Chevron* courts must now "determine the best reading of the statute").

Steidinger argues this Court reached a contrary conclusion. He cites (at 22) "a Massachusetts District Court" for the proposition that this Court "adopted" "the FCC's regulations applying the TCPA to text messages as the current applicable legal standard." But review of the case the Massachusetts court identified shows that this Court, just like

8

the Supreme Court in *Duguid*, merely took the dispute *as the parties framed it*: "A text message to a cellular telephone, *it is undisputed*, qualifies as a 'call' within the compass of § 227(b)(1)(A)(iii)." *Douglas v. The W. Union Co.*, 955 F.3d 662, 663 (7th Cir. 2020) (emphasis added) (quoting *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016))[3]; *see also, e.g.*, *United States v. Ford*, 106 F.4th 607, 609 (7th Cir. 2024) ("Given the principle of party presentation, we accept [an] implied concession for the purpose of th[e] appeal, while reserving the subject for decision in some future case in which it has been the subject of adversarial briefing" (citation omitted)). Indeed, the issue presented to this Court in *Douglas* was not the scope of the TCPA but whether a nonclass member may object to a proposed class-action settlement. *Douglas*, 955 F.3d at 663. The Court dismissed because the nonclass member was "not a party and lack[ed] standing to appeal." *Ibid.* It did not, as Steidinger contends, rule that text messages are telephone calls.

---

[3] Other decisions by this Court are similar. *See, e.g.*, *Warciak v. Subway Rests., Inc.*, 949 F.3d 354, 356 (7th Cir. 2020) (citing *Campbell-Ewald* where no party disputed the FCC's interpretation); *Blow v. Bijora, Inc.*, 855 F.3d 793, 798 (7th Cir. 2017) ("It is uncontested that text messages to a cellular phone constitute 'calls'"). Steidinger suggests (at 17, 22) *Campbell-Ewald* is an endorsement of the FCC's view; but the Supreme Court has explained it is not. *See Duguid*, 592 U.S. at 400 n.2.

Nor is Steidinger correct (at 19) that the FCC's view is shared by "the vast majority of courts." The cases he cites either arise under the now discredited *Chevron* doctrine, *see, e.g.*, *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009) ("we find that the FCC's interpretation of the TCPA is reasonable, and therefore afford it deference"), or fail to account for its demise, *see, e.g.*, *Wilson v. Skopos Fin., LLC*, No. 6:25-cv-00376, 2025 U.S. Dist. LEXIS 138638, *10 (D. Or. July 21, 2025) ("*the FCC* has expanded the TCPA to apply to text messages" (emphasis added)); *Abboud v. Circle K Stores Inc.*, No. 23-cv-01683, 2025 U.S. Dist. LEXIS 13605, at *12 (D. Ariz. Jan. 27, 2025) (citing FCC regulations). None purports to "exercis[e] independent legal judgment" in endorsing the FCC's view. *See Loper Bright*, 603 U.S. at 401. These decisions, therefore, do not represent the views "of courts," only of the FCC.

### 2. The FCC's View Cannot Control

Despite initially conceding (at 7) this Court reviews "questions of statutory interpretation … *de novo*," Steidinger spends much of his brief arguing that "reasonable" FCC statutory interpretations are "entitled to deference." Steidinger Br. at 5; *see also, e.g.*, *id.* at 9 ("[statutory]

ambiguity is readily resolved by examining the FCC's Orders"), 14 ("the FCC's directive is reasoned"), 28 ("the appropriate standard is not mere 'respect,' but rather whether the FCC's Orders were 'reasonable'"), 30 ("the reasonableness of the FCC's interpretation … warrants deference"), 32 (urging "deference to the FCC's Orders"). That is wrong.

The Supreme Court's teaching could not be more clear: "courts decide legal questions by applying their own judgment." *Loper Bright*, 603 U.S. at 392; *see ibid.* ("courts, not agencies, will decide '*all* relevant questions of law'"); *id.* at 402 ("an agency's interpretation of a statute cannot bind a court" (cleaned up)). Therefore, in "an enforcement proceeding" involving a federal agency's interpretation even of a statute that it administers, "a district court must independently determine for itself whether the agency's interpretation of [the] statute is correct." *McLaughlin*, 606 U.S. at 155; *see Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 823 (2024) ("parties may always assail a regulation as exceeding the agency's statutory authority in enforcement proceedings against them" (cleaned up)). The Supreme Court has squarely held that this includes in all "civil enforcement proceedings under the Telephone Consumer Protection Act." *McLaughlin*, 606 U.S.

