No. 25-2398

# In the
# United States Court of Appeals
## for the Seventh Circuit

SETH STEIDINGER, ET AL,

*Plaintiffs-Appellants,*

v.

BLACKSTONE MEDICAL SERVICES,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Central District of Illinois, Peoria Division, No. 1:24-cv-01074-JEH-
RLH. The Honorable **Jonathan E. Hawley**, Judge Presiding.

## BRIEF OF *AMICUS CURIAE*
## FASHION NOVA, LLC
## IN SUPPORT OF APPELLEES AND AFFIRMANCE

MARK S. EISEN
BENESCH, FRIEDLANDER,
 COPLAN & ARONOFF LLP
71 South Wacker Drive, Suite 1600
Chicago, Illinois 60606
(312) 212-4956

*Counsel for Amicus Curiae*
*Fashion Nova, LLC*

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 25-2398

Short Caption: Seth Steidinger, et al v. Blackstone Medical Services, LLC

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

   The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
Fashion Nova, LLC

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
Benesch, Friedlander, Coplan & Aronoff, LLP

(3)     If the party, amicus or intervenor is a corporation:

    i)     Identify all its parent corporations, if any; and

      Fashion Nova Holdings, LLC

    ii)     list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

      N/A

(4)     Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

      N/A

(5)     Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

      N/A

Attorney's Signature: /s Mark S. Eisen     Date: 12/29/2025

Attorney's Printed Name: Mark S. Eisen

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    **Yes** ☑   **No** ☐

Address: 71 S. Wacker Drive, Suite 1600

Chicago, Illinois 60606

Phone Number: 312-212-4956     Fax Number: 312-767-9192

E-Mail Address: meisen@beneschlaw.com

# TABLE OF CONTENTS

**Page**

FASHION NOVA'S STATEMENT OF INTEREST ........................................................... 1

SUMMARY OF ARGUMENT .................................................................................... 3

ARGUMENT ............................................................................................................. 6

I.  LEGAL AND REGULATORY BACKGROUND ............................................ 6

    A.  Section 227(c)(5) of the TCPA Applies Only to Telephone Calls. ................................................................................. 6

    B.  The FCC's Relevant—and Entirely Unsupported—Interpretations ...................................................................... 6

    C.  The Supreme Court Fundamentally Changed the Analysis. .................................................................................. 7

II. A TEXT MESSAGE IS SIMPLY NOT A TELEPHONE CALL. ....................... 9

    A.  This Court Is Bound by the Words Congress Chose. ......................... 9

    B.  The Plain Language of "Telephone Call" Resolves this Dispute. ................................................................................. 10

    C.  Dictionary Definitions Cannot Overcome Common Meaning .................................................................................. 12

    D.  Congress Agrees that a Text Message Is Not a Telephone Call. ................................................................................ 14

    E.  Appellants' Attempt to Bootstrap Other Provisions Fails. ..................................................................................... 15

III. POLICY ARGUMENTS DO NOT OVERCOME STATUTORY TEXT. .................................................................................. 17

IV. THE FCC CANNOT ALTER THE TERM "TELEPHONE CALL." .................................................................................. 18

V.     THE FCC'S UNAUTHORIZED EXPANSION OF THE TCPA HAS COME AT THE EXPENSE OF LITIGIMATE BUSINESSES. ..................................................................... 19

CONCLUSION ................................................................................... 20

**Page(s)**

**Cases**

*Ambassador Animal Hosp., Ltd. v. Elanco Animal Health Inc.,*
74 F.4th 829 (7th Cir. 2023)..................................................................................14

*Azar v. Allina Health Servs,*
587 U.S. 566 (2019).............................................................................................16

*Blow v. Bijora, Inc.,*
855 F.3d 793 (7th Cir. 2017) ................................................................................8

*Campbell-Ewald v. Gomez,*
577 U.S. 153 (2016).............................................................................................9

*CFTC v. Worth Bullion Group,*
717 F.3d 545 (7th Cir. 2013) ..............................................................................13

*Chevron, U.S.A., Inc. v. NRDC, Inc.,*
467 U.S. 837 (1984)........................................................................................7, 12

*Davis v. CVS Pharmacy, Inc.,*
797 F. Supp. 3d 1270 (N.D. Fla. 2025) ....................................................... *passim*

*Facebook, Inc. v. Duguid,*
592 U.S. 395 (2021), 592 U.S. 395 ..................................................9, 16, 17, 18

*Hudson v. Ralph Lauren Corp.,*
385 F. Supp. 3d 639 (N.D. Ill. 2019)..................................................................3, 7