11

at 149. Contrary to Steidinger's position, therefore, the district court and this Court are "not bound by the FCC's interpretation of the TCPA." *Id.* at 168.

Steidinger nevertheless argues (at 14) the FCC's interpretation should be reviewed under "the Administrative Procedure Act's deferential arbitrary-and-capricious standard." While it is true that standard survives *Loper Bright*, the Supreme Court made clear that is because it applies only to "agency policymaking and factfinding." *Loper Bright*, 603 U.S. at 392. "[W]hen an agency interprets a statute," Steidinger's own Supreme Court authority explains, "judicial review of the agency's interpretation is *de novo*." *Seven Cnty. Infrastructure Coal. v. Eagle Cnty., Colo.*, 605 U.S. 168, 179 (2025).

Steidinger contends (at 27) the district court should have deferred because his brief cited the FCC's "codified" rule and "did not hyper-fixate upon" its 2003 declaratory ruling. But the same standard applies to both. During the *Chevron* era, both the FCC's codified rules *and* its declaratory rulings had equal power to bind a court. *See City of Arlington v. FCC*, 569 U.S. 290, 307 (2013) ("agency rules"); *id.* at 294 ("declaratory ruling"). And in the post *Chevron* era, "a judge [is] *never* bound to adopt the

construction given by" an agency. *Loper Bright*, 603 U.S. at 390 n.3 (emphasis added); *see McLaughlin*, 606 U.S. at 161 ("a district court is not bound by an agency's statutory interpretation"). The district court's review simply did not depend on which FCC document Steidinger's briefs cited most. Both the court below and now this one must apply independent judgment regardless of what procedure or level of formality the FCC used when it spoke.

## II. The Court May Affirm On Alternative Grounds Because Cellular Telephones Are Not "Residential Telephones"

The Court may affirm a judgment "on any ground that finds support in the record." *SEC v. Bauer*, 723 F.3d 758, 771 (7th Cir. 2013); *see United States v. Am. Ry. Exp. Co.*, 265 U.S. 425, 435 (1924) ("the appellee may … urge in support of a decree any matter appearing in the record, although his argument may involve an attack upon the reasoning of the lower court or an insistence upon matter overlooked or ignored by it"). If the Court disagrees about the best meaning of "telephone call," it may affirm on the alternative ground that this case does not involve a "residential telephone."

In the district court Steidinger and his co-plaintiffs each asserted that his "cellular telephone" was, in actuality, a "residential telephone"

13

subject to regulation under subsection 227(c).  S.A.000003; *see* 47 U.S.C. § 227(c)(1) (authorizing FCC rulemaking "to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object").  That is wrong.  The TCPA clearly establishes that cellular telephones are not residential telephones.

The text shows the distinction.  When Congress enacted the TCPA, a "residence" was "a building used as a home."  Residential, *Merriam Webster's Collegiate Dictionary*, at 996 (10th ed. 1994).  The term "residential" meant "relating to [a] residence or residences." *Ibid.*  The phrase "residential telephone," therefore, meant a traditional landline telephone connected to a residence.  It could not include a cellular telephone because a cellular telephone is necessarily wireless and thus unconnected with a residence.  *See* Cellular, *Merriam Webster's Collegiate Dictionary*, at 184 (10th ed. 1994) ("a radiotelephone system in which a geographical area (as a city) is divided into small sections each served by a transmitter of limited range").  This understanding was reflected in the common usage of the term "residential telephone" at the time, as shown "in statements made in connection with Congress's consideration of the TCPA," *Chennette v. Porch.com, Inc.*, 50 F.4th 1217,

1234 (9th Cir. 2022) (Ikuta, J., dissenting) (collecting examples), as well as in telephone "[i]nstallation guides at the time [which] assumed residential telephones were wired telephones," *id.* at 1233 n.1 (collecting examples).[4]