*Ins. Mktg. Coal. Ltd. v. FCC,*
127 F.4th 303 (11th Cir. 2025)............................................................................18

*Jones v. Blackstone Med. Servs., LLC,*
792 F. Supp. 3d 894 (C.D. Ill. 2025) ........................................................... *passim*

*LaGuardia v. Designer Brands, Inc.,*
No. 19-cv-1568, 2020 WL 2463385 (S.D. Cal. May 7, 2020) ............................19

*Loper Bright Enters. v. Raimondo,*
603 U.S. 369 (2024).......................................................................................... *passim*

*McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.,*
606 U.S. 146 (2025).......................................................................................... *passim*

*Mujahid v. Newity, LLC,*
No. 25-cv-8012, 2025 WL 3140725 (N.D. Ill. Nov. 10, 2025) ...........................................12

*Nikolay Dilanyan v. Hugo Boss Fashions, Inc. et al.,*
No. 2:25-CV-05093-JLS-BFM, 2025 WL 3549868, at * (C.D. Cal. Dec. 3,
2025) ...................................................................................................11, 14

*Pulsifer v. United States,*
601 U.S. 124 (2024)...........................................................................................15

*Richards v. Fashion Nova, LLC,*
No. 1:25-cv-01145 (S.D. Ind.) ...............................................................................19

*In the Matter of Rules & Regs. Implementing the Tel. Consumer Prot. Act of
1991,*
30 F.C.C. Rcd. 7961 (2015) (Pai, Dissenting)....................................................4, 19

*In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of
1991,*
27 F.C.C. Rcd. 1830 (2012) ...................................................................................6

*In Re Rules and Reguls. Implementing the TCPA of 1991,*
18 FCC Rcd. 14014 (2003) ................................................................................6, 7

*Salcedo v. Hanna,*
936 F.3d 1162 (11th Cir. 2019), *abrogated on other grounds by Drazen v.
Pinto,* 74 F.4th 1336 (11th Cir. 2023)..................................................................10

*Satterfield v. Simon & Schuster, Inc.,*
569 F.3d 946 (9th Cir. 2009) .........................................................................7, 9, 12

*Sayed v. Naturopathica Holistic Health, Inc.,*
No. 25-cv-00847, 2025 WL 2997759 (M.D. Fla. Oct. 24, 2025)..............................8, 11, 14

*Stamper v. Manus-Nw. Oral Health Ctr., Ltd.,*
No. 23 C 05660, 2025 WL 2044093 (N.D. Ill. July 17, 2025)..................................................9

*In the Matter of Targeting & Eliminating Unlawful Text Messages Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991,*
38 F.C.C. Rcd. 12247 (2023) ............................................................................7

*Trim v. Reward Zone USA LLC,*
76 F.4th 1157 (9th Cir. 2023) ...........................................................................15

*United States v. Johnson,*
875 F.3d 360 (7th Cir. 2017) .............................................................................13

*Whitman v. Am. Trucking Ass'ns,*
531 U.S. 457 (2001) .............................................................................................11

*Wisconsin Cent. Ltd v. United States,*
585 U.S. 274 (2018) .........................................................................................4, 11

**Statutes**

47 U.S.C. § 227 ............................................................................................................6

47 U.S.C. § 227(a)(4) ................................................................................................16

47 U.S.C. § 227(b)(1)(B) ..........................................................................................16

47 U.S.C. § 227(c)(5) ..................................................................................... *passim*

47 U.S.C. § 227(d) .....................................................................................................16

47 U.S.C. § 227(e) ................................................................................................14, 15

47 U.S.C. § 227(e)(8)(A) ..........................................................................................14

47 U.S.C. § 227(e)(8)(A), (B) ..................................................................................14

**Other Authorities**

47 C.F.R. § 64.1200(c)(2).........................................................................................16

47 C.F.R. § 64.1200(e) ..............................................................................................18

*Notice of Proposed Rulemaking*, 17 FCC Rcd 17459, 17460 (2002) ..............6

<u>**FASHION NOVA'S STATEMENT OF INTEREST**[1]</u>

Fashion Nova, LLC ("Fashion Nova"), based in Los Angeles, California, is a one of the country's (and world's) largest quick-to-market apparel companies. Fashion Nova first opened in 2006, and has since grown to a global phenomenon with tens of millions of customers throughout the world.

Fashion Nova has a passionate customer base and following. Fashion Nova uses text messaging, among other channels, to remain in contact with its customers and provide updates on orders and deals. Fashion Nova is dedicated to providing an excellent customer experience and customer service, and its customers rely on and appreciate text notifications. Fashion Nova's customers prefer to receive outreach via text message.