That the term "residential telephone" cannot include a cellular telephone is confirmed by the TCPA's structure. Subsection 227(b) contains separate prohibitions for robocalls to a "cellular telephone," § 227(b)(1)(A)(iii), and to a "residential telephone," § 227(b)(1)(B). The Supreme Court has held these terms are not interchangeable. *See Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 591 U.S. 610, 617, 617 n.3 (2020) (explaining "residential telephone" in subsection 227(b) means "home phones" not "cellular phones"); *accord Morris v. Lincare, Inc.*, No. 8:22-cv-2048, 2023 WL 5336780, at *4 (M.D. Fla. Aug. 18, 2023) ("'home phone[s]' and 'residential telephone[s]' … are distinct from cell phones" (citing *Barr,* 591 U.S. at 617 n.3)). "Considering Congress knew of

---

[4] The *Chennette* majority expressed no disagreement with Judge Ikuta's statutory analysis but, in that pre-*McLaughlin* decision, considered itself bound by "the FCC's" conclusion "that a cell phone is presumptively residential." 50 F.4th at 1225; *see also id.* at 1226 (Bress, J., concurring) (rejecting the dissent's position because "the FCC has ruled that cell phones can be regarded as residential telephones under the TCPA").

cellular telephones—and in fact referenced cellular telephones as distinct from residential telephones throughout the TCPA—a proper interpretation of the statute would conclude that Congress intentionally omitted any reference to cellular telephones in section 227(c)." *Turizo v. Subway Franchisee Advert. Fund Tr. Ltd.*, 603 F. Supp. 3d 1334, 1340 (S.D. Fla. 2022); *see also, e.g.*, *Ambassador Animal Hosp.*, 74 F.4th at 831 ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (citation omitted)).

In the same 2003 FCC Order that misinterpreted "telephone call" to include text messages, the agency disregard the TCPA's clear statutory language and announced a "presumption" that "wireless subscribers who ask to be put on the national do-not-call list [are] 'residential subscribers.'" 2003 FCC Order ¶ 36; *see also Turizo*, 603 F. Supp. 3d at 1342 (describing this aspect of the 2003 FCC Order as "unauthorized expansion … of the TCPA's do-not-call provision"). The FCC did not attempt to justify its "interpretation" under the statute's text. Instead, the agency claimed only that that its preferred policy choice was "more

16

consistent with the overall intent of the TCPA." 2003 FCC Order ¶ 36. But that purposivism fails even on its own terms.

Congress's intent is obvious. The statute's text identifies "the need to protect *residential* telephone subscribers." 47 U.S.C. § 227(c)(1) (emphasis added); *see also United States v. Turkette*, 452 U.S. 576, 593 (1981) ("The language of the statute ... [is] the most reliable evidence of its intent"); *ACA Int'l v. FCC*, 885 F.3d 687, 713 (D.C. Cir. 2018) ("the TCPA ... presupposes ... that calls to residential and wireless numbers warrant differential treatment"). And Congress's enacted findings are equally clear. They state, among other things, that "Congress finds that ... [t]he use of the telephone to market goods and services *to the home* and other businesses is now pervasive," Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(1), 105 Stat. 2394, 2394 (1991) (codified at 47 U.S.C. § 227 note) (emphasis added), "that ... [m]any consumers are outraged over the proliferation of intrusive, nuisance calls *to their homes* from telemarketers," *id.* § 2(6) (emphasis added), and that "[b]anning such ... telephone calls *to the home* ... is the only effective means of protecting telephone consumers," *id.* § 2(12) (emphasis added). Nowhere in the statutory text or in all its enacted findings did Congress

17

ever specify any similar concern about telemarketing calls to cellular phones, despite such phones having been widely available to the American public since the early 1980s.

The FCC might believe Congress's regulatory choices inconsistent with its policy goal, but even so an agency cannot determine to "eliminate clearly expressed inconsistency of policy and to treat alike subjects" when Congress has "chosen to treat [them] differently." *See W. Va. Univ. Hosps., Inc. v. Casey*, 499 U.S. 83, 101 (1991). Nor may the FCC "rewrite clear statutory terms to suit its own sense of how the statute should operate." *Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 328 (2014); *see also McLaughlin*, 606 U.S. at 166 ("policy-laden argument does not overcome the text of the statute"). It is quite "mistaken to assume," as the FCC did, "that whatever might appear to further the statute's primary objective must be the law." *Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 89 (2017) (cleaned up). "'Senescent' as … the TCPA … may be, that is no justification for eschewing [its] best reading." *Duguid*, 592 U.S. at 409. The job of an interpreter is to "interpret," not update, "what Congress wrote." *Ibid.*; *see also Niz-Chavez v. Garland*, 593 U.S. 155, 171

18

(2021) ("[N]o amount of policy-talk can overcome a plain statutory command.").