Like many legitimate retailers (and other industries across the country), Fashion Nova has become a target under the Telephone Consumer Protection Act ("TCPA"), especially as it relates to text message customer outreach. Fashion Nova files this brief to provide the Court with the view of a well-known retailer as it relates to the Federal Communication Commission's improper expansion of the TCPA to text messages, and the unbridled flood of TCPA litigation that has followed. The issue at hand—whether 47 U.S.C. § 227(c)(5)—is of vital importance to Fashion Nova (and businesses across industries), which is similarly facing TCPA litigation within this Circuit.

---

[1] Pursuant to Federal Rule of Appellate Procedure 29(a)(4)(D), Fashion Nova states that all parties have consented to the filing of this amicus brief under Rule 29(a)(2).

Fashion Nova's counsel authored this brief alone. Neither party nor their counsel authored any part of this brief or contributed money intended to fund the preparation or submission of this brief. No person contributed money to Fashion Nova that was intended to fund the preparation or submission of this brief.

The only issue at hand is the scope of the term "telephone call" in 47 U.S.C. § 227(c)(5). This is not an esoteric term of art, *sui generis* to the TCPA. It was commonly understood in 1991 when the TCPA was passed, and remains so today. It thus comes as no surprise that a text message was not a telephone call then or now. As one court recently held, "[c]ertainly, no ordinary person would think of a text message as a '*telephone* call.'" *Davis v. CVS Pharmacy, Inc.*, 797 F. Supp. 3d 1270, 1273 (N.D. Fla. 2025) (emphasis in original).

It was the Federal Communications Commission ("FCC"), and not Congress, that expanded the reach of a telephone call to encompass text messages. Courts in this Circuit followed this guidance under the misapprehension that they were bound by the FCC's views under the Hobbs Act. *See, e.g.*, *Hudson v. Ralph Lauren Corp.*, 385 F. Supp. 3d 639, 642 n.3 (N.D. Ill. 2019) ("[A]t this time, the FCC's final orders bind the Court under the Hobbs Act."). The Supreme Court, however, recently cleared this underbrush, holding that FCC interpretations of the TCPA are entitled to neither deference nor controlling weight. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400 (2024); *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146, 168 (2025). As a result, trial courts—as the trial court did below—are now required to independently reach the *best* interpretation of the statutory provision, applying ordinary principles of statutory construction.

Appellants' reliance on case law predating this shift in statutory interpretation, and particularly their reliance on cases that merely *assumed* text messages qualified as telephone calls, is misplaced. Rather, this Court should find instructive the growing body of independent analyses trial courts have conducted to determine that the clear and ordinary meaning of "telephone call" does not include a form of written communication (more resembling a letter or an email) that did not exist when the TCPA was passed, merely because it is received on a handset. Appellants' view, if correct, would apply equally to virtually all modern communication.

The Supreme Court teaches that only Congress can "revise statutes in light of new social problems and preferences. Until it exercises that power, the people may rely on the original meaning of the written law." *Wisconsin Cent. Ltd v. United States*, 585 U.S. 274, 284 (2018). The FCC's expansion of the term "telephone call" was unauthorized and unsupported. The effect has been a deluge of TCPA cases against unsuspecting legitimate companies, like Fashion Nova, that are merely attempting to communicate with their customers. These companies are not engaged in cold calling or traditional tele-sales. Nevertheless, legitimate companies are often the victim of TCPA class action litigation because, as then-FCC Commissioner Ajit Pai put it, "trial lawyers have found legitimate, domestic businesses a much more profitable target." *In the Matter of Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991*, 30 F.C.C. Rcd. 7961, 8072-73 (2015) (Pai, Dissenting).

It is the prerogative of **Congress** alone to update the TCPA. It is for neither the FCC nor Appellants to alter the TCPA's plain language and the choices Congress made in a misguided effort to see around the corner. The court below properly interpreted that the plain meaning, and common use of "telephone call" does not include text messages. Appellants, fixated on finding plausible readings of the simple term "telephone call," eschew the single best reading. TCPA text message litigation, finding no basis in the statute itself, has grown to become little more than a tax on the business community. This Court should affirm the trial court's decision.

<u>**ARGUMENT**</u>

I. **LEGAL AND REGULATORY BACKGROUND**

A. **Section 227(c)(5) of the TCPA Applies Only to Telephone Calls.**

Congress enacted the TCPA in 1991. *See* 47 U.S.C. § 227. Section 227(c)(5) of the TCPA affords a private right of action to "[a] person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection." 47 U.S.C. § 227(c)(5) (emphasis added). Subsection 227(c) does not mention text messages.