Because the record shows this case involves only "cellular telephone[s]," S.A.000003, and because subsection 227(c) authorizes regulation only of "residential telephone[s]," 47 U.S.C. § 227(c)(1), the Court may affirm on this alternative ground.

## III. At Minimum, The Court Should Recognize The TCPA Does Not Regulate Political Organizations' Text Messages

The Court should affirm because text messages are not "telephone calls" under the plain meaning of the statute and because the FCC's contrary view neither persuades nor controls. But if the Court disagrees with that and also declines to affirm on an alternative ground, then it should at least make clear the TCPA does not regulate political organizations' text messages.

Subsection 227(c) authorizes "an action based on a violation of the regulations prescribed under this subsection." 47 U.S.C. § 227(c)(5). That subsection directs the FCC to make rules so that "residential telephone subscribers" may "avoid receiving *telephone solicitations* to which they object." § 227(c)(1) (emphasis added). A "telephone solicitation," the statute says, is a telephone call "for the purpose of

encouraging the purchase or rental of, or investment in, property, goods, or services." § 227(a)(4). It expressly "does not include a call … by a tax exempt nonprofit organization." *Ibid.*

The TCPA thus makes clear that calls by tax-exempt nonprofit organizations are not actionable under subsection 227(c). That includes calls by political organizations like the NRCC and NRSC, which operate on a non-profit basis and are tax exempt under section 527 of the Internal Revenue Code. *See* 26 U.S.C. § 527 ("A political organization shall be considered an organization exempt from income taxes"). Despite the clear statutory text, some plaintiffs' firms target political organizations to chill political speech they do not like, obtain a quick payout, or both. *See, e.g.*, Troutman, *supra* ("this effort by K&S now appears to be definitively targeting Republican interests"; "It has long been feared that the TCPA … might be effectively wielded as a weapon of political warfare"); *Sutherland v. Save Am. PAC*, No. 1:22-cv-303, 2023 WL 9785040, at *1 (N.D. Fla. May 25, 2023) ("The defendants are political organizations: Save America PAC, the Republican National Committee, the National Republican Senatorial Committee, and the Congressional Leadership Fund."); Mot. Dismiss 1, *Johnson v. Republican National*

20

*Committee*, No. 2:25-cv-452 (D. Utah Aug. 1, 2025) ("Another federal district court recently dismissed a very similar lawsuit brought by the very same plaintiffs' firm against some of the very same defendants targeted here.").

Congress drafted the TCPA specifically to avoid that problem. In addition to expressly excluding tax-exempt nonprofit organizations from its definition of a telephone solicitation, Congress enacted legislative findings that asserted only its interest in regulating "*commercial* telemarketing solicitations." Pub. L. No. 102-243, § 2(8), 105 Stat. at 2394 (emphasis added); *see* H.R. Rep. No. 102-317, at 16 (1991) ("The Committee made the public policy determination to exclude calls made by charitable or political organizations on the basis of the record, which does not contain sufficient evidence to demonstrate that calls from these tax exempt nonprofit organizations should be subject to the restrictions provided for under the bill."). That is important because Congress's "justifications for interfering with First Amendment rights must be" "contemporaneous" and "genuine," "not … invented *post hoc* in response to litigation." *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 543 n.8 (2022) (cleaned up). Congress's legislative findings thus reinforce the

21

textual limits at issue here.[5]  It even instructed the FCC that if its rulemaking record showed "a need to further restrict telephone solicitations, *including those calls exempted under subsection (a)(3)*,"[6] the agency must "propose specific restrictions to the Congress," 47 U.S.C. § 227(c)(1)(D) (emphasis added), not attempt to expand the statute itself. *A fortiori*, a private plaintiff cannot develop a record that would support regulation beyond that which Congress has prescribed.