B. **The FCC's Relevant—and Entirely Unsupported—Interpretations**

In 2002, the FCC issued a Notice of Proposed Rulemaking to update the TCPA to account for "[n]ew technologies" that had emerged since 1991. *See Notice of Proposed Rulemaking*, 17 FCC Rcd 17459, 17460 (2002) ("2002 NPRM"). The NPRM made no reference to text messages, nor (critically) did the NPRM so much as invite comment on text messages.

In 2003, the FCC issued its Order, in relevant part, proclaiming the term "call" under Subsection 227(b) of the TCPA "encompasses both voice calls and text calls." *In Re Rules and Reguls. Implementing the TCPA of 1991*, 18 FCC Rcd. 14014, 14115 (2003) ("2003 Order"). The FCC engaged in ***no analysis*** and provided no basis for this conclusion. *Id*. The FCC has reiterated its 2003 interpretation, without any further analysis. *See In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1832 (2012).

6

In 2023, the FCC evaluated for the first time the term "telephone call" under Subsection 227(c)(5). The FCC again provided no statutory analysis, but simply relied on *ipse dixit* and laundered its view from the 2003 Order. *See In the Matter of Targeting & Eliminating Unlawful Text Messages Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 38 F.C.C. Rcd. 12247, 12257, 12272 (2023).

Following the 2003 Order's decree, courts fell in line, concluding they were obligated to defer to the FCC and find text messages were "calls," simply because the FCC said so, based on either the *Chevron* doctrine or the Hobbs Act. *See, e.g.*, *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009) (concluding that courts "must defer" to the FCC's finding that text messages were "calls" under *Chevron*); *Hudson*, 385 F. Supp. 3d at 641 n.3 (N.D. Ill. 2019) (finding the court was bound under the Hobbs Act to follow the FCC's view). As detailed below, this approach no longer holds true.

C.    **The Supreme Court Fundamentally Changed the Analysis.**

It may strike this Court as unusual that the Seventh Circuit has not interpreted the term "telephone call" in the 35 years since the TCPA was passed. This, however, is a result of the fact that it was not until recently that trial courts were permitted to independently interpret the TCPA in search of the *best* interpretation.

Specifically, in 2024, the Supreme Court eliminated *Chevron* deference, returning courts to their traditional function to independently reach the "***best***" interpretation of a statute.  *Loper Bright*, 603 U.S. at 400 (emphasis added). Courts must utilize "the reading

the court would have reached if no agency were involved." *Id*. (internal quotations and citation omitted). Critically, "every statute's meaning is fixed at the time of enactment." *Id.* (internal quotations and citation omitted).

In 2025, the Supreme Court issued its decision in *McLaughlin Chiropractic*, eliminating the Hobbs Act as a hurdle to interpreting the TCPA. *See* 606 U.S. at 149. Courts like the Seventh Circuit previously viewed FCC Orders as dispositive at the district court level under the Hobbs Act. *See Blow v. Bijora, Inc.*, 855 F.3d 793, 802 (7th Cir. 2017). In *McLaughlin Chiropractic*, the Supreme Court held that district courts are not "bound by the FCC's interpretation of the TCPA." *See* 606 U.S. at 168. Rather, courts are to interpret the TCPA as courts traditionally do. *Id*.

The confluence of *Loper Bright* and *McLaughlin Chiropractic* results in the following: the Court's mission now is to reach the best interpretation of the provision at hand, as the statute was written in 1991, unconstrained by the FCC's views. It is the confluence of these decisions that has resulted in a growing body of case law determining that a text message *is not* a telephone call. *See Davis*, 797 F. Supp. 3d at 1273; *Jones v. Blackstone Med. Servs., LLC*, 792 F. Supp. 3d 894, 899 (C.D. Ill. 2025); *Sayed v. Naturopathica Holistic Health, Inc.*, No. 25-cv-00847, 2025 WL 2997759, at *2 (M.D. Fla. Oct. 24, 2025).

Appellants' reliance on cases pre-dating *Loper Bright* and *McLaughlin Chiropractic* is thus misplaced. (*See, e.g.*, Appellants' Brief ["A.B."] at 11 [citing to a pre-*McLaughlin Chiropractic* R&R recognizing neither party briefed *Loper* or the Hobbs Act], 16 [citing to

the 2009 *Satterfield* decision], 19-20 [citing pre-*Loper Bright* and pre-*McLaughlin* authorities].) So, too, is their reliance on authorities where the issue at hand was never disputed. (*See, e.g., id.* at 20 [citing to *Stamper v. Manus-Nw. Oral Health Ctr., Ltd.*, No. 23 C 05660, 2025 WL 2044093, at *1 n.1 (N.D. Ill. July 17, 2025)], 22 [citing to a statement in *Campbell-Ewald v. Gomez*, 577 U.S. 153, 156 (2016), where the Supreme Court took the issue at hand as "undisputed"].). Prior to *Loper Bright* and *McLaughlin Chiropractic*, defendants could not have disputed the issue at hand. *See Davis*, 797 F. Supp. 3d at 1273 (disregarding *Campbell-Ewald* as it did not evaluate the issue at hand).