Significant First Amendment concerns arise otherwise.  In enacting the TCPA, Congress "was sensitive to restraints on its authority to regulate the speech of charitable and political organizations, speech

---

[5] Congress's limited interest distinguishes the TCPA from the Indiana statute this Court upheld in *Patriotic Veterans, Inc. v. Zoeller*, 845 F.3d 303 (7th Cir. 2017).  There, this Court held that law "a valid time, place, and manner restriction," *id.* at 306, *i.e.*, a restriction type that must (among other things) be "narrowly tailored to serve a significant governmental interest," *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989).  As Congress disclaimed any governmental interest in regulating political speech through the TCPA and the Court cannot itself supply one, the TCPA cannot be a valid time, place, and manner restriction applied to such speech.

[6] Subsection (a)(3) is the provision that defines a "telephone solicitation" and is codified as subsection (a)(4).  *See* Pub. L. No. 102-243, §§ 3(a)(3), 3(c)(1)(D), 105 Stat. at 2395, 2397; 47 U.S.C. § 227(a)(4).  As explained above, a "call … by a tax exempt nonprofit organization" is expressly exempted by that subsection.

which the Supreme Court has identified as 'core' First Amendment Speech." H.R. Rep. No. 102-317, at 17 (citing *Vill. of Schaumberg v. Citizens for a Better Env't*, 444 U.S. 620 (1980) and *Cantwell v. Connecticut*, 310 U.S. 296 (1940)); *see also FEC v. Cruz*, 596 U.S. 289, 302 (2022) ("The First Amendment has its fullest and most urgent application precisely to the conduct of campaigns for political office." (cleaned up)); *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 346 (1995) ("political speech" "occupies the core of the protection afforded by the First Amendment"). By expressly exempting tax-exempt nonprofit organizations from the TCPA's telephone solicitation regulations, Congress deliberately stopped short of regulating core political speech by political organizations.

Political organizations, including the political party committees of both major parties, regularly use text messages to communicate with supporters. "Political texts—messages asking for donations, voting reminders and volunteer opportunities—are an increasingly important part of outreach strategy for campaigns." Alex Ford, *Billions of political text messages were sent last year*, NBC News (Jan. 26, 2023), https://tinyurl.com/57e7vbbh; *see also* Max Greenwood, *Democrats*

*Reckon With Digital Fundraising Tactics Ahead of 2026*, Campaigns & Elections (Oct. 24, 2025), https://tinyurl.com/hf8fwja7 ("locked out of power in Washington and struggling to map out a clear message for voters, a growing number of Democrats are rethinking their fundraising tactics ahead of the 2026 midterms"); Jessica Piper, *An Algorithm to Stop Democratic Donors From Wasting Their Money*, Politico Magazine (Feb. 6, 2024), https://tinyurl.com/28ztrnam ("Online fundraising is the backbone of Democratic campaigns."). Voters—especially young voters— "are more likely to respond to texts than calls." Sareen Habeshian, *Why political campaigns won't stop texting you*, Axios (Feb. 22, 2024), https://tinyurl.com/mrpbt79c. If political organizations' text messages were wrongly swept within the ambit of the TCPA against Congress's express directive in the statutory text, additional First Amendment concerns would arise.

# CONCLUSION

The Court should affirm.

Respectfully submitted,

/s/ Jeremy J. Broggi
Michael E. Toner
Brandis L. Zehr
Jeremy J. Broggi
**WILEY REIN LLP**
2050 M Street NW
Washington, DC  20036
Phone: (202) 719-7000
Fax: (202) 719-7049
mtoner@wiley.law
bzehr@wiley.law
jbroggi@wiley.law

*Counsel for the NRSC and the NRCC*

## CERTIFICATE OF COMPLIANCE

I hereby certify, on December 29, 2025, that:

1. This document complies with the word limit under Federal Rule of Appellate Procedure 29(a)(5) and Circuit Rule 29 because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f), this document contains less than 7,000 words.

2. This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and Circuit Rule 32(b) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document was prepared in a proportionally spaced typeface using Microsoft Word for Office 365 MSO in a 14-point Century Schoolbook font.

/s/ Jeremy J. Broggi
Jeremy J. Broggi

# CERTIFICATE OF SERVICE

I certify that on December 29, 2025, a true and correct copy of this Brief was filed and served electronically upon counsel of record registered with the Court's CM/ECF system.

/s/ Jeremy J. Broggi
Jeremy J. Broggi