## II. A TEXT MESSAGE IS SIMPLY NOT A TELEPHONE CALL.

### A. This Court Is Bound by the Words Congress Chose.

Appellants approach the task at hand in search of a *reasonable* interpretation to the term "call"—conspicuously, not "telephone call," the term at issue (*See, e.g.*, A.B. at 4-5, 14.) This Court's guiding star now, however, is to reach the *best* interpretation, irrespective of agency views. *See Loper Bright*, 603 U.S. at 400 ("In the business of statutory interpretation, if it is not the best, it is not permissible.").

The Supreme Court made clear in *Loper Bright* that "[c]ourts interpret statutes, no matter the context, based on the traditional tools of statutory construction, *not individual policy preferences*." *Id.* at 403 (emphasis added). The Supreme Court recently reminded that it is improper to use the broad concerns motivating the TCPA to expand its reach. *See Facebook, Inc. v. Duguid*, 592 U.S. 395, 399 (2021), 592 U.S. 395, at 141 ("That Congress

was broadly concerned about intrusive telemarketing practices, however, does not mean it adopted a broad autodialer definition."). Similarly here, that Congress was broadly concerned about telemarketing does not mean that it adopted an idiosyncratic interpretation of the commonplace term "telephone call." It is the plain, common meaning that controls, as the court below determined. *See Jones*, 792 F. Supp. 3d at 901 ("The Court confines itself to its assigned role which does not include legislating.").

**B.      The Plain Language of "Telephone Call" Resolves this Dispute.**

Congress could not have meant for "telephone call" to include "text message," for the simple reason that text messages "did not exist in 1991 when the TCPA was enacted." *Salcedo v. Hanna*, 936 F.3d 1162, 1169 (11th Cir. 2019), *abrogated on other grounds by Drazen v. Pinto*, 74 F.4th 1336 (11th Cir. 2023). Appellant concedes as much. (*See* A.B. at 10.)

The meaning of a "telephone call" has not mysteriously changed in the last 30 years; "every statute's meaning is fixed at the time of enactment." *Loper Bright*, 603 U.S. at 400. But whether in 1991, or 2025, a text message is not a "telephone call," as courts have readily determined post-*Loper* and *McLaughlin*. As one court put it, "Certainly, no ordinary person would think of a text message as a '*telephone* call.' This conclusion— supported by the ordinary public meaning at the time of the provision's enactment—is enough to end this case." *Davis*, 797 F. Supp. 3d at 1273 (emphasis in original); *see also Jones*, 792 F. Supp. 3d at 899 (noting "telephone call" could not have included text messages in 1991 and "in today's American parlance, 'telephone call' means something

entirely different from 'text message.'"); *Sayed*, 2025 WL 2997759, at *2 ("[I]n common American English usage, a 'telephone call' and a 'text message' are separate and distinct forms of communication . . . ."); *Nikolay Dilanyan v. Hugo Boss Fashions, Inc.* et al, No. 2:25-CV-05093, 2025 WL 3549868, at *2 (C.D. Cal. Dec. 3, 2025) ("The Court reads the ordinary meaning of 'telephone call' to exclude 'text message'," but finding court was bound by the Ninth Circuit's case law and certifying issue for immediate interlocutory appeal).

Appellants bemoan this case law as relying on *modern* distinctions between telephone calls and text messages. (*See* A.B. at 21-22.) Appellants ignore that these decisions *did* focus on historical usage. *See Davis*, 797 F. Supp. 3d at 1273. Appellants gloss over the fact that text messages *did not exist* in 1991, and provide no basis to believe that common understanding of "telephone call" in 1991 included (clairvoyantly) a form of future written communication far more analogous to a letter or an email. This view is untenable and contravened by common sense. *See Wisconsin Cent.*, 585 U.S. at 284 (interpreting a railroad retirement statute, holding the term "money remuneration" did not include stock options, which "were not then—and are not now—recognized as mediums of exchange.").

Appellants implore this Court to find the TCPA uses the term "call" to broadly embrace even communication mediums yet to exist. (*See* A.B. at 16.) Congress does not "hide elephants in mouseholes." *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001). It would make no sense for Congress to hide within the commonly understood term

"telephone call" all communication forms (now and in the future) received on a handset.

Congress remains free to speak clearly and amend the TCPA to include text messages

### C. Dictionary Definitions Cannot Overcome Common Meaning

*Chevron* previously required courts to defer to an agency's interpretation of a statute so long as it was "reasonable." *Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837, 844 (1984). Courts like the Ninth Circuit in *Satterfield* turned to the dictionary definition of "call" to find that the FCC's interpretation of "call"—namely that it encompassed text messages—was reasonable. *See Satterfield*, 569 F.3d at 953-54. Notably, courts like *Satterfield* did not hold that a text message was a call under the plain language or best interpretation of the statute, but rather that it was only reasonable enough to mandate *Chevron* deference.

After *Loper Bright* and *McLaughlin Chiropractic*, some courts have continued to labor under the misapprehension that mere reliance on the same dictionary definition justifies an interpretation that a telephone call includes text messages. *See Mujahid v. Newity, LLC*, No. 25-cv-8012, 2025 WL 3140725, at *2 (N.D. Ill. Nov. 10, 2025) (finding "that a text message falls within [the dictionary] definition" used by *Satterfield*). This approach is misguided.

The Seventh Circuit has repeatedly warned that because "[d]ictionary definitions are acontextual," they "must be used as sources of statutory meaning only with great caution." *CFTC v. Worth Bullion Group*, 717 F.3d 545, 550 (7th Cir. 2013) (internal

quotations and citation omitted); *see also United States v. Johnson*, 875 F.3d 360, 366 (7th Cir. 2017) (same). Dictionary definitions are not dispositive and instead only serve as a "helpful resources in ascertaining the common meaning of terms that a statute leaves undefined." *CFTC*, 717 F.3d at 550 (emphasis added).

Common meaning controls, not dictionary definitions out of context. *See Costello*, 666 F.3d at 1044. This Court's prerogative is to find the *best* interpretation, not merely a remotely plausible interpretation. *See, e.g., Jones*, 792 F. Supp. 3d at 901 (rejecting a "reasonable" interpretation in favor of the best interpretation). As importantly, if Appellants are correct in their expansive view, "telephone call" would subject virtually all modern communication to the TCPA simply because they are received on a phone, like app-to-app messages, push notifications and emails. (*See* A.B. at 16.) This is not what Congress meant in 1991. The TCPA is not a free-wheeling statute regulating all communication received on a handset. Dictionary definitions may serve as "helpful resources in ascertaining the common meaning of terms," *CFTC*, 717 F.3d at 550, but they do not dictate common meaning.

This returns the analysis to first principles; "[o]ne can properly attribute to legislators the reasonable minimum intention to say what one would ordinarily be understood as saying, given the circumstances in which it is said." *Costello*, 666 F.3d at 1044 (cleaned up). It defies reason that Congress would have attributed anything other than the common meaning of a "telephone call" in 1991 (or, indeed, now). *See Davis*, 797

F. Supp. 3d at 1273. Plain language ends the inquiry. *See Ambassador Animal Hosp., Ltd. v. Elanco Animal Health Inc.*, 74 F.4th 829, 831 (7th Cir. 2023) ("We start and end with the plain language of the statute."). The term "telephone call" did not include text messages back in 1991, and certainly does not now.

**D.  Congress Agrees that a Text Message Is Not a Telephone Call.**

Congress's recent amendment of the TCPA similarly confirms the plain language interpretation that a text message is not a telephone call.

Congress amended the TCPA in 2018 to bring text messages within its scope under a different provision regarding Caller ID requirements, 47 U.S.C. § 227(e). Congress distinguished between telephone calls and text messages. 47 U.S.C. § 227(e)(8)(A), (B). Specifically, Section 227(e) speaks to "caller identification services," which in turn is defined referring to "<u>a call made using a voice service *or* a text message sent using a text messaging service</u>." 47 U.S.C. § 227(e)(8)(A) (emphasis added). This proves Congress, like everyone else, views a call and a text message as separate forms of communication. Congress did not amend Section 227(c) to include text messages (nor has it ever in the myriad amendments Congress has made to the TCPA in the last 20 years). *See also Sayed*, 2025 WL 2997759, at *2 ("[T]he term 'text message' appears elsewhere in the TCPA and related amendments, an appearance that confirms Congress understood the pertinent distinction and legislated mindful of the distinction.") (citing 47 U.S.C. § 227(e)); *Dilanyan*, 2025 WL 3549868, at *2 ("That Congress updated § 227(e) to include text messages in

addition to calls, but has not similarly amended § 227(c)(5), suggests that Congress views a text message as a distinct form of communication to which § 227(c)(5)'s private right of action does not apply.").

It is axiomatic that, "[i]n a given statute, . . . different terms usually have different meanings." *Pulsifer v. United States*, 601 U.S. 124, 149 (2024). It would make no sense to read the term "telephone call" to swallow "text message" in Subsection 227(c), but then treat text messages as separate in Subsection 227(e). *See Trim v. Reward Zone USA LLC*, 76 F.4th 1157, 1162 (9th Cir. 2023) ("If voice calls encompassed text messages, the inclusion of the term text message would be surplusage, and Congress would have written the statute in a manner contrary to a basic canon of statutory construction, that a statute should be interpreted 'so as not to render one part inoperative.'"). Congress understands the distinction between telephone calls and text messages and remains free to further amend the TCPA.

### E.      Appellants' Attempt to Bootstrap Other Provisions Fails.

Appellants seek to justify their reading of "telephone call" by turning to other statutory terms—namely, Subsection 227(b)'s reference to pagers and the statutory definition of a "telephone solicitation." Neither impacts the analysis.

First, Appellants simply assume that Subsection 227(b) applies to text messages. (*See* A.B. at 5, 23.) Appellants note that Subsection 227(b) applies to pagers. That a separate TCPA subsection covers autodialed and prerecorded calls to a paging service is

not germane as to whether the term "telephone call" encompasses text messages. Pagers required a telephone call; that pagers *displayed* text matters not. Subsection 227(b) has nothing to do with text messages. Indeed, Subsection 227(b)'s application to pagers highlights that the TCPA was not drafted to encompass future modes of communication. *See, e.g.*, *Facebook*, 592 U.S. at 409 (rejecting broad interpretation of a "senescent" TCPA statutory term).

Second, to the extent Appellants contend that the definition of "telephone solicitation" encompasses text messages, they are mistaken. (*See* A.B. at 15, 15 n.2, 31-31.) It is true that the regulation at hand, 47 C.F.R. § 64.1200(c)(2), covers "telephone solicitations" and this term is defined to include "telephone call or message." 47 U.S.C. § 227(a)(4). This definition, however was adopted in 1991. "Message," however refers not to text messages, but *prerecorded voice messages*. *See Jones*, 792 F. Supp. 3d at 900 (finding that "Section 227(a)(4) does not refer to 'text message'" and cannot be interpreted as covering text messages).

The term "message" appears throughout the TCPA, elucidating its meaning. *See* 47 U.S.C. § 227(b)(1)(B) (prohibiting certain calls "using an artificial or prerecorded voice to deliver a message . . . ."); 47 U.S.C. § 227(d) (referring to fax messages and "artificial or prerecorded voice messages"); *Azar v. Allina Health Servs*, 587 U.S. 566, 576 (2019) ("[W]hen Congress uses a term in multiple places within a single statute, the term bears

a consistent meaning throughout."). Subsection 227(c)(5) does not explicitly or implicitly apply to text messages.

## III.    POLICY ARGUMENTS DO NOT OVERCOME STATUTORY TEXT.

Appellants focuses their brief on policy arguments. Namely, that covering text messages fits the overall policy goals of the TCPA. (*See, e.g.*, A.B. at 25-26.) Policy prerogatives cannot supplant or alter the plain language of the TCPA.

The Supreme Court recently had occasion to evaluate a similar effort to read the TCPA's terminology to encompass new technologies. In *Facebook, Inc. v. Duguid*, the Supreme Court essentially evaluated whether the term "automatic telephone dialing system" in the TCPA embraced certain modern dialing equipment. 592 U.S. 395 (2021). The Court rejected this argument, including the broad policy arguments articulated by the plaintiff. *See id.* at 408 ("That Congress was broadly concerned about intrusive telemarketing practices, however, does not mean it adopted a broad autodialer definition."). Most specifically, the Court determined:

> Duguid's quarrel is with Congress, which did not define an autodialer as malleably as he would have liked. "Senescent" as a number generator (and perhaps the TCPA itself) may be, that is no justification for eschewing the best reading of § 227(a)(1)(A). This Court must interpret what Congress wrote . . . .

*Id.* at 409; *see also Loper*, 603 U.S. at 403.

The private right of action is limited to recipients of "telephone calls." 47 U.S.C. § 227(c)(5); *see also Hulce*, 132 F.4th at 500 ("Hulce's appeals to the remedial nature of the

TCPA or selective quoting of the legislative history do not carry the day."). A text message is not a telephone call and is not actionable under Section 227(c)(5), unless Congress amends the TCPA. *See Facebook*, 592 U.S. at 409 ("This Court must interpret what Congress wrote . . . ."); *Jones*, 792 F.Supp.3d at 901 ("It is for Congress to respond to the issues presented in this case . . . .).

## IV.  THE FCC CANNOT ALTER THE TERM "TELEPHONE CALL."

Appellants devote pages to the FCC's Orders, contending these Orders were well-reasoned and should remain controlling. (A.B. at 9-15.) As noted above, these Orders were not "reasoned"—they involved no statutory analysis at all. These Orders, at best, were rooted in the FCC's policy goals.

As a more substantive matter, to the extent Appellants contend the FCC was acting within its statutorily authorized discretion (*see id.* at 14-15), it was not. Congress did not delegate to the FCC the ability to define "telephone call," much less alter the scope of the private right of action at Subsection 227(c)(5). *See Loper Bright*, 603 U.S. at 394–95 & 395 n.5 (identifying examples of statutes providing agencies discretion to define terms). While the FCC has certain implementation authority, it cannot alter Congress's choices. *See Ins. Mktg. Coal. Ltd. v. FCC*, 127 F.4th 303, 312 (11th Cir. 2025) ("After all, a generic grant of rulemaking authority to fill gaps . . . does not allow the FCC to alter the specific choices Congress made.") (cleaned up). That the FCC issued a regulation, 47 C.F.R. § 64.1200(e), does not somehow alter this undeniable fact.

## V. THE FCC'S UNAUTHORIZED EXPANSION OF THE TCPA HAS COME AT THE EXPENSE OF LITIGIMATE BUSINESSES.

It is no secret "that TCPA class actions are normally attorney driven and require limited participation from the named plaintiff for their individual claims or as class representative." *LaGuardia v. Designer Brands, Inc.*, No. 19-cv-1568, 2020 WL 2463385, at *8 (S.D. Cal. May 7, 2020). The FCC's unauthorized expansion of the TCPA has not come at the expense of bad actors, but rather as then-FCC Commissioner Ajit Pai put it:

> The TCPA's private right of action and $500 statutory penalty could incentivize plaintiffs to go after the illegal telemarketers, the over-the-phone scam artists, and the foreign fraudsters. But trial lawyers have found legitimate, domestic businesses a much more profitable target. . . . So it's no surprise the TCPA has become the poster child for lawsuit abuse . . . .

*In the Matter of Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991*, 30 F.C.C. Rcd. 7961, 8072-73 (2015) (Pai, Dissenting).

The fact remains "the TCPA has strayed far from its original purpose." *Id.* at 8073. Fashion Nova is on the receiving end of such cases—which are commonly (if not predominantly) filed as class actions—stemming merely from Fashion Nova endeavoring to reach out to its own customers via text message. *See Richards v. Fashion Nova, LLC*, No. 1:25-cv-01145 (S.D. Ind.). The expansion of the TCPA to text messages is not only unsupported by the TCPA's plain text and common understanding of the term "telephone call," but has come at the expense of businesses across the country and across industries simply engaging in expected and desired customer outreach.

## CONCLUSION

Accordingly, the Court should affirm the trial court's determination that a text message does not qualify as a "telephone call" under the TCPA.

Respectfully submitted,

FASHION NOVA, LLC

*s/ Mark S. Eisen*
Mark S. Eisen

Mark S. Eisen
BENESCH, FRIEDLANDER, COPLAN
& ARONOFF LLP
71 South Wacker Drive
Suite 1600
Chicago, Illinois  60606
(312) 212-4949

*Counsel for Amicus Curiae Fashion Nova, LLC*

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and Seventh Circuit Rule 29, because this document contains 4580 words, excluding the parts of the document exempted by Fed. R. App. P. 32(f).

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) and Cir. R. 32(b) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 12-point Palatino Linotype style font for the body and 11-point Palatino Linotype style for the footnotes.

Dated:   December 29, 2025

*/s/ Mark S. Eisen*
Mark S. Eisen
Counsel for Amicus Curiae

**CERTIFICATE OF SERVICE**

I hereby certify that on December 29, 2023, the Brief of Amicus Curiae was filed with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

s/ *Mark S. Eisen*
Mark S. Eisen

Mark S. Eisen
BENESCH, FRIEDLANDER, COPLAN
& ARONOFF LLP
71 South Wacker Drive
Suite 1600
Chicago, Illinois 60606
(312) 212-4949

*Counsel for Amicus Curiae Fashion Nova, LLC